# EXHIBIT C

FILED
07-16-2021
Clerk of Circuit Court
Wood County, WI
2018CV000328

**STATE OF WISCONSIN**          **CIRCUIT COURT**          **WOOD COUNTY**

MIDCAP FUNDING IV TRUST and
MIDCAP FUNDING VII TRUST,

    Plaintiffs,

v.                                                                Case No. 2018CV328

CHILTON CARE CENTER, LLC, ET AL

    Defendants.

---

**FINAL ACCOUNT, APPLICATION FOR APPROVAL OF FINAL ACCOUNT, REQUEST FOR AN ORDER RATIFYING ALL ACTS OF THE RECEIVER, DISCHARGING THE RECEIVER, ASSIGNING REMAINING CLAIMS AND CAUSES OF ACTION TO THE PLAINTIFFS AND AUTHORIZING THE TRANSFER OF BUSINESS RECORDS TO THE RICE LANDLORDS**

---

TO:    THE HONORABLE NICHOLAS J. BRAZEAU, JR.

    Michael S. Polsky, Esq., Wis. Stat. Chapter 128 Receiver of Chilton Care Center, LLC and certain related entities (collectively, the "Atrium Defendants"), hereby submits this Final Account, Application for Approval of Final Account, Request for an Order Ratifying All Acts of the Receiver, Discharging the Receiver, Assigning Remaining Claims and Causes of Action to the Plaintiffs, and Authorizing the Transfer of Business Records to the Rice Landlords (the "Final Account") pursuant to Sections 128.17(1)(a) and (b) and 128.20 of the Wisconsin Statutes. In support of this Final Account, the Receiver represents as follows:

### BACKGROUND

    1.    On September 7, 2018 (the "Appointment Date"), this Court entered an Order appointing Michael S. Polsky, Esq. as Wis. Stats. Ch. 128 Receiver of the Atrium Defendants, which

consisted of 33 skilled nursing facilities and assisted living facilities in Wisconsin and Michigan (collectively, the "Midwest Atrium Facilities"). A list of the Midwest Atrium Facilities is attached as **Exhibit A**. Exhibit A includes the legal and trade name of each Atrium Defendant, as well as the location of the facility formerly operated by each Atrium Defendant.

2. The Order Appointing Receiver tasked the Receiver with overseeing the management and operations of the Midwest Atrium Facilities and maximizing the value of the assets of the Midwest Atrium Facilities for the benefit of the Atrium Defendants' creditors.

### Transfer of Facility Operations

3. Following the Appointment Date, the Receiver and the Receiver's financial and operational consultant, Health Dimensions Group ("HDG"), operated the Midwest Atrium Facilities in an effort to stabilize operations, maximize the facilities' value, and ensure that residents continue to receive quality care.

4. The Midwest Atrium Facilities can be classified into the following three categories, as provided in further detail on **Exhibit A**:

   i. Four (4) skilled nursing facilities leased from Sabra Health Care (the "Sabra Facilities");

   ii. Sixteen (16) skilled nursing facilities and six (6) assisted living facilities leased from entities owned by Larry Rice or entities controlled by Mr. Rice or members of his family (the "Rice Facilities"); and

   iii. Four (4) skilled nursing facilities and three (3) assisted living facilities owned by certain Atrium Defendants (the "Atrium-owned Facilities").

5. Due to the significant financial losses sustained at the Sabra Facilities and their inability to generate sufficient cash to support continued operations both prior to and after the

Appointment Date, it was necessary for the Receiver to close the Sabra Facilities and relocate residents to ensure that they continued to receive quality care. As of February 8, 2019, all residents of the Sabra Facilities were successfully relocated. The Receiver then surrendered the vacant Sabra Facilities to Sabra Health Care.

6.   From September 2018 through October 2019, the Receiver, with the assistance of MidCap Funding IV Trust and MidCap Funding VII Trust (together, the "Plaintiffs") and Senior Living Investment Brokerage, Inc. ("SLIB"), a national health care brokerage firm, marketed the Rice Facilities and the Atrium-owned Facilities to potential new operators.

7.   Throughout these ongoing marketing efforts, the Receiver and HDG continued to operate the Rice Facilities and the Atrium-owned Facilities in the ordinary course of business. Specifically, the Receiver and HDG ensured that the approximately 1000 residents at these facilities continued to receive uninterrupted quality patient care.

