UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

v.  Case No. 23-cr-10-WMC

KEVIN BRESLIN and
KBWB OPERATIONS, LLC d/b/a
Atrium Health and Senior Living,

        **Defendants.**
_____/

**GOVERNMENT'S RESPONSE IN OPPOSITION TO THE DEFENDANTS'
MOTION TO DISMISS COUNTS TWO THROUGH TEN OF THE INDICTMENT**

The United States of America, by and through undersigned counsel, respectfully submits this response in opposition to defendants Kevin Breslin's and KBWB Operations, LLC's motion to dismiss Counts Two through Ten of the indictment ("motion") [Doc. 60].[1] As grounds for this opposition, the United States relies on the following points and authorities.

**BACKGROUND**

On February 1, 2023, an indictment was filed charging defendant Kevin Breslin and defendant KBWB Operations, LLC (collectively "the defendants") with one count of Health Care Fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1347 and 2; six counts of Wire Fraud, in violation 18 U.S.C. § 1343; three counts of Mail Fraud, in violation of 18 U.S.C. § 1341; one count of Conspiracy to Commit an Offense Against the United States, in violation of 18 U.S.C. § 371; and one count of Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h) [Doc. 3].

---

[1] On July 24, 2024, defendant Breslin filed the motion. On July 29, 2024, defendant KBWB Operations, LLC, joined defendant Breslin's motion.

1

Count One of the indictment charges the defendants with engaging in a health care fraud scheme and aiding and abetting. It alleges that from on or about January 1, 2015, to in or about September 2018, the defendants participated in a scheme to defraud to obtain money under the custody and care of health benefits programs, by various means including false and fraudulent pretenses, representations, and promises, and material omissions and concealments. Indictment, Count One, ¶¶ 1-41 at pp. 1-22. The defendants' scheme to defraud included using false and fraudulent pretenses, representations, and promises, and material omissions and concealments to (1) obtain money from Medicare and Medicaid and misappropriating those funds for other purposes; (2) conceal their failure to comply with federal statutes and regulations; (3) conceal their failure to meet the statutorily required quality of care standards at the Wisconsin Atrium Health and Senior Living nursing facilities; (4) fail to disclose to the Centers for Medicare and Medicaid Services the defendants' failure to pay their Wisconsin employees' state income tax withholdings and unemployment taxes to the Internal Revenue Service ("IRS") and Wisconsin; and (5) conceal by various means the scheme. *Id*. The Atrium Health and Senior Living Midwest Division covering Wisconsin and its nursing facilities developed cash flow issues, in large part due to the misappropriation of Medicare and Medicaid funds. *Id*.

Count One further alleges the purposes of the fraud scheme included making guaranteed payments and distributions to the owners of Atrium Health and Senior Living; making guaranteed monthly payments to investors; covering construction costs for three new nursing facilities in New Jersey; and paying personal expenditures and bills. *Id*. ¶¶ 28-30 at pp. 13-14.

The wire and mail fraud counts of the indictment, Counts Two through Ten, allege one overarching scheme to defraud. The defendants' scheme was to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and concealment of

material facts. The purpose of the scheme was to address the cash flow issues resulting from the Health Care Fraud scheme and to continue the misappropriation and diversion of funds. *Id*. Counts Two-Ten, ¶¶ 1-55 at pp. 22-26 (incorporating Count One). The means the defendants sought to accomplish the scheme through are set forth under the wire fraud Counts Two through Seven and incorporated into the mail fraud Counts Eight through Ten. *Id*. Counts Two-Seven, ¶¶ 28-55 at pp. 22-26; Counts Eight-Ten, ¶¶ 1-55 at p. 27. Also set forth under the scheme to defraud are the multiple classes of victims, including the Wisconsin Department of Revenue ("WDOR") and Wisconsin Department of Workforce Development ("DWD"). *Id*. Counts Two-Seven, ¶¶ 54-55 at pp. 25-26. Each wire and mail fraud count sets forth one execution of the scheme to defraud.

The defendants argue only that fraud on the Wisconsin state taxing authorities, the alleged evasion to pay Wisconsin state income tax withholding and unemployment taxes, fails to meet the requirements to be part of the fraud scheme because they do not allege a fraud scheme - an intention to cheat anyone or that false or fraudulent pretenses, representations, or promises were made. The defendants also generally assert that Counts Two through Ten of the indictment are duplicitous and should be dismissed because they assert multiple independent frauds within one alleged scheme. The defendants' arguments are without merit and their motion should be denied.

