UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

      v.                                                      Case No. 23-cr-10-WMC

**KEVIN BRESLIN and
KBWB OPERATIONS, LLC d/b/a
Atrium Health and Senior Living,**

                 **Defendants.**
_____/

## GOVERNMENT'S RESPONSE IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS COUNTS ELEVEN AND TWELVE OF THE INDICTMENT, AND, IF NECESSARY, FOR A BILL OF PARTICULARS

The United States of America, by and through undersigned counsel, respectfully submits this response in opposition to defendants Kevin Breslin's and KBWB Operations, LLC's motion to dismiss Counts Eleven and Twelve of the indictment, and, if necessary, for a bill of particulars ("motion") [Doc. 61].[1]  As grounds for this opposition, the United States relies on the following points and authorities.

## BACKGROUND

On February 1, 2023, an indictment was filed charging defendant Kevin Breslin and defendant KBWB Operations, LLC (collectively "the defendants") with one count of Health Care Fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1347 and 2; six counts of Wire Fraud, in violation 18 U.S.C. § 1343; three counts of Mail Fraud, in violation of 18 U.S.C. § 1341; one count of Conspiracy to Commit an Offense Against the United States, in violation of 18 U.S.C. §

---

[1] On July 24, 2024, defendant Breslin filed this motion. On July 29, 2024, defendant KBWB Operations, LLC, joined this motion.

1

371; and one count of Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h) [Doc 3].

Count One of the indictment charges the defendants with engaging in a health care fraud scheme and aiding and abetting. It alleges from on or about January 1, 2015, to in or about September 2018, the defendants participated in a scheme to defraud to obtain money under the custody and care of a health benefits programs, by various means including false and fraudulent pretenses, representations, and promises, and material omissions and concealments. Indictment, Count One, ¶¶ 1-41 at pp. 1-22. The defendants' scheme to defraud included using false and fraudulent pretenses, representations, and promises, and material omissions and concealments to (1) obtain money from Medicare and Medicaid and misappropriating those funds for other purposes; (2) show their required alleged compliance with federal statutes and regulations to participate in and receive money from the health care benefits programs; (3) conceal their failure to meet the statutorily required quality of care standards at the Wisconsin Atrium Health and Senior Living nursing facilities; (4) fail to disclose to the Centers for Medicare and Medicaid Services the defendants' failure to pay their Wisconsin employees' state income tax withholdings and unemployment taxes to the Internal Revenue Service ("IRS") and Wisconsin; and (5) conceal by various means the scheme. *Id*.

The indictment also alleges that defendant KBWB was doing business as Atrium Health and Senior Living ("Atrium") and defendant Breslin, as its managing member and one of six owners, was in charge of overall operations, supervision of all aspects of the business, and made the final decisions on spending, budgeting, and reporting, including clinical operations at Atrium's facilities. *Id*. ¶¶ 1-2 at pp. 1-2.

Count Eleven of the indictment charges the defendants in a single count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, that occurred from on or about October 1, 2016, to in or about August 2018, by conspiring to defraud the United States by impeding, impairing, obstructing, and defeating by craft, trickery, deceit, and dishonest means, the lawful function of the United States Department of the Treasury, Internal Revenue Service, in the ascertainment, computation, assessment, and collection of federal taxes. *Id*. Count Eleven, § 31 at p. 29. The indictment sets forth a detailed description of the manner and means of the conspiracy, and overt acts in furtherance of the conspiracy. *Id*. ¶¶ 32-39 at pp. 30-31.

Count Twelve of the indictment charges a single conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), that occurred from on or about January 1, 2015 to in or about August 2018, and alleges two objects of the conspiracy. The first object, promotional money laundering, alleges that the defendants conducted and attempted to conduct financial transactions affecting interstate and foreign commerce which involved proceeds of a specified unlawful activity, health care fraud, to promote the carrying on of the specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i). *Id*. Count Twelve, ¶ 27(a) at p. 32. The second object, financial transaction money laundering, alleges that the defendants engaged and attempted to engage in monetary transactions by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000 derived from the specified unlawful activity, health care fraud, in violation of 18 U.S.C. § 1957. *Id*. ¶ 27(b) at p. 32.

