# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**

v.

**KEVIN BRESLIN, and**  Case No. 23-cr-00010 (WMC)
**KBWB OPERATIONS, LLC d/b/a**
**Atrium Health and Senior Living,**

**Defendants.**

## DEFENDANT KEVIN BRESLIN'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS COUNTS TWO THROUGH TEN OF THE INDICTMENT

Defendant Kevin Breslin, by his attorney Kenneth E. Yeadon, Hinshaw & Culbertson LLP, respectfully submits this reply in support of his motion to dismiss Counts Two through Ten of the Indictment. Dkt. 60. Counts Two through Ten incorporate multiple, independent frauds within a singular alleged scheme and should be dismissed as duplicitous. Dkt. 60 ¶¶ 2, 8, 9. Furthermore, the Government's "Fraud on State Taxing Authorities" allegations (pages 25-26 of the Indictment, (Dkt 3)), alleged as part of each wire and mail fraud count, do not allege a means by which a scheme to defraud may be carried out. *Id.* ¶ 5. The allegations that defendants failed to pay state employee income taxes and unemployment insurance taxes do not allege any sort of fraud scheme because they do not allege an intent to cheat anyone or make any false or fraudulent pretenses, representations, or promises. *Id.* ¶¶ 5-8.

    **A.**     **The Government Claims that the Indictment Alleges a State Tax Scheme That Is Clearly Not In The Indictment**

In its response, the government claims that the Indictment alleges more than it actually does. The Government contends that:

> [f]or the first three quarters of 2018, the defendants filed quarterly tax returns with the WDOR representing that state income tax withholdings had been withheld from its Wisconsin employees' pay checks. Similarly, for the fourth quarter of 2016 through the third quarter of 2018, the defendants filed monthly unemployment insurance tax returns with the DWD representing that unemployment insurance tax had been withheld from its Wisconsin employees' pay checks. The defendants were required to hold and use the withheld monies to make the required payments to the WDOR and DWD. That did not occur. Rather, the defendants used those monies for other purposes including for personal use and benefit, the use and benefit of others, to address cash flow issues that resulted from the defendants' misappropriation of Medicare and Medicare funds intended for the Wisconsin Atrium Health and Senior Living nursing facilities. The defendants were not entitled to use those monies for other purposes.

Dkt. 70, p. 5.

But the Indictment is devoid of any such allegations. There are no allegations in the Indictment regarding:

- defendants' filing of quarterly tax returns with the WDOR (Wisconsin Department of Revenue) during the first three quarters of 2018 or any representations made on these tax returns;

- defendants' filing of monthly unemployment insurance tax returns with Wisconsin's DWD (Department of Workforce Development) for the fourth quarter of 2016 through the third quarter of 2018 or any representations made on these tax returns; or

- defendants use of monies intended to pay the WDOR and DWD improperly for other purposes.

At most, the Indictment alleges that defendants did not pay their employee state income tax withholdings and unemployment insurance taxes to the state authorities. Indictment, pp. 19-20 (¶ 38); *id.*, pp. 25-26 (¶¶ 54-55). Yet the alleged failure to pay taxes alone does not indicate the intent to deceive or cheat another to obtain money or property required for a scheme to defraud. *See* Dkt. 60 ¶ 5; *see also Kawashima v. Holder*, 565 U.S. 478, 487-88 (2012) (tax evasion does not necessarily involve fraud or deceit); *Corral-Trevizo v. Holder*, 560 F. App'x 421, 422 (5th Cir. 2014) (failure to pay taxes does not necessarily require fraud or deceit).

The government also claims that defendants' scheme involved deceit because they issued checks to the DWD "knowing there were not funds to cover the checks" which, in turn, "lulled the WDOR and DWD into believing they would make payments on the balances owed." Dkt. 70, p. 6; *see also id.*, p. 7 (asserting that defendants' efforts to conceal their scheme included "agreeing to make installment payments and send checks to the DWD, knowing there were insufficient funds to cover the checks").

But the Government does not cite any paragraph from the Indictment to support its contention that defendants are alleged to have knowingly issued bad checks to the WDOR or DWD. *Id.*, pp. 6-7. And for good reason, as this is not what the Indictment alleges. The Indictment alleges only that "beginning in April 2018 through August 2018, the defendants issued checks to DWD that were returned for insufficient funds." Indictment, p. 26 (¶ 55). Neither this allegation nor any other allegation in the Indictment alleges that defendants issued these checks *knowing* that there were insufficient funds. The Government chose the language of the allegations it included in the Indictment; it cannot now edit that language to avoid dismissal. *United States v. Schock*, 2017 U.S. Dist. LEXIS 174830, at *58 (C.D. Ill. Oct. 23, 2017).

The Government next takes issue with Breslin's reliance on the Seventh Circuit's Pattern Jury Instructions, which define a "Scheme to Defraud" for wire and mail fraud counts as a scheme intended to deceive or cheat another and to obtain money or property by means of materially false or fraudulent pretenses, representations, or promises. Dkt. 70, pp. 6-7; *see* Seventh Circuit Pattern Instructions, 18 U.S.C. §§ 1341 & 1343, p. 624 (2023). The Government contends that a scheme to defraud does not require a factual misrepresentation and that omissions or concealment of material information accompanied by affirmative misrepresentations or acts of concealment may also constitute fraud. Dkt. 70, p. 7.