8.   On October 22, 2019, following extensive negotiations, the Receiver and the Plaintiffs filed a Joint Motion to approve the Transition of Certain Facilities to a New Operator (the "North Shore Transfer Motion"). The North Shore Transfer Motion sought authority to transition operations of all twenty-two (22) Rice Facilities to North Shore Healthcare LLC ("North Shore"). North Shore and its principals are unrelated to the Atrium Defendants and their principals.

9.   On October 30, 2019, following extensive negotiations, the Receiver and the Plaintiffs filed a Joint Motion to Approve the Transition of the Atrium-owned Facilities to a New Operator, to Sell Certain Real Estate and other Assets of the Defendants Free and Clear of All Liens, Claims and Encumbrances, Request for Authority to Disburse the Sale Proceeds, and Petition for Determination of Value Pursuant to § 128.25(6)(c), Wis. Stats. (the "Synergy Transfer Motion" and, together with the North Shore Transfer Motion, the "Transfer Motions").

10. The Synergy Transfer Motion sought authority to transition operations of all seven (7) Atrium-owned Facilities to Synergy Senior Care LLC ("Synergy") and to sell certain real estate and fixed assets owned by the Atrium-owned Facilities to Synergy. Synergy and its principals are unrelated to the Atrium Defendants and their principals.

11. On November 11, 2019, after proper notice and a hearing, the Court entered orders approving the Transfer Motions (together, the "Transfer Orders").

12. Pursuant to the Transfer Orders, the assets of the Atrium Defendants described in the Transfer Motions were sold free and clear of all liens, claims and encumbrances and neither North Shore nor Synergy assumed any liabilities of the Atrium Defendants other than those specifically described in the Transfer Motions and associated Operations Transfer Agreements.

13. On December 1, 2019, pursuant to the Transfer Orders, the Receiver, HDG and the Plaintiffs successfully transition the Rice Facilities and the Atrium-owned Facilities to North Shore and Synergy, respectively. Pursuant to the terms of the Transfer Motions and the transfer agreements incorporated therein, North Shore and Synergy have continued to provide care for all residents at the Rice Facilities and the Atrium-owned Facilities, without interruption, and hired substantially all of the facilities' employees.

14. As of December 1, 2019, the Receiver no longer operated any Midwest Atrium Facilities or provided care for any residents in these receivership proceedings.

### VCPI Ransomware Attack

15. Prior to and following the Appointment Date, the Atrium Defendants contracted with an IT support and services provider, Virtual Care Provider, Inc. ("VCPI"), to provide all hosting, network and end-point management services for the Midwest Atrium Facilities. These services included, but were not limited to: hosting and managing the Midwest Atrium Facilities network to

which all employees at the headquarters and facility-level required daily access; hosting all software programs used to store patient and business records – including electronic medical records and billing information; hosting all software programs used to track employee time entries and calculate and process payroll; and hosting and servicing certain facility phone, network and security systems.

16. On or about November 17, 2019, VCPI suffered a ransomware attack which resulted in a complete shut-down of the VCPI network and all hosted software programs for its clients, including the Atrium Defendants.

17. Without access to the VCPI network, the Atrium Defendants were unable to use facility computers or other electronic devices connected to the VCPI network and lost all access to the numerous software programs hosted by VCPI.

18. While the Receiver and HDG ensured that there were no interruptions to patient care, the loss of access to all electronically hosted information and systems resulted in significant operational issues for the Midwest Atrium Facilities as well as significant additional operating costs and damages. Specifically, the Receiver and HDG were unable to calculate or process accurate payroll deductions, facility employees were forced to switch to manual record-keeping and manual monitoring of facility security systems and emergency phone systems in resident rooms, accounting systems could not be utilized and the Receiver's transition of operations to North Shore and Synergy faced significant logistical obstacles.

19. Among other things, the Receiver incurred additional expenses to hire IT experts to communicate between VCPI, the Receiver and the IT consultants for North Shore and Synergy regarding the status of restoring access to network information. North Shore and Synergy also requested credits at closing for expenses incurred to purchase new electronic equipment and server

systems for the facilities, in light of the damage caused by VCPI to the equipment owned by the Atrium Defendants.