## ARGUMENT

### I.   COUNTS TWO THROUGH TEN OF THE INDICTMENT ARE NOT DUPLICITOUS.

Although not stated in the defendants' motion, it appears they are moving for a partial dismissal of the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(i). The Court, when reviewing a motion to dismiss the sufficiency of an indictment, focuses on the allegations of the indictment, must view all allegations as true, and in the light most favorable to the government. *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). When reviewing the

contents of the indictment the Court does so on a practical basis, not in a hypertechnical manner. *United States v. McLeczynsky*, 296 F.3d 634, 636 (7th Cir. 2002); *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000).

A count in an indictment is duplicitous if it charges two or more distinct offenses in one count. *United States v. Lee*, 77 F.4th 565, 571 (7th Cir. 2023); *United States v. O'Brien*, 953 F.3d 449, 454 (7th Cir. 2020); *United States v. Miller*, 883 F.3d 998, 1003 (7th Cir. 2018); *United States v. Magana*, 118 F.3d 1173, 1189 (7th Cir. 1997); *see also* Fed. R. Crim. P. 8(a). Duplicity concerns do not arise if a count charges a single offense through different means or charges acts that comprise a continuing course of conduct in one count. *O'Brien*, 953 F.3d at 454; *United States v. Davis*, 471 F.3d 783, 790 (7th Cir. 2006); *see* Fed. R. Crim. P. 7(c)(1).

For wire fraud, the government must prove that a defendant: "(1) was involved in a scheme to defraud; (2) had an intent to defraud; and (3) used the wires in furtherance of that scheme." *Lee*, 77 F.4th at 570 (citation omitted); *accord United States v. Faruki*, 803 F.3d 847, 852 (7th Cir. 2015); *United States v. Corrigan*, 912 F.3d 422, 428 (7th Cir. 2019). For mail fraud, the government must prove the same first two elements under wire fraud and that a defendant used the mails in furtherance of the scheme. *United States v. Daniel*, 749 F.3d 608, 613 (7th Cir. 2014); *United States v. Fernandez*, 282 F.3d 500, 507 (7th Cir. 2002); *United States v. Zeidman*, 540 F.2d 314, 317 (7th Cir. 1976). "Scheme to defraud" has the same meaning under the wire and mail fraud statutes and describes a broad range of conduct. *United States v. Doherty*, 969 F.2d 425, 429 (7th Cir. 1992). "Schemes to defraud . . . often are multi-faceted and therefore the various means used in committing the offense may be joined without duplicity.'" *O'Brien*, 953 F.3d at 454 (quoting *Zeidman*, 540 F.2d at 318). A scheme to defraud does not need to succeed to warrant a

conviction. *See United States v. Tadros*, 310 F.3d 999, 1006 (7th Cir. 2002); *United States v. Bach*, 172 F.3d 520, 522 (7th Cir. 1999).

The defendants mischaracterize the scheme to defraud to support their argument that fraud on the Wisconsin State Taxing Authorities cannot constitute a means by which the scheme to defraud may be carried out. Motion at 2. The defendants incorrectly assert that the indictment fails to allege a fraud scheme because it fails to state their failure to pay Wisconsin employee state income tax withholdings and unemployment taxes was intended to cheat anyone, or that false or fraudulent pretenses, representatives or promises were made. *See id*. at 2-3. For the first three quarters of 2018, the defendants filed quarterly tax returns with the WDOR representing that state income tax withholdings had been withheld from its Wisconsin employees' pay checks. Similarly, for the fourth quarter of 2016 through the third quarter of 2018, the defendants filed monthly unemployment insurance tax returns with the DWD representing that unemployment insurance tax had been withheld from its Wisconsin employees' pay checks. The defendants were required to hold and use the withheld monies to make the required payments to the WDOR and DWD. That did not occur. Rather, the defendants used those monies for other purposes including for personal use and benefit, the use and benefit of others, to address cash flow issues that resulted from the defendants' misappropriation of Medicare and Medicare funds intended for the Wisconsin Atrium Health and Senior Living nursing facilities. The defendants were not entitled to use those monies for other purposes. *See* Indictment, Count One, ¶¶ 14, 20-21, 38, and 40 at pp. 6-8, 10-11, and 19-22; Counts Two-Seven, ¶¶ 1-55 at pp. 22-26; Counts Eight-Ten, ¶¶ 1-55 at 27.