The defendants argue that Count Eleven charging a conspiracy to defraud the Internal Revenue Service and Count Twelve charging a conspiracy to commit money laundering offenses[2] must be dismissed because based on the intracorporate conspiracy doctrine, defendant Breslin, an officer of defendant KBWB, cannot conspire with the corporation. The defendants further argue that because two or more persons are required for a conspiracy under the intracorporate conspiracy doctrine, Counts Eleven and Twelve fail to charge an alleged conspiracy and must be dismissed. Motion at 2-3. The defendants' arguments are based solely on their request to this Court to apply the civil intracorporate conspiracy doctrine to this criminal case. Motion at 3-4. The defendants also argue that should the government assert that Counts Eleven and Twelve are based on a conspiracy that involves others known and unknown to the grand jury, the Court should order the government to identify those co-conspirators in a bill of particulars. The defendants' arguments to dismiss Counts Eleven and Twelve are meritless and a bill of particulars is not required. Thus, their motion must be denied.

## ARGUMENT

I. **COUNTS ELEVEN AND TWELVE OF THE INDICTMENT PROPERLY CHARGE A CONSPIRACY BETWEEN THE DEFENDANTS**.

Although not stated in the defendants' motion, it appears they are moving for a partial dismissal of the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v). The Court, when reviewing a motion to dismiss the sufficiency of an indictment, focuses on the allegations of the indictment, must view all allegations as true, and in the light most favorable to

---

[2] As set forth in the government's opposition to the defendants' motion to dismiss Count Twelve of the indictment, the defendants misstate the charge in Count Twelve of the indictment. Count Twelve of the indictment charges the defendants with a single offense – conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). On this point, the government adopts and incorporates herein its Response in Opposition to the Defendants' Motion to Dismiss Count Twelve of the Indictment [Doc. 69].

the government. *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). When reviewing the contents of the indictment the Court does so on a practical basis, not in a hypertechnical manner. *United States v. McLeczynsky*, 296 F.3d 634, 636 (7th Cir. 2002); *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000).

The defendants argue that defendant Breslin, as CEO and the managing member of Atrium, could not have conspired with defendant KBWB because Atrium acted exclusively through defendant Breslin, his actions are the same acts and agreement of Atrium, and thus it was legally impossible for the defendants to have conspired. The defendants, in seeking dismissal of Counts Eleven and Twelve, ask this Court to apply the intracorporate conspiracy doctrine in this criminal case, which other Circuit Courts of Appeals and the United States District Court for the Western District of Wisconsin have declined to do. So should this Court.

The intracorporate conspiracy doctrine provides that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abassi*, 582 U.S. 120, 153 (2017). It arose in the antitrust context and applies because the principles governing liability under § 1 of the Sherman Act "plainly exclude from unlawful combinations or conspiracies the activities of a single firm." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 n.15 (1984). As the Supreme Court explained in the anti-trust context:

> Coordination within a firm is as likely to result from an effort to compete as from an effort to stifle competition. In the marketplace, such coordination may be necessary if a business enterprise is to compete effectively. For these reasons, officers or employees of the same firm do not provide the plurality of actors imperative for a § 1 conspiracy.

*Id*. at 769.

Outside the antitrust context, it is far from settled whether the intracorporate conspiracy doctrine even applies to other *civil* conspiracies. *Ziglar*, 582 U.S. at 153-54; *see also Bowie v. Maddox,* 642 F.3d 1122, 1130-31 (D.C. Cir. 2011) (division in circuit courts whether the intracorporate conspiracy doctrine applies in civil rights conspiracies); *Kirwin v. Price Commc'ns. Corp.*, 391 F.3d 1323, 1326-27 (11th Cir. 2004) (intracorporate conspiracy doctrine does not bar § 1962(d) civil claims but acknowledged the split in the courts on that issue); *Commonwealth ex rel. Martino-Fleming v. S. Bay Mental Health Ctr., Inc.*, 334 F.Supp.3d 394, 403 n.4 (D. Mass. 2018) (acknowledged that the scope of the application of the intracorporate conspiracy doctrine outside the antitrust context is far from settled and noted the First Circuit does not apply it to § 371 conspiracies).