59238\1027201\322088241.v2

This is wrong. The elements of mail and wire fraud require a scheme to defraud that involve a materially false or fraudulent pretense, representation, or promise. *See* 18 U.S.C. §§ 1341 and 1343. Although the government wants to ignore the Seventh Circuit's pattern jury instructions, the instructions are accurate and "reflect the collective experience of the judges and lawyers who crafted them and can serve as a helpful starting point." *Reyes v. United States*, 998 F.3d 753, 758 (7th Cir. 2021) (quotation marks omitted). There is nothing problematic about looking to these instructions for the proper definition of a "scheme to defraud." It is common sense.

Not only do the government's "Fraud on State Taxing Authorities" allegations fail to allege a factual misrepresentation, the allegations do not allege facts sufficient to show that defendants intended to deceive or cheat another to obtain their money, whether through misrepresentations, omissions, or acts of concealment. The government's recitation of the means related to the state taxing authorities fraud, which refers to "misappropriating" withheld monies for other purposes, "conceal[ing] their scheme," and using "materially false and fraudulent pretenses, representations, and promises," does not cite a single paragraph from the Indictment in support. Dkt. 70, pp. 7-8.

The government also claims that Counts Two through Ten allege one overarching scheme to defraud – a scheme to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and material concealments and omissions – that involved multiple classes of victims. *Id.*, pp. 2-3, 8. But the Government's characterization of the overarching scheme merely paraphrases a portion of the "scheme to defraud" definition set forth in the Seventh Circuit's pattern jury instructions. *See* Seventh Circuit Pattern Instructions, 18 U.S.C. §§ 1341 & 1343, p. 624 (2023). This characterization does not say anything about the particular scheme to defraud that is allegedly at issue here. By defining the scheme so generically,

the government seeks to include any alleged act or fraud, no matter how unrelated, as part of the same scheme.

That is not the law. Several acts make up a single scheme if they "have a sufficiently close nexus with each other[.]" *See United States v. Lee*, 77 F.4th 565, 571 (7th Cir. 2023) (quotation marks omitted). Here, the Indictment does not include allegations showing that the alleged frauds – (1) fraud on the Centers for Medicare and Medicaid Services, (2) fraud on Atrium residents and their family members, (3) fraud on Atrium employees, (4) fraud on Atrium vendors, and (5) fraud on state taxing authorities – have a sufficiently close relationship or nexus with each other. Instead, the Indictment frames them as separate, distinct frauds that support the wire and mail fraud counts. These counts are therefore duplicitous.

B. **Jury Instructions Cannot Save Duplicitous Counts**

The government claims that even if any of Counts Two through Ten are duplicitous, the counts should not be dismissed because defendants will not be prejudiced and none of the dangers posed by a duplicitous count are present here. Dkt. 70, p. 9. The government contends that the jury can be instructed that it "must be unanimous in its decisions for each of Counts Two through Ten which will preclude any possibility of a nonunanimous verdict." *Id.* In the same vein, the government argues that dismissal is not the proper remedy for a duplicitous count because a jury instruction can be given to cure any duplicity. *Id.*, pp. 9-10.

Whether a particular duplicitous count does not implicate every potential danger of duplicity does not make it a properly charged count. *See United States v. Zeidman*, 540 F.2d 314, 316 (7th Cir. 1976) ("[A]n indictment is faulty when more than one offense is charged in a single count[.]"). If a charge against a defendant is improperly duplicitous, the defendant is prejudiced by simply having to defend himself against the faulty charge at trial.

5

Nor does the fact that the count's duplicity may be addressed by curative actions (such as a jury instruction) if the count goes to trial mean the count should go to trial in the first place. Although "the Seventh Circuit has held that jury instructions [can] alleviate the risks posed by a duplicitous indictment," it has done so in cases, like the ones cited by the Government, where a defendant has already been convicted after a jury trial. *United States v. Pacilio*, 2020 U.S. Dist. LEXIS 261673, at *10 (N.D. Ill. Oct. 16, 2020). This case is not in that procedural posture. Where, as here, a defendant has timely moved to dismiss a duplicitous count before trial, the proper remedy is dismissal. *Id.*; *Schock*, 2017 U.S. Dist. LEXIS 174830, at *55-58 (rejecting the government's contention that dismissal is not the appropriate remedy for a duplicitous count); *United States v. Bessigano*, 2008 U.S. Dist. LEXIS 90148, at *8 (N.D. Ind. Nov. 4, 2008) ("[B]ecause defendant properly raised this issue before trial, the proper remedy is dismissal of the duplicitous count, rather than trying to clarify the indictment via jury instructions.").

### C. Conclusion

For all the reasons set forth above and in his original motion, Defendant Kevin Breslin requests that the Court grant his Motion to Dismiss Counts Two through Ten of the Indictment and provide any other relief that the Court may deem appropriate.

                                              Respectfully submitted,

                                              HINSHAW AND CULBERTSON LLP

                By:    /s Kenneth E. Yeadon
                        KENNETH E. YEADON

Dated: August 19, 2024