20. The Receiver diligently pursued insurance claims and investigated potential causes of action in an effort to recover on damages incurred by the receivership estate in connection with the ransomware attack. Ultimately, the Receiver successfully recovered $65,000 in insurance proceeds for losses sustained as a result of the VCPI ransomware attack.

### Settlement with Rice Landlords

21. As of the Appointment Date, all real estate occupied by the Rice Facilities was leased from certain third parties referred to herein as the "Rice Landlords." The Plaintiffs held a first-position mortgage on all real estate owned by the Rice Landlords and leased to the Rice Facilities (the "Mortgaged Property").

22. On or about March 13, 2019, the Plaintiffs commenced a foreclosure action in the United Stated District Court Eastern District of Wisconsin, Green Bay Division, at Case Number 19-CV-376, against the Rice Landlords seeking relief as described in the complaint filed therein, including, without limitation, foreclosure of the Mortgaged Property located in Wisconsin and owned by certain of the Rice Landlords (the "WI Foreclosure Action").

23. On or about December 14, 2018, the Rice Landlords filed a complaint in the Circuit Court of Outagamie County, Wisconsin, at Case Number 2018CV001190, asserting claims against certain former officers and directors of the Atrium Defendants, and on February 19, 2019, the Rice Landlords filed an amended complaint adding the Plaintiffs and/or certain of their affiliates as defendants, seeking relief in the form of compensatory and punitive damages under Wis. Stat. § 840.03, and other relief as described in the complaint filed therein (the "Rice Action").

24. On March 26, 2019, the Rice Landlords filed a Motion to Compel Payment of Administrative Rent from Receiver (the "Motion to Compel Rent").

25. On or about May 1, 2019, the Plaintiffs commenced a foreclosure action in the Circuit Court for the County of Menominee, State of Michigan, against Menominee Real Estate, LLC with regards to the Mortgaged Property located in Michigan, entitled *MidCap Funding XLII Trust, v. Menominee Real Estate, LLC. et. al.*, Case No. 19-16387-CH (the "Michigan Foreclosure Action").

26. On or about May 30, 2019, this Court entered an Order Compelling Payment of Administrative Rent (the "Order Compelling Rent").

27. On or about June 4, 2019, the Plaintiffs filed a Notice of Appeal of the Order Compelling Rent at Case No. 2019-AP-10640LV.

28. On or about June 6, 2019, the Plaintiffs filed a Motion in this Court for Stay of Order Regarding Payment of Administrative Rent Pending Appeal ("Stay Motion").

29. On or about June 18, 2019, the Plaintiffs filed a Motion for Reconsideration of the Court's Decision and Order Regarding Payment of Administrative Rent and For Declaratory Judgment ("Motion for Reconsideration").

30. On or about June 4, 2019, the federal district Court in the WI Foreclosure Action granted the Plaintiffs' motion for a federal receiver and entered an Order Appointing Receiver, thereby appointing a receiver over the Mortgaged Property (the "Order Appointing Receiver One").

31. On or about July 2, 2019, the Rice Landlords filed an appeal of the Order Appointing Receiver One in the WI Foreclosure Action, to the United States Court of Appeals for the Seventh Circuit at Case No. 19-2262.

32. The foregoing civil actions, including this action, the Rice Action, the WI Foreclosure Action, the MI Foreclosure Action, and all related motions and appeals shall be collectively referred to herein as the "Civil Actions."

33. On October 22, 2019, the Receiver filed a Motion for Authority to Enter into Settlement Agreement with MidCap, the Rice Parties and Receiver One LLC and for an Order Vacating the Order Compelling Payment of Administrative Rent (the "Rice Settlement Motion").

34. On November 11, 2019, following proper notice and a hearing, this Court entered an order approving the Rice Settlement Motion (the "Rice Settlement Order").

35. On December 1, 2019, pursuant to the terms of the Rice Settlement Order, the Plaintiffs, the Receiver and the Rice Landlords successfully closed on the sale of the Mortgaged Property to North Shore and provided mutual releases with respect to the Rice Litigation and the Civil Actions.

36. The Rice Landlords continue to pursue causes of action against certain former principals of the Atrium Defendants. In connection with that ongoing litigation, the Rice Landlords served the Receiver and the Plaintiffs with subpoenas requesting extensive information relating to the Atrium Defendants' pre- and post-receivership operations, as well as email communications between the Receiver, the Plaintiffs and HDG. The Receiver has fully responded to the subpoena issued by the Rice Landlords.