The means by which the defendants sought to accomplish the scheme to defraud included withholding monies from their Wisconsin employee paychecks for the state income tax withholding and unemployment insurance taxes, avoiding making payments to the WDOR and

5

DWD, and agreeing to make installment payments to the DWD and sending checks they knew could not be negotiated due to insufficient funds. Jury unanimity is not required for the means to carry out a fraudulent scheme; that is, the means are not separate elements requiring unanimity. *United States v. Boliaux*, 915 F.3d 493, 495 (7th Cir. 2019); *Daniel*, 749 F.3d at 613-14 (the defendant's fraudulent representations or omissions "were 'underlying brute facts' of the verdict against him: that is, they were merely the means he used to commit an element of the crime."). Indeed, as the Supreme Court has held, "a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *United States v. Richardson*, 526 U.S. 813, 817 (1999).

The fraud scheme also involved deceit because the defendants issued checks to the DWD, allegedly to pay towards the balance owed for the unemployment taxes, knowing there were not funds to cover the checks. The scheme provided the defendants with sources of funds to use for purposes other than what they were intended and they concealed their scheme and lulled the WDOR and DWD into believing they would make payments on the balances owed. Therefore, the WDOR and DWD are victims of the defendants' scheme to defraud. *See O'Brien*, 953 F.3d at 455 (schemes to defraud may harm different groups of victims at different times).

The defendants rely on their cherry-picked portion of the scheme to defraud definition in the Seventh Circuit Pattern Instructions to support their argument that Counts Two through Ten fail to allege that a failure to pay the Wisconsin state income tax withholdings and unemployment taxes was intended to cheat anyone or that any false or fraudulent pretenses, representations, or promises were made. The Seventh Circuit's pattern jury instructions define a scheme to defraud as:

> a scheme that is intended to deceive or cheat another and [to obtain money or property or cause the [potential] loss of money or property to another by means of materially false or fraudulent pretenses, representations or promises]. . . . [A materially false or fraudulent pretense, representation, or promise may be accomplished by [an] omission[s] or the concealment of material information.].

Pattern Criminal Jury Instructions of the Seventh Circuit at 624 (2023). The Seventh Circuit has cautioned that its pattern jury instructions, "while carrying some weight, were never intended to have the force of law in this Circuit." *Doherty*, 969 F.2d at 429. The Seventh Circuit has explicitly found that a scheme to defraud "describes a broad range of conduct, some which involves false statements or misrepresentations of fact, and others which do not." *Id.* (internal citations omitted). Indeed, under the mail and wire fraud statutes, a course of conduct not involving any factual misrepresentation may be prosecuted as a scheme to defraud. *Id*.

Moreover, omissions or concealment of material information accompanied by affirmative misrepresentations or acts of concealment may constitute fraud. *United States v. Powell*, 576 F.3d 482, 490-92 (7th Cir. 2009); *United States v. Stephens*, 421 F.3d 503, 507 (7th Cir. 2005). The scheme to defraud for the wire and mail fraud counts alleges a broad scheme to obtain money and property. The means by which the defendants sought to accomplish the scheme included using the monies withheld from their Wisconsin employees' paychecks for the state income tax withholdings and unemployment insurance taxes and misappropriating it for other purposes. The defendants' efforts to conceal their scheme included avoiding paying the state income tax withholdings to the WDOR and unemployment taxes to the DWD, and agreeing to make installment payments and send checks to the DWD, knowing there were insufficient funds to cover the checks. The delay in having to pay the WDOR and DWD was one of the means by which the defendants obtained money and property by means of materially false and fraudulent pretenses, representations, and promises, and concealed the fraud scheme. "Avoidance of detection is often

a material part of a fraudulent scheme; for an illegal scheme would hardly be undertaken were there to be no profit to the plotters." *Bach*, 172 F.3d at 522 (citations omitted). Here, as alleged in the indictment, the purpose of the scheme to defraud included obtaining money and property to cover Atrium Health and Senior Living's cash flow deficiencies for the Wisconsin facilities resulting from the health care fraud scheme set forth in Count One, for personal benefits of the defendants and others, and to pay other expenditures.