Recently, the United States District Court for the Western District of Wisconsin addressed this issue and rejected application of the intracorporate conspiracy doctrine to criminal conspiracies. This was consistent with every U.S. Circuit Court of Appeals that has addressed the issue, the First, Third, Fifth, Sixth, Eighth, Ninth, and Eleventh, all rejecting the application of the intracorporate conspiracy doctrine in the criminal context.[3] While the Seventh Circuit has not yet addressed this issue, it is unlikely to apply the intracorporate conspiracy doctrine in the criminal context.

In *United States v. Didion Milling, Inc.*, 2023 WL 3372636 (W.D. Wis. May 11, 2023), the district court rejected application of the intracorporate conspiracy doctrine to the charged criminal conspiracies. *Id*. at *3-4. The district court recognized the First, Sixth, Ninth, and Eleventh Circuit

---

[3] *United States v. St. John*, 625 F. App'x 661 (5th Cir. 2015); *United States v. Basroon*, 38 F. App'x 772, 781 (3rd Cir. 2002); *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031 (11th Cir. 2000); *United States v. Hughes Aircraft Co.*, 20 F.3d 974 (9th Cir. 1994); *United States v. Ames Sintering Co.*, 927 F.2d 232 (6th Cir. 1990); *United States v. Hugh Chalmers Chevrolet-Toyota, Inc.*, 800 F.2d 737, 738 (8th Cir. 1986); and *United States v. Peters*, 732 F.2d 1004 (1st Cir. 1984).

Courts expressly held that the intracorporate conspiracy doctrine did not apply to criminal conspiracy prosecutions. *Id*. at *4 (citing cases). The district court also recognized that while the Seventh Circuit had not yet ruled on this issue it "has repeatedly affirmed conspiracy convictions of corporations and their officers, employees, and agents." *Id*. (citing cases). The district court flatly disagreed with the defendant's assertion that the Court should invoke the intracorporate conspiracy doctrine as a matter of sound policy and stated:

> It may make sense to treat a corporation and its agents as a single entity in the context of certain Sherman Act conspiracies and in the context of some conspiracies to discriminate. But it does not make sense to expand the concept to criminal conspiracies generally. The court discerns no fundamental unfairness in ascribing to a corporate entity the acts of its agents, and at the same time holding those agents responsible for their own actions, and also holding the corporation and its agents responsible for their coordinated illegal activities. Under Didion's expansive view of the intracorporate conspiracy doctrine, every savvy drug trafficking organization would incorporate to stave off conspiracy charges against its members.

*Id*.

In *United States v. St. John*, 625 F. App'x 661 (5th Cir. 2015), the Fifth Circuit acknowledged that it has applied the intracorporate conspiracy doctrine in antitrust and civil rights cases but declined to extend its application to the criminal context. *Id*. at 665 & n.2. In *United States v. Ames Sintering Co.*, 927 F.2d 232 (6th Cir. 1990), the Sixth Circuit affirmed the defendants' conspiracy convictions under § 371 and stated, "in the criminal context a corporation may be convicted of conspiring with its officers." *Id*. at 237 (quoting *United States v. S. & Vee Cartage Co.*, 704 F.2d 914, 920 (6th Cir. 1983)). The Third Circuit has rejected application of the intracorporate conspiracy doctrine in both the criminal and civil contexts. *See United States v. Basroon*, 38 F. App'x 772, 781 (3rd Cir. 2002) ("Because this Circuit does not recognize the intra-corporate conspiracy doctrine even within the civil context, it clearly does not apply in the criminal context."). The Eighth Circuit also has held similarly. *See United States v. Hugh Chalmers*

7

*Chevrolet-Toyota, Inc.*, 800 F.2d 737, 738 (8th Cir. 1986) (intracorporate conspiracy doctrine did not apply to criminal conspiracy).

Likewise, the Ninth Circuit has rejected application of the intracorporate conspiracy doctrine to criminal cases. In *United States v. Hughes Aircraft Co.*, 20 F.3d 974 (9th Cir. 1994), the Ninth Circuit held that a corporation may be liable under a § 371 conspiracy entered into by its employees and agents, finding that the doctrine could not be used to insulate corporations from criminal liability. *Id*. at 978-79. The Ninth Circuit stated that the intracorporate conspiracy doctrine "has never been applied to criminal cases" and declined to extend it to criminal activity. *Id*. at 979 (citing cases from the First, Fifth, Sixth, Eighth, and Eleventh Circuits). The Ninth Circuit reasoned that "[if] we applied the intracorporate conspiracy doctrine to this case, no corporation acting on its own behalf by and through its employees could be found guilty of conspiracy. This result is illogical." *Id*.