### Post-Transfer Issues

37. Following the transition of operations to North Shore and Synergy, it was necessary for the Receiver to continue to address certain post-transfer issues contemplated by the Transfer Orders and the transfer agreements incorporated therein.

38. Specifically, the Receiver spent significant time gathering information for the preparation and audit of prior year Medicare and Medicaid cost reports for the Midwest Atrium Facilities, tracking and reconciling the collection of post-transfer accounts receivable with Synergy, ensuring North Shore and Synergy retain access to all historical information associated with the facilities, responding to incoming requests relating to employment verifications, records requests and other information needed by the new operators relating to pre-transfer issues, reconciling all outstanding pre-transfer accounts payable and assigning contracts, where necessary, to the new operators, among other administrative tasks.

39. In addition, the Receiver assisted employees with requesting distributions or rollovers of their retirement accounts with the Atrium Defendants' 401k plan administrator, PCS Retirement. Because the 401k plan offered by the Atrium Defendants to its former employees was comingled with that of certain non-receivership Atrium entities located in New Jersey, the 401k plan is still active and will continue to be administered by PCS Retirement.

40. **As such, the Receiver is not responsible for overseeing or terminating the Atrium Defendants' 401K plan. If any former employees of the Atrium Defendants have any questions regarding the 401k plan, please contact PCS Retirement Participant Services at 888-621-5491.**

### Receivership Funding

41. Since the Appointment Date, the Plaintiffs have advanced funds to the Receiver to pay for all aspects of resident care, including funding employee payroll and benefits, vendors – including therapy services, pharmacy services and food – taxes, civil monetary penalties and other necessary costs of administering the receivership estate.

42. Due to the significant amount of administrative expenses incurred after the Appointment Date, it was necessary for the Plaintiffs to increase the facility limits for its revolving loans to the Rice Facilities and the Atrium-owned Facilities.

43. As of May 27, 2021, the Plaintiffs maintain a secured claim against the Atrium Defendants in an amount not less than $22 million.

### Proofs of Claim

44. On February 15, 2019, the Receiver filed a Summary of Proofs of Claim. On March 4, 2019, the Receiver filed a Supplemental Summary of Proofs of Claim which provided detail on claims filed after the filing deadline and which corrected the amount of the Plaintiffs' secured claim set forth in its Proof of Claim.

45. As of March 4, 2019, the total amount of claims filed against the receivership estate were as follows:

| Unsecured Claims | $116,108,645.97 |
| Resident Claims | $246,513.67 |
| Employee Claims | $2,157,661.23 |
| Administrative Claims | $94,143.68 |
| Priority Claims | $1,549,824.77 |
| Secured Claims | $15,537,513.94 |

46. The Employee Claims described above primarily relate to certain health benefits which employees were entitled to receive, but did not receive, prior to the Appointment Date. Immediately following the Appointment Date, the Receiver worked diligently with HDG and the Plaintiffs to ensure that health benefits were restored for all employees as soon as possible. All post-receivership employee wages and benefits have been paid in full.

47. On March 28, 2019, the Internal Revenue Service (the "IRS") filed a Proof of Claim for unpaid pre-receivership federal tax obligations in the total amount of $7,239,317.40. All post-

receivership federal and state tax obligations owed to the IRS and Wisconsin Department of Revenue have been paid in full.

48. On April 9, 2019, The Wisconsin Department of Revenue filed an Amended Proof of Claim which reduced the amount of its original Proof of Claim from $241,426.35 to $213,058.21 for unpaid pre-receivership state tax obligations.

49. On November 10, 2020, the Receiver entered into a Settlement Agreement with the Centers for Medicare & Medicaid Services ("CMS") to resolve certain pre- and post-receivership claims of CMS against the Atrium Defendants.

50. On February 21, 2020, the Receiver and the Plaintiffs submitted a joint request to the Wisconsin Department of Health Services ("DHS") for a waiver of unpaid bed taxes incurred by the Atrium Defendants pre-receivership and prior to the transfer of operations to North Shore and Synergy. As of the date of this Final Account, no response has been received from DHS.