In addition, the defendants generally assert that Counts Two through Ten are duplicitous because they incorporate multiple independent frauds within one alleged scheme. Motion at ¶ 8. As an initial matter, this argument is undeveloped and should be discarded. *See United States v. Williams*, 85 F.4th 844, 849 (7th Cir. 2023) (undeveloped arguments are waived); *Fleming Companies, Inc. v. Krist Oil Co.*, 324 F.Supp.2d 933, 949 (W.D. Wis. 2004); *Sheskey v. Madison Metro. Sch. Dist.*, 2013 WL 3808163 at *3 n.3 (W.D. Wis. July 22, 2013). But, in any event, the defendants are wrong. Counts Two through Ten of the indictment allege one overarching scheme to defraud by the defendants that involved multiple classes of victims. Counts Two through Seven charge separate counts of wire fraud and Counts Eight through Ten charge separate counts of mail fraud, all based on one scheme to defraud to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and material concealments and omissions.

Each of Counts Two through Seven charges one wire communication, and Counts Eight through Ten one mailing, to execute and further the scheme. Therefore, each of Counts Two through Ten charge one execution of one scheme to defraud and are not duplicitous. *Zeidman*, 540 F.2d at 317; s*ee also O'Brien*, 953 F.3d at 454-55 (no duplicity where the indictment alleged an overarching single scheme to defraud lenders with four related transactions that occurred over three years, and the transactions were properly charged as different means for carrying out the

8

overarching scheme to defraud); *Davis*, 471 F.3d at 791 (no duplicitous indictment where there was an ongoing and continuing course of conduct during three years accomplished by three different methods that were repeated numerous times, all involving the same defendant).

Finally, assuming arguendo without conceding, should the court find duplicity in any of Counts Two through Ten, the defendants have failed to allege nor is there any prejudice to them. The dangers of duplicity include (1) the defendant may be convicted by less than a unanimous jury on each count of conviction; (2) the defendant may not be adequately notified of the charges against him; (3) the defendant may be subjected to double jeopardy, and (4) the defendant may be prejudiced by evidentiary rulings at trial. *Zeidman*, 540 F.2d at 316-17; *accord United States v. Berardi*, 675 F.2d 894, 899 (7th Cir. 1982); *Davis*, 471 F.3d at 790. These dangers are not present here. Each of Counts Two through Ten separately provide the dates and a detailed description of the wire communications and mailings. The detailed descriptions of each wire communication and mailing protects the defendants from double jeopardy and provide adequate notice of the charges against them. The government anticipates the jury will be instructed that it must be unanimous in its decisions for each of Counts Two through Ten which will preclude any possibility of a nonunanimous verdict.

Moreover, the remedy for any purported duplicity is not dismissal of those counts. A jury instruction can be given on the need for a unanimous verdict which cures any duplicity. *See United States v. Starks*, 472 F.3d 466, 471 (7th Cir. 2006) (any duplicity concerns were cured by properly instructing the jury on the need for a unanimous verdict); *Buchmeier*, 255 F.3d at 425-26 (no duplicity where the jury instruction specifically addressed the need for an unanimous verdict on what firearm(s) the defendant possessed); *United States v. Cherif*, 943 F.2d 692, 701 (7th Cir. 1991) (the possibility that the defendant was convicted by a less than unanimous jury could have

been eliminated by a jury instruction requiring jury unanimity on which act the defendant was guilty of committing); *Berardi*, 675 F.2d at 899 (jury instruction eliminated any possibility of nonunanimous verdict and thus no prejudicial duplicity).[2]

WHEREFORE, based on the foregoing, the government respectfully requests that the defendants' Motion to Dismiss Counts Two through Ten of the indictment be denied.

Respectfully submitted,

TIMOTHY M. O'SHEA
UNITED STATES ATTORNEY

AMANDA N. LISKAMM
DIRECTOR
CONSUMER PROTECTION BRANCH
U.S. DEPARTMENT OF JUSTICE

/s/ *Karla-Dee Clark*
Karla-Dee Clark
Steven R. Scott
Rowan Reid
Trial Attorneys
U.S. Department of Justice
Consumer Protection Branch
450 Fifth Street, NW, Suite 6400S
Washington, D.C. 20001
Clark (202) 532-4098; Scott (202) 286-5293; Reid (202) 532-4315
Karla-Dee.Clark@usdoj.gov;
Steven.R.Scott@usdoj.gov;
Rowan.L.Reid@usdoj.gov

---

[2] Assuming arguendo without conceding, should the Court find duplicity *and* prejudice to the defendants that cannot be cured, the appropriate remedy would be dismissal only of paragraphs 54 and 55.