In *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031 (11th Cir. 2000), the Eleventh Circuit addressed whether the intracorporate conspiracy doctrine applied to a claim under 18 U.S.C. § 1985(2) alleging a criminal conspiracy among the corporation and its employees in violation of 18 U.S.C. §§ 371 and 1512. *Id*. at 1034. The Eleventh Circuit held that the doctrine did not apply and stated "[t]his outcome flows from the long-established conclusion that the intracorporate conspiracy doctrine does not apply to criminal conspiracies." *Id*. at 1035.

Importantly, the Eleventh Circuit stated, "[w]e have long recognized an exception to the applicability of the intracorporate conspiracy doctrine for intracorporate criminal conduct arising under 18 U.S.C. § 371 of the federal criminal code." *Id*. at 1038. The Eleventh Circuit further

acknowledged that in *United States v. Hartley*, 678 F.2d 961 (11th Cir. 1982)[4] they "refused to apply the intracorporate conspiracy doctrine to shield from liability members of the same corporation who were accused of a criminal conspiracy." *McAndrew*, 206 F.3d at 1038. The Eleventh Circuit recognized that in *Hartley* they "followed former Fifth Circuit precedent in holding that the intracorporate conspiracy doctrine does not apply to alleged intracorporate criminal conspiracies."[5] *Id*.

In *United States v. Peters*, 732 F.2d 1004 (1st Cir. 1984), the president of the corporation, its vice-president, and the corporation challenged their convictions under 18 U.S.C. § 371, on the grounds that the evidence did not show that the president and vice-president conspired together, and that they could not be convicted for conspiring separately with the corporation. *Id*. at 1007. The First Circuit found that the evidence suggested the president and vice-president conspired together, they performed authorized acts, and they performed with an intent to benefit the corporation. *Id*. at 1008. The First Circuit held that "[t]he actions of two or more agents of a corporation, conspiring together on behalf of the corporation, may lead to conspiracy convictions of the agents (because the corporate veil does not shield them from criminal liability) and of the corporation (because its agents conspired on its behalf)." *Id*. In so holding, the First Circuit stated its express agreement with decisions from other Circuit Courts that had rejected the application of the intracorporate conspiracy doctrine to criminal conspiracies:

---

[4] *Hartley* was abrogated on other grounds by *United States v. Goldin Industries, Inc.*, 219 F.3d 1268 (11th Cir. 2000).

[5] The defendants appear to assert that under *Hartley*, in the criminal context, individual agents of a corporation acting within the scope of their employment in furtherance of corporate objectives are "afforded broad immunity for personal liability for misdeeds." Motion at 3. To be clear, the Eleventh Circuit has rejected application of the intracorporate conspiracy doctrine to criminal conspiracies. *McAndrew*, 206 F.3d at 1038; *Hartley*, 678 F.2d at 972.

9

> These cases reject the syllogism, at least in the criminal context, that since the acts of corporate officers constitute acts of the corporation, and since a corporation cannot conspire with itself, it cannot conspire with its officers. There is a world of difference between invoking the fiction of corporate personality to *subject* a corporation to civil liability for acts of its agents and invoking it to shield a corporation or its agents from criminal liability where its agents acted on its behalf.

*Id*. at 1008 & n.7 (emphasis in original; citing cases).

When the First Circuit found that the evidence suggested the president and vice-president conspired together and performed authorized acts with an intent to benefit the corporation, it noted in dictum that a corporate officer, acting alone on behalf of the corporation, could not be convicted of conspiring with the corporation.[6] *Id*. at 1008 n.6 (*citing United States v. Carroll*, 144 F. Supp. 939, 941-42 (S.D.N.Y. 1956)). However, the First Circuit acknowledged that those facts did not exist in *Peters*. *Id*. Importantly, it is the holding in *Peters* that controls, not its dictum, where the First Circuit expressly adopted the reasoning of other Circuit Courts rejecting application of the intracorporate doctrine in the criminal context. Other courts consistently have understood and cited to *Peters* as holding, along with every other Circuit Court to have decided the issue, that the intracorporate conspiracy doctrine does not apply in the criminal context. *See, e.g., Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 769 (11th Cir. 2000); *St. John*, 625 F. App'x at 665 n.2; *Hughes Aircraft*, 20 F.3d at 979; *United States v. White*, 766 F. Supp. 873, 892 (E.D. Wash. 1991) (denying defendant's motion to dismiss conspiracy count of the indictment and rejecting the