**RECEIVERSHIP OPERATIONS**

51. In the process of winding up the Atrium Defendants' affairs, the Receiver has worked with the Rice Landlords, North Shore and Synergy regarding the substantial amount of business records located at the Atrium Defendants' former headquarters in Appleton, Wisconsin. North Shore and Synergy were given an opportunity to collect all records associated with the Rice Facilities and the Atrium-Owned Facilities. Rather than incur the significant cost of destroying the remaining business records located at the Atrium Defendants' former headquarters, the Receiver proposes to transfer those records to the Rice Landlords.

52. The Receiver has also investigated potential causes of action against certain former directors and officers of the Atrium Defendants, as well as certain affiliated entities which are not parties in these receivership proceedings. Specifically, the Receiver has investigated potential

fraudulent transfers which may have occurred between 2015 to 2018 from the Atrium Defendants to affiliated entities for the purpose of facilitating unauthorized distributions to former officers and directors. The potential value of these claims is unknown. Rather than pursuing those causes of action in these proceedings, the Receiver proposes to assign all remaining claims and causes of action of the Atrium Defendants, including these potential fraudulent transfer claims, to the Plaintiffs in partial satisfaction of their secured claim in this matter.

53. The Plaintiffs will not be paid in full in these proceedings.

54. After diligent investigation, the Receiver is not aware of any remaining assets of the Atrium Defendants to be liquidated in these proceedings, other than those potential claims and causes of action to be assigned to the Plaintiffs.

55. The time for filing claims has expired.

56. **UNDER THE CIRCUMSTANCES, THERE ARE NO FUNDS AVAILABLE TO PAY ANY OF THE PRIORITY OR UNSECURED CLAIMS IN THIS MATTER.**

57. Pursuant to the Financing Agreement entered into by and between the Receiver and the Plaintiffs, the Plaintiffs have paid fees and expenses of the Receiver and his firm, Beck, Chaet, Bamberger & Polsky, S.C., in the total amount of $1,134,551.16.

58. The Receiver is authorized to state that the Plaintiffs consent to the relief requested in this Final Account.

59. For the foregoing reasons, the Receiver believes that the Receivership proceedings should be concluded.

WHEREFORE, the Receiver requests an Order approving the Final Account, ratifying all acts of the Receiver, discharging the Receiver, assigning remaining claims and causes of action to

the Plaintiffs, authorizing the transfer of business records to the Rice Landlords, and for such other or further relief as would be appropriate under the circumstances.

Dated this 15th day of July, 2021.

*Electronically signed by Michael S. Polsky*
Michael S. Polsky, Esq.
Wis. Stats. Chapter 128 Receiver
State Bar No. 1016921

P.O. Address:

BECK, CHAET, BAMBERGER & POLSKY, S.C.
Two Plaza East, Suite 1085
330 East Kilbourn Avenue
Milwaukee, WI 53202
(414) 390-5935
(414) 273-7786
mpolsky@bcblaw.net