---

[6] Similarly, after *Peters* the First Circuit affirmed the conspiracy convictions of a corporation, a corporation employee, and another individual who did not work for the corporation, and in dictum noted the plurality of actors necessary to establish the conviction existed notwithstanding that the employee of the corporation and the corporation could not by themselves constitute a conspiracy. *United States v. Notarantonio*, 758 F.2d 777, 789 (1st Cir. 1985). Notably, *Notarantonio* did not distinguish or overrule the express holding in *Peters*. Nor has any other Court so found. Likewise, the Tenth Circuit has suggested in an antitrust case, in dictum, that entirely intracorporate conduct may not create the plurality of actors necessary for a valid criminal conspiracy conviction. *See United States v. Suntar Roofing*, 897 F.2d 469, 476 (10th Cir. 1990).

defendant's argument that because he was a corporate officer he could not conspire with the corporation in connection with a corporate matter); *United States v. Lov-it Creamery, Inc.*, 704 F. Supp. 1532, 1543-44 (E.D. Wis. 1989) (while the Seventh Circuit has not ruled on the issue it would likely follow the holdings of the First, Fifth, Sixth, Eighth and Eleventh Circuit Courts that "a corporation can be convicted of criminal conspiracy when two or more agents conspire together on behalf of the corporation."); *United States v. American Grain & Related Industries*, 763 F.2d 312, 320 (8th Cir. 1985) (the actions of two or more agents of a corporation conspiring together may lead to conspiracy convictions of the agents and the corporation).

The defendants provide no compelling reason that this Court should swim against an ocean of precedent and hold that the intracorporate conspiracy doctrine does apply to criminal conspiracies. The defendants try to thread a needle in asserting an exception to the above precedent when a single actor and a corporate entity are indicted in a conspiracy, but the criminal cases cited by the defendants fail to provide this support. Distinguishable is *United States v. Carroll*, 144 F. Supp. 939 (S.D.N.Y. Sept. 21, 1956). In *Carroll*, Sheba Bracelets, Inc., ("the corporation"), defendant Carroll, and three other co-defendants were indicted for conspiracy to violate the gold laws. *Id*. at 940. The government proceeded to trial against only the corporation, defendant Carroll, and a third co-defendant. *Id*. at 941. At the end of the government's case, the district court granted the government's motion to dismiss the third co-defendant, leaving only the corporation and defendant Carroll. *Id*. at 941. The corporation and defendant Carroll moved to dismiss the conspiracy count on the basis that the government failed to prove that anyone conspired with defendant Carroll. *Id*. The district court granted the motion to dismiss the conspiracy count. *Id*. The district court found that because the evidence failed to reveal who owned the corporation and there was no evidence implicating anyone else from the corporation in the conspiracy, the only

11

way to have found a conspiracy would have been based on defendant Carroll and the corporation he used to carry out his business. *Id*. The district court further found that the government failed to prove "the conspiratorial web among the principals" and the "purpose . . . of holding combinations of corporations, and often combinations of directors of one corporation, guilty of conspiracy" did not apply when "one man uses a corporate form to carry out his crime." *Id*. at 941-42. Thus, *Carroll* is factually distinguishable.

The defendants cite *United States v. Consolidated Coal Co.*, 424 F.Supp. 577 (S.D. Ohio 1976), allegedly to support *Carroll*. Motion at 4. However, the district court in *Consolidated Coal* held that a corporation can be charged in a criminal conspiracy with its corporate personnel. *Id*. at 581. Importantly, the district court limited *Carroll* to its particular facts because the court in *Carroll* did not espouse a general rule that corporations could not conspire with its employees. *Id*. at 580. As the district court stated, "the Carroll decision must be read in light of its facts and limited to them." *Id*. Moreover, *Hugh Chalmers* and *Hartley* cut against the defendants' argument that the intracorporate conspiracy doctrine should not be applied in the criminal context.