EXHIBIT A

| Defendant | Facility Trade Name | Address |
|---|---|---|
| Birch Hill Care Center, LLC | Atrium Post Acute Care of Shawano at Birch Hill | 1475 Birch Hill Lane, Shawano, WI 54166 |
| Ellsworth Care Center, LLC | Atrium Post Acute Care of Ellsworth | 403 North Maple Street, Ellsworth, WI 54011 |
| Evergreen Care Center, LLC | Atrium Post Acute Care of Shawano at Evergreen | 1250 South Evergreen Street, Shawano, WI 54166 |
| Homestead Care Center, LLC | Atrium Post Acute Care of New Holstein | 1712 Monroe Street, New Holstein, WI 53061 |
| Hamilton Care Center, LLC | Atrium Post Acute Care of Two Rivers | 1 Hamilton Drive, Two Rivers, WI 54241 |
| Kewaunee Care Center, LLC | Atrium Post Acute Care of Kewaunee | 1308 Lincoln Street, Kewaunee, WI 54216 |
| Lancaster Care Center, LLC | Atrium Post Acute Care of Lancaster | 1350 South Madison Street, Lancaster, WI 53813 |
| Marshfield Care Center, Inc. | Atrium Post Acute Care of Marshfield | 814 West 14th Street, Marshfield, WI 54449 |
| Rice Health Care Facilities, Inc. | Atrium Post Acute Care of Menominee | 501 Second Street, Menominee, MI 49858 |
| Maple Lane Health & Rehabilitation Center, Inc. | Atrium Post Acute Care of Shawano at Maple Lane | N4231 Highway 22 South, Shawano, WI 54166 |
| Mineral Point Care Center, LLC | Atrium Post Acute Care of Mineral Point | 109 North Iowa Street, Mineral Point, WI 53565 |
| Plymouth Care Center, LLC | Atrium Post Acute Care of Plymouth | 916 East Clifford Street, Plymouth, WI 53073 |
| Parkside Care Center, LLC | Atrium Post Acute Care of Little Chute | 1201 Garfield Avenue, Little Chute, WI 54140 |
| Stevens Point Care Center, LLC | Atrium Post Acute Care of Stevens Point | 1800 Sherman Avenue, Stevens Point, WI 54481 |
| Williams Bay Care Center, LLC | Atrium Post Acute Care of Williams Bay | 146 Clover Street, Williams Bay, WI 53191 |
| Wisconsin Rapids Care Center, LLC | Atrium Post Acute Care of Wisconsin Rapids | 1350 River Run Drive, Wisconsin Rapids, WI 54494 |
| Chilton Care Center, LLC | Atrium Post Acute Care of Chilton | 810 Memorial Drive, Chilton, WI 53014 |
| Plymouth Housing, LLC | Atrium Senior Living of Plymouth at South Horizon | 930 East Clifford Street, Plymouth, WI 53073 |
| TNIOP Housing, LLC | Atrium Senior Living of Stevens Point at Point Manor | 1800 Sherman Avenue, Stevens Point, WI 54481 |
| TR Housing, LLC | Atrium Senior Living of Two Rivers at Northland Lodge | 2500 Garfield Street, Two Rivers, WI 54241 |
| SPRVL, LLC | Atrium Senior Living of Stevens Point at River View Lodge | 1800B Sherman Avenue, Stevens Point, WI 54481 |
| Sherwood Lodge, LLC | Atrium Senior Living of Williams Bay at Sherwood Lodge | 116 Cherry Street, Williams Bay, WI 53191 |
| Wisconsin Rapids Housing, LLC | Atrium Senior Living of Wisconsin Rapids at River Run | 1400 River Run Drive, Wisconsin Rapids, WI 54494 |
| 601 Briarcliff Drive Operating Company, LLC | Atrium Post Acute Care of Appleton | 601 North Briarcliff Drive, Appleton, WI 54915 |
| 125 Byrd Avenue Operating Company, LLC | Atrium Post Acute Care of Neenah | 125 Byrd Avenue, Neenah, WI 54956 |
| 6001 Alderson Street Operating Company, LLC | Atrium Post Acute Care of Weston | 6001 Alderson Street, Schofield, WI 54476 |
| 100 E. Highland Drive Operating Company, LLC | Atrium Post Acute Care of Oconto Falls | 100 East Highland Drive, Oconto Falls, WI 54154 |
| 1311 Tyler Street Operating Company, LLC | Atrium Post Acute Care of Black River Falls | 1311 Tyler Street, Black River Falls, WI 54615 |
| | Atrium Senior Living of Black River Falls | 109 North 14th Street, Black River Falls, WI 54615 |
| 1840 Priddy Street Operating Company, LLC | Atrium Post Acute Care of Bloomer | 1840 Priddy Street, Bloomer, WI 54724 |
| | Atrium Senior Living of Bloomer | 1900 Priddy Street, Bloomer, WI 54724 |
| 725 Knapp St. Operating Company, LLC | Atrium Post Acute Care of Chetek | 725 Knapp Street, Chetek, WI 54728 |
| | Atrium Senior Living of Chetek | 708 Tainter Street, Chetek, WI 54728 |
| KBWB Operations - SLCU, LLC | N/A | |
| 100 E. Highland Drive, LLC | N/A | |
| 1840 Priddy Street, LLC | N/A | |
| 1311 Tyler Street, LLC | N/A | |
| 725 Knapp St., LLC | N/A | |
| KBWB Operations - Rice, LLC | N/A | |
| Rice Management, Inc. | N/A | |
| KBWB Operations - Midwest Additions, LLC | N/A | |
| Atrium Consulting and Management Services - Midwest, LLC | N/A | |
| Chilton Care Center Holding, LLC | N/A | |