Finally, the defendants argue that should the government assert Counts Eleven and Twelve should not be dismissed because the conspiracy involved others "known and unknown," the Court should order the government to identify the co-conspirators in a bill of particulars. Motion at 4-5. The defendants are properly charged in Counts Eleven and Twelve. The indictment is sufficient because it informs the defendants of the charges against them, the elements of the charged offenses, the place and time of the alleged conduct constituting the violations, and the statutes violated. Therefore, a bill of particulars is not warranted. Furthermore, while the defendants may move for a bill of particulars before or within 14 days after arraignment, as required under Federal Rule of

Criminal Procedure 7(f) they have not requested leave of court to do so and have otherwise failed to argue any good cause for their lengthy delay in doing so.

A bill of particulars is required only where the charges in the indictment are so general that they do not advise the defendant of the specific act of which he is accused. *United States v. Canino*, 949 F.2d 928, 949 (7th Cir. 1991). The test for determining whether a request for a bill of particulars should be granted is similar to the test to determine the general sufficiency of the indictment, "whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial." *United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003) (*quoting United States v. Kendall*, 665 F.2d 126, 134 (7th Cir. 1981)). An indictment that includes each of the elements of the offense charged, the place and time of the accused's conduct that allegedly constituted the violation, and a citation to the statutes violated is sufficient. *United States v. Blanchard*, 542 F.3d 1133, 1140 (7th Cir. 2008); *Fassnacht*, 332 F.3d at 446; *Kendall*, 665 F.2d at 134. Simply tracking the language of the charged statute will generally suffice. *United States v. White*, 610 F.3d 956, 958-59 (7th Cir. 2010). "The defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *Fassnacht*, 332 F.3d at 446. Further, a bill of particulars is unnecessary if the information is available through other means, such as discovery. *Blanchard*, 542 F.3d at 1140; *United States v. Vaughn*, 722 F.3d 918, 927 (7th Cir. 2013).

Here, the speaking indictment provides detailed information for Counts Eleven and Twelve, beyond more than simply tracking the language of the charged statutes. In addition, the extensive discovery provided to the defendants is more than sufficient for them to prepare their defense. The discovery includes (1) electronic communications ("e-mails") covering the approximate three and one-half year time period charged in the indictment between Atrium

employees, Atrium employees and defendant Breslin, and Atrium employees with third parties; (2) all grand jury transcripts and exhibits; (3) search warrants and detailed affidavits in support thereof; (4) over 250 law enforcement reports of interviews and memoranda of interviews of Atrium employees, third parties, an employee of the Internal Revenue Service, employees of various Wisconsin state agencies, and others; and (5) hearing transcripts of multiple former Atrium executive level employees before the Wisconsin Department of Workforce Development Division on Unemployment Insurance regarding the nonpayment of unemployment insurance taxes.[7] This is more than sufficient to permit the defendants to prepare their defense. "The defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *Fassnacht*, 332 F.3d at 446 (*quoting Kendall*, 665 F.2d at 135)). No plausible surprise or specific prejudice has been identified by the defendants. Therefore, this Court should deny the defendants' request.

WHEREFORE, based on the foregoing, the government respectfully requests that the defendants' motion to dismiss Counts Eleven and Twelve of the indictment, and, if necessary, for a bill of particulars, be denied.

    Respectfully submitted,

    TIMOTHY M. O'SHEA
    UNITED STATES ATTORNEY

    AMANDA N. LISKAMM
    DIRECTOR
    CONSUMER PROTECTION BRANCH
    U.S. DEPARTMENT OF JUSTICE

    /s/ *Karla-Dee Clark*
    Karla-Dee Clark

---

[7] The discovery can be searched electronically by various ways including using search terms, dates, and meta data fields. Much of the discovery also was provided in organized folders and subfolders by subject topics or company names.

Steven R. Scott
Rowan Reid
Trial Attorneys
U.S. Department of Justice
Consumer Protection Branch
450 Fifth Street, NW, Suite 6400S
Washington, D.C. 20001
Clark (202) 532-4098; Scott (202) 286-5293; Reid (202) 532-4315
[Karla-Dee.Clark@usdoj.gov](mailto:Karla-Dee.Clark@usdoj.gov);
[Steven.R.Scott@usdoj.gov](mailto:Steven.R.Scott@usdoj.gov);
[Rowan.L.Reid@usdoj.gov](mailto:Rowan.L.Reid@usdoj.gov)