IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

                                Plaintiff,

    v.

KEVIN BRESLIN and
KBWB OPERATIONS, LLC,

                                Defendants

REPORT AND
RECOMMENDATION

23-cr-10-wmc

_____

## REPORT

Defendant Kevin Breslin has filed three motions to dismiss various counts in the indictment, and defendant KBWB Operations LLC has joined all three (*see* dkt. 67). First, defendants move to dismiss Counts 2 through 10 because the counts are based on a duplicitous scheme. (Dkt. 60). Next, defendants move to dismiss Counts 11 and 12 because the charges do not allege a conspiracy; as a backup, they request a bill of particulars. (Dkt. 61). Finally, defendants move to dismiss Count 12 based on duplicity. (Dkt. 62). The government opposes all three motions. *See* dkts. 69-71, Defendants concede nothing in reply. *See* dkts. 72, 74 and 75.

For the reasons stated below, I am recommending that the court: (1) deny defendants' motion to dismiss the mail and wire fraud counts, but that it strike Paragraphs 54 and 55 from those counts; (2) deny defendants' motion to dismiss Count 12 on duplicity grounds, and (3) grant defendants' motion to dismiss Counts 11 and 12 unless the government can identify at least one other coconspirator besides Breslin and KBWB. Toward this end, I am separately ordering the government to identify the alleged coconspirators in a bill of particulars.

### The Indictment

On February 1, 2023, the grand jury returned a 12-count, 35 page indictment against Breslin and KBWB, d/b/a Atrium Health and Senior Living (Atrium), alleging that they unlawfully squeezed over $37 million out of Atrium's 24 skilled nursing facilities (SNFs) and 9 assisted living facilities (ALFs) in Wisconsin and Michigan, ending when all of the facilities were placed into receivership in 2018. *See* Dkt. 3.

**Count 1** charges health care fraud in violation of 18 U.S.C. § 1347 and § 2.  After providing 12 pages of administrative and regulatory background information, Count 1 alleges in ¶ 27 that the defendants

> knowingly and willfully executed, and attempted to execute, a schedule to defraud, and to obtain by means of false and fraudulent material pretenses, representations, and promises, money under the custody and control of a health care benefits program, in connection with the delivery of or payment for health care benefits, items, or services.

> Dkt. 3 at 13.

Paragraphs 28 - 39 provide seven pages of allegations outlining the parts of Breslin and KBWB's scheme to defraud, while Paragraphs 40 and 41 list nine methods by which Breslin and KBWB allegedly executed this scheme.

Defendants have not filed a motion to dismiss Count 1.

**Counts 2-10** charge a wire fraud and mail fraud scheme arising out of the same set of facts alleged in Count 1.  These nine counts begin with a common overview that incorporates the first 26 paragraphs of Count 1, followed by an overarching recitation that the defendants

> knowingly and with the intent to defraud, devised and participated in a scheme to defraud, and to obtain money and property by

2

means of materially false and fraudulent pretenses, representations, promises, and by concealment of material facts.

Dkt. 3 at 22.

What follows is four sets of allegations under four unnumbered section headings. First is "**Fraud on CMS**,"[1] which simply incorporates by reference the fraud allegations in ¶¶ 28-41 of Count 1. *See* dkt. 3 at 22.

The second heading is "**Fraud on Atrium SNF residents and family members** " followed by allegations that part of the scheme to defraud was to unlawfully raid then replenish the trust accounts of skilled nursing home residents. Dkt. 3 at 22-23.

The third heading is "**Fraud on Atrium employees**," followed by allegations that it was part of the fraud scheme to (a) withhold health insurance premiums from employee paychecks, but then retain the money for the defendants rather than actually pay the premiums; (b) withhold 401(k) contributions from employee paychecks, but then retain the money for the defendants rather than deposit the money in the pension fund; and (c) provide employees with W-2 forms representing that these funds had been withheld, without alerting employees that the funds actually had been improperly diverted to and misused by defendants. *See* dkt. 3 at 22-23.

The third heading is "**Fraud on Atrium vendors**," followed by allegations that defendants failed to pay their vendors for goods and services received, then lulled these vendors with lies and false promises of payment so that defendants could slow down their cash outflow. *See* dkt. 3 at 23-24.

---

[1] CMS is the acronym for Centers for Medicare and Medicaid Services, an HHS agency charged with administering Medicare and Medicaid through its contractors. *See* dkt. 3 at 5, Paragraph 9.

The fourth heading is "**Fraud on State Taxing Authorities**," followed by allegations that defendants evaded paying Wisconsin employee state income tax withholdings to the Wisconsin Department of Revenue for the first three quarters of 2018, and evaded paying the Wisconsin unemployment insurance taxes due to the Wisconsin Department of Workforce Development in 2016, 2017 and 2018. *See* dkt. 3 at 25-26.

Following these allegations are specific allegations of six emails and three mailings made in furtherance of the fraud scheme, which are charged as Counts 2 through 10. *See* dkt. 3 at 26-28.

**Count 11** charges defendants with engaging in a *Klein* conspiracy to defraud the IRS.[2] Dkt. 3 at 28-31. Paragraph 31 of Count 11 charges that the defendants conspired "with each other, and with others known and unknown to the grand jury" to impede, impair, obstruct and unlawfully defeat the IRS's ascertainment, computation, assessment and collection of federal taxes. Count 11 sets the manner and means used by defendants to accomplish their goal, then lists four categories of overt acts allegedly committed by defendants in furtherance of the conspiracy.

**Count 12** charges the defendants with conspiring to engage in a money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(I) and 1957. Dkt. 3 at 31-34. Count 12 alleges that defendants' health care fraud scheme generated money illegally by cheating Atrium's venders, and that defendants funneled this illegally-obtained money to Atrium's owners to the tune of $37 million between January 2015 and August 2018, usually in wire transfers great than

---

[2] *See United States v. Firkin*, 119 F.3d 1276, 1279 (7th Cir. 1997) (conspiracy to defraud the IRS is commonly known as a *Klein* conspiracy after *United States v. Klein,* 247 F.2d 908 (2nd Cir. 1957)*, cert. denied* 355 U.S. 924 (1958). I note that the government neglects to cite 18 U.S.C. § 371as the charging statute in Count 11, *see* dkt. 3 at 31, but it lists this statute in the indictment's caption, *id.* at 1.

$10,000.  These payments to the other owners by Breslin and KBWB kept them unaware of Atrium's true financial performance and Atrium's failure to meet required quality of care standards.

### The Dismissal Motions

In three motions, defendants have moved to dismiss every count except for Count 1.  An objective reading of the indictment suggests that Counts 2 through 12 are afterthoughts to the flagship charge of health care fraud in Count 1, haphazardly tacked on to pick up alleged criminality arising out of the same conduct, but not captured by the five elements of a § 1347 charge.

The mail and wire fraud charges (Counts 2-10) are awkwardly drafted and subject to blue-lining by the court as a variance, but they are not subject to dismissal on duplicity grounds.

Defendants' duplicity attack on Count 12 also fails, but for different reasons.

Counts 11 and 12 allege agreements between a single person (Breslin) and his corporation (KBWB), a fraught approach to bringing money laundering and tax fraud charges into this case. Because there is no clear authority for allowing the government to prosecute a company owner for conspiring with no one other than his own company, I am recommending that the court dismiss Counts 11 and 12 unless the government can identify the additional coconspirators referred to generically in these two charges.

### Dkt. 60: Motion To Dismiss Counts Two Through Ten of the Indictment

Defendants move to dismiss the indictment's mail and wire fraud Counts on the ground that they are duplicitous.  According to defendants, the government improperly charged as a

single scheme four different fraud schemes that must be charged separately. Additionally, defendants specifically challenge the indictment's allegations of "Fraud on State Taxing Authorities" because these allegations only charge acts of tax evasion, not fraud.

The government disagrees, claiming that it has charged one overarching mail fraud/wire fraud scheme that has four intertwined objectives. Government's Response, dkt. 70, at 2-3, and 8. The government separately defends the indictment's allegations regarding state taxing authorities: it proffers that defendants sought to accomplish this aspect of their fraud scheme by withholding tax payments from employee paychecks, then avoiding payments to WDOR and fraudulently lulling DWD with a bogus installment payment plan and bounced checks. The government further proffers that this sub-scheme involved deceit toward the taxing authorities because the bounced checks to DWD provided the defendants with funds to use for other improper purposes, and it duped WDOR and DWD into believing that defendants would make payments on the balances owed. "Therefore, the WDOR and DWD are victims of the defendants' scheme to defraud." Dkt. 70 at 6. The government points out that this type of conduct fits within the broad range of conduct encompassed by this circuit's definition of a fraud scheme. *Id.* at 6-7. Finally, the government contends that, even assuming, *arguendo*, that the mail fraud/wire fraud counts are duplicitous, dismissal is inappropriate because defendants have failed to allege prejudice, and because the appropriate cure is a jury instruction requiring unanimity rather than dismissal. *Id*. at 9-10.

Defendants make three points in reply: first, the government's proffer in its brief as to the scope of the fraud on state taxing authorities is unsupported by what the indictment actually charges. Second, "the Government's characterization of the overarching scheme merely

paraphrases a portion of the 'scheme to defraud' definition set forth in the Seventh Circuit's pattern jury instruction." Third, it would be improper to allow any duplicitous counts to go to trial simply because curative instructions on unanimity might salvage a guilty verdict on these duplicitous counts.

Starting with this third point, I agree with defendants that they are entitled to a pretrial decision on their claims of duplicity. "Because defendant properly raised this issue before trial, the proper remedy is dismissal of the duplicitous count, rather than trying to clarify the indictment via jury instructions." *United States v. Bessigano*, 2008 WL 4833110 at *3 (N.D. Ind. 2008) *See also United States v. Pacilio*, 2020 WL 12919448 at *4 (N.D. Il. 2020) (same); *United States v. Schock*, 2017 WL 4780614 at *21 (C.D. Ill. 2017) (same).[3]

Moving to defendants' substantive arguments, in *United States v. Lee*, 77 F.4th 565 (7th Cir. 2024), the court explained that:

> An indictment that charges two or more distinct offenses within a single count is duplicitous. However, an indictment charging multiple acts in the same count, each of which could be charged as a separate offense, may not be duplicitous where these acts comprise a continuing course of conduct that constitutes a single offense. In determining whether several acts constitute a single scheme, we ask whether the transactions have a sufficiently close nexus with one another.
>
> *Id.* at 571, citations omitted.

To determine whether the alleged scheme operated as a continuing course of conduct, the court should look at what the defendants sought to gain from it. *Id.* In *Lee*, the court found that

---

[3] This being so, defendants remain entitled to a jury instruction on unanimity even if these counts are not duplicitous, because the charged fraud scheme alleges multiple objects. *See* Committee Comment to Definition of "Scheme To Defraud" Pattern Criminal Jury Instructions of the Seventh Circuit (2023 Ed. At 624), *citing United States v. Davis*, 471 F.3d 783, 791 (7th Cir. 2006).

defendant's separate activities–obtaining tickets from the White Sox, then reselling them on StubHub–were necessary in order to succeed in the goal of profiting at the expense of the White Sox, and therefore, were part of the same scheme.

To the same effect, in *United States v. Davis*, *supra*, the court rejected defendants' claim that a single count of health care fraud was duplicitous, despite the count alleging three different schemes.   The court found that the charge, fairly interpreted, set out "an ongoing and continuous course of conduct, accomplished through three different methods, that were repeated on numerous (likely daily) occasions over several years." 471 F.3d at 791.  *See also United States v. O'Brien*, 953 F.3d 449, 454 (7th Cir. 2020)(same, quoting *Davis*).

In *United States v. Zeidman,* cited by defendants (dkt. 72 at 5), the court rejected defendant's contention that three of the counts against him were duplicitous for having alleged two separate and distinct schemes to defraud and two separate and distinct classes of victims. "[*An indictment*] does not suffer from duplicity where only one offense is alleged even if several different acts are specified." 540 F.2d 314, 316 (7th Cir. 1976).  In *Zeidman,* the court acknowledged that the challenged fraud counts named diametric categories of victims (debtors and creditors), which could have resulted in separate charges;

> However, that is not determinative.  Rather the two acts originate from one transaction, a debt assigned for collection.  The frauds were performed by the same parties and have a sufficiently close nexus with one another that they are fairly characterized as one scheme.

> *Id.* a 317.

As the court noted, "Schemes to defraud by mail often are multi-faceted and therefore the various means used in committing the offense may be joined without duplicity." *Id.* at 318, citations omitted. *See also United States v. O'Brien*, 953 F.3d at 454 (same, quoting *Zeidman*).

The court in *Zeidman* found no prejudice to defendants from having been charged and tried in this fashion because jeopardy attached to all of the mailings alleged, and because the court instructed the jury that unanimity was required as to least one alleged victim before it could return a guilty verdict. *Id.* at 317-18. "As in the case of a statute which can be violated in different ways, it is sufficient to convict if the jury believes that at least one of the acts of fraud was committed." *Id.* at 317.

In the instant case, it is clear that the first three types of fraud outlined in Counts 2-10 constitute a continuing course of fraudulent conduct with a sufficiently close nexus to be charged as one scheme. The incorporation of Paragraphs 1-26 and 28-41 of Count 1 provide the facts establishing that these three fraud schemes were intertwined objectives of defendants' alleged overarching scheme to squeeze every available dollar out of Atrium, Atrium's clients and their families, Atrium's employees, and Atrium's vendors, to be diverted to Breslin and Atrium's other owners. In short, there is nothing duplicitous about the first three fraud schemes charged as objectives of the overarching mail fraud and wire fraud scheme alleged in Counts 2-10.

Defendants' complain that the charging language in Paragraph 27 is nothing more than a bare-bones recitation of the statutes. This is correct but irrelevant. As noted at the outset, the mail and wire fraud counts are part of the indictment's underdeveloped B team, along with the conspiracy counts. If it were otherwise, then the government surely would have drafted Paragraph 27 of its mail and wire fraud charges with the care and precision that is lacking, and that defendants argue is necessary. But as just noted, the government's incorporation of 40 paragraphs from Count 1 provide enough information adequately to identity the parameters of the fraud scheme charged in Counts 2 through 10, at least as to the first three schemes. This

is because an indictment if sufficient so long as it (1) states the elements of the offense charged; (2) fairly informs defendants of the nature of the charge so they can prepare a defense, and (3) enables  defendants to plead an acquittal or conviction as a bar against future prosecutions). *United States v. Miller*, 883 F.3d 998, 1002 (7th Cir. 2018) "Additionally, indictments are reviewed on a practical basis and in their entirety, rather than in a hypertechnical manner." *Id.*, citations omitted.  Counts 2 through 10 pass this test as to the first three alleged fraud schemes.

The fourth alleged scheme, "Fraud on State Taxing Authorities" is different.  This is where the government's careless drafting catches up to it.  In their motion, defendants contend that Paragraphs 54-55 (dkt. 3 at 25-26) allege, at most, tax evasion.  Dkt. 60 at 2-3.  In response, the government states:

> Omissions or concealment of material information accompanied by affirmative misrepresentations or acts of concealment may constitute fraud. The scheme to defraud for the wire and mail fraud counts alleged a broad scheme to obtain money and property.  The means by which the defendants sought to accomplish the scheme included using the monies withheld from their Wisconsin employees' paychecks for the state income tax withholdings and unemployment insurance taxes and misappropriating it for other purposes.  The defendants' efforts to conceal their scheme included avoiding paying the state income tax withholdings to the WDOR and unemployment taxers to the DWD, and agreeing to make installments and send checks to the DWD, knowing there were insufficient funds to cover the checks. The delaying in having to pay the WDOR and DWD was one of the means by which the defendants obtained money and property by means of materially false and fraudulent pretenses, representations, and promises, and concealed the fraud scheme.

Dkt. 70 at 7.

But, as defendants point out in reply (dkt. 72 at 2-3), this is not what the indictment actually says.  Count 1's recitation of the components of the overarching scheme to defraud simply states in Paragraph 38 that:

> It was further part of the scheme to defraud that the defendants failed to disclose to CMS the fact that they were . . . (3) not paying their employee income tax withholdings and employment taxes over to the IRS and Wisconsin Department of Revenue.

> Dkt. 3 at 19-20.

Count 1's recitation of how defendants allegedly executed their scheme to defraud (Paragraphs 40-41) does not mention the failure to pay taxes at all.

Here is the scheme actually alleged as part of Counts 2-10:

### Fraud on State Taxing Authorities

> 54. It was further part of the scheme to defraud that the defendants evaded paying over the Wisconsin employee state income tax withholdings to the Wisconsin Department of Review (WDOR) for the first three quarters of 2018.

> 55. It was further part of the scheme to defraud that the defendants evaded paying the Wisconsin unemployment insurance taxes due to the Wisconsin Department of Workforce Development (DWD) for the period covering the forth quarter of 2016 through the third quarter of 2018.  The defendants entered into an installment payment plan with DWD in late 2017 to pay the outstanding balance, but beginning in April 2018 through August 2018, the defendants issued checks to DWD that were returned for insufficient funds.  As a result, DWD terminated the installment payment plan on August 16, 2018, and issued levy notices against the Wisconsin SNFs.

> Dkt. 3 at 25-26.

Nowhere does the indictment allege that when the defendants failed to pay state taxes, they intended to defraud WDOR or DWD.  As a result, the indictment's allegations amount to

tax evasion, nothing more.  That is not enough.  Simply labeling defendants' acts as fraudulent in the section heading doesn't make them so.  *Cf. Cavoto v. Hayes*, 2009 WL 3380664 at *3 (N.D. Ill., 2009)("the well-established general rule is that tax fraud of any variety requires an element of 'intentional wrongdoing,' which this scenario plainly lacks").  The government's attempt to backfill in its response brief is the legal equivalent of *l'esprit de l'escalier*: its after-the-fact explanation of what it *meant* to allege–but did *not* allege–comes too late.

If Counts 2-10 had framed defendants' interaction with state taxing authorities as a means by which they accomplished their goal of defrauding Atrium's employees (as set forth in Paragraphs 47-49), then the allegations in Paragraphs 54 and 55 would not be duplicitous.  But that's not the path the government asked the grand jury to take.  Therefore, these allegations of tax evasion do not belong in Counts 2 -10.

It's worth noting that none of the wires or mailings charged in Counts 2 through 10 are to or from WDOR or DWD; therefore, striking Paragraphs 54 and 55 will not result in the dismissal of any counts.  In this situation, proceeding in this fashion does not violate the defendants' Fifth Amendment right to grand jury presentment.  It is an allowable variance for the court to narrow the mail fraud and wire fraud charges in this case without requiring the government to go back to the grand jury.  *See United States v. Leichtnam*, 948 F.2d 370, 376-77 (7th Cir. 1991).  That's because what is left after the court removes Paragraphs 54 and 55

> is something less than what the grand jury charged . . . but it is still a criminal offense and one that the grand jury clearly set out in its indictment.  No offense not charged in the original indictment has been added and no possible basis for conviction not contained in the original indictment has been created.

> *Id.* at 377.

I am recommending that the court strike Paragraphs 54 and 55 of Counts 2-10 without prejudice to the government  resubmitting this matter to the grand jury: the government might wish to pursue the struck allegations appropriately, or it might not be comfortable with court's invocation of the variance exception to grand jury presentment.   I further recommend that the court give the government a tight deadline to supersede to avoid jeopardizing the January 27, 2025 trial date.

### Dkt. 62: Motion To Dismiss Count Twelve of the Indictment

I am addressing this motion next because it is similar to dkt. 60: defendants move to dismiss Count 12 on the ground that it is duplicitous.  Count 12 charges the defendants with conspiring with each other to commit two different types of money laundering offenses under 18 U.S.C. § 1956(a)(1)(A)(i) and § 1957.  Dkt. 3 at 32.  Defendants allege that these are separate conspiracies that cannot be charged in one count.  Dkt. 62 at 2.

The government disagrees, asserting that the indictment properly charges a single conspiracy with two intertwined objectives: promotional money laundering in violation of §1956(a)(1)(A)(i), and transactional money laundering in violation of § 1957.  The government notes that it has long been the law that a single count may charge a conspiracy to commit several crimes, since the crime is the unlawful agreement.  Dkt. 69 at 4, citing *United States v. Braverman*, 317 U.S. 49, 54 (1942); *see also United States v. Bucy*, 876 F.2d 1297, 1312 (7th Cir. 1989); *United States v. Bruun*, 809 F.2d 397, 405-406 (7th Cir. 1987)("the allegation in a single count of a conspiracy to commit several crimes is not duplicitous.")

In reply, defendants points out that unlike a conspiracy charge under 18 U.S.C. §371, which has an unvarying maximum penalty of five years, § 1956(h) states that a defendant convicted of a money laundering conspiracy "shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." Promotional money laundering carries a maximum penalty of 20 years in prison, while transactional money laundering carries a maximum penalty of 10 year in prison.  Dkt. 74 at 3. As a result, the jury must decide which (if either) of these statutes defendants conspired to violate in order for the court to determine the resulting penalty.  According to defendants, "this further evidences the duplicitous nature of Count Twelve."

Defendants raise a valid concern, but this does not make Count 12 duplicitous.  As a starting point, because the underlying charge is conspiracy, the nexus/continuing course of conduct test employed in the previous section does not apply.  The government is correct: a conspiracy charge may allege as many different criminal objects of the conspiracy as were contained within the agreement.  If it *were* to matter, then Count 12 adequately ties together the two types of violations: defendants allegedly generated funds by means of an ongoing health care fraud scheme, then they paid some of their ill-gotten funds (in increments ≥$10,000) to the other–apparently clueless–Atrium owners in order to keep the health care fraud scheme afloat.

Defendants' underlying concern–that the court will be unable to discern the applicable sentencing cap–is easily resolved by providing special verdict questions for Count 12.[4]  As a starting point, there is no problem with timely notice: defendants were advised at their March

---

[4] As should be clear, this approach is not inconsistent with the court's decision in the previous section that special verdict questions are not an appropriate remedy to counts that are known before trial to be duplicitous.  Count 12 is not duplicitous.

16, 2023 arraignment that the maximum penalty for Count 12 was a 20 year prison sentence. *See* Courtroom Minutes, dkt. 20. Whether Breslin ends up qualifying for this 20-year cap can be ascertained by the jury's answers to special verdict questions if they find him guilty of Count 12. The use of special verdict questions is routine in criminal trials where the defendant's sentencing range will depend on the particular conduct found by the jury at trial. *See, e.g. United States v. Cruse*, 805 F.3d 795, 817 & 817 n.6 (7th Cir. 2015)(in drug prosecution, facts that increase a statutory maximum sentence must be found beyond a reasonable doubt by the jury). In a similar vein, special verdicts are routinely used to determine which specific acts underlie the jury's guilty verdict. *See, e.g., United States v. Thompson*, 89 F.4th 1010, 1015 (in false statements prosecution, jury answered special verdict questions to specify which statements it found to be false); *United States v. Nitto*, 29 F.4th 859, 864 (7th Cir. 2022)(in RICO and drug conspiracy trial, jury made four special findings in its verdict about acts committed by defendant and drug amounts); *United States v. Perez*, 673 F.3d 667, 668 (7th Cir. 2012) (in RICO conspiracy prosecution, jury returned a special verdict form for the purpose of sentence enhancement, finding that certain acts were "proven" or "not proven").

In sum, presenting the jury with special verdict questions will be a simple and effective way to determine the correct sentencing cap if Breslin is convicted of Count 12. Therefore, I am recommending that the court deny defendants' motion to dismiss this count. This being so, one is left to wonder why the government didn't simply charge Breslin (and maybe KBWB) with two substantive money laundering counts, one under §1956, the other under §1957. This segues to defendants' motion to dismiss both Counts 11 and 12:

15

**Dkt. 61: Motion To Dismiss Counts Eleven and Twelve of the Indictment and, If Necessary, for a Bill of Particulars**

Defendants invoke the intracorporate conspiracy doctrine to dismiss Counts 11 and 12, each of which charges that Breslin, the personal defendant, and KBWB, the corporation that he owns and that employs him, with conspiring with each other "and with others known and unknown to the grand jury." *See* dkt. 3 at 29 and 32.[5]   They also challenge the appropriateness of charging a conspiracy in which Breslin is the only conspirator with a pulse.  Dkt. 61 at 4.  If nothing else, implore defendants, the court should require the government to provide a bill of particulars so that they know who these other alleged coconspirators are.  *Id.*  at 4-5.

The government responds that almost every court to address this issue has found the intracorporate conspiracy doctrine inapplicable to criminal prosecutions, including this district's chief judge.  Dkt. 71 at 6-7.  Next, the government accuses defendants of trying to "thread the needle" by incorrectly claiming that a conspiracy requires more than a single actor and a corporate actor.  *Id.* at 11.  Finally, the government resists providing a bill of particulars, first invoking Rule 7(f)'s fourteen day time limit, then asserting that "the extensive discovery provided to the defendants is more than sufficient for them to prepare their defense."  *Id.* at 13.

In reply, defendants quote the Seventh Circuit's finding in a civil rights case involving the Civil Rights Act of 1871 (commonly known a the Ku Klux Klan Act) as support for defendants' argument that this court should apply the intracorporate conspiracy doctrine in this case.  Dkt. 75 at 2-3, quoting *Travis v. Gary Comm. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990).  Next, defendants continue to urge the court to follow those courts that have

---

[5]  Although this is irrelevant to the pending motion, I note that defendants incorrectly imply that a §1957 charge requires proof of an overt act.  It does not. *Whitfield v. United States*, 543 U.S. 209, 219 (2005)

held that a conspiracy requires more than one human conspirator.  Finally, defendants point out that the court has the discretion to order a bill of particulars whenever it sees the need, and they point to the extraordinary volume of discovery in this case as a reason to order one here. *Id.* at 6-7.

Starting generally, I conclude that the intracorporate conspiracy doctrine does not apply to criminal cases, and therefore is not a basis to dismiss Counts 11 and 12. First, defendants' invocation of the court's holding in *Travis* is off-point because the court explicitly limited it to the situation presented: "all we reiterate is that managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts with the scope of their employment are said to be discriminatory or retaliatory." 921 F.2d at 110.

Next, the myriad cases rejecting application of the doctrine in criminal cases, while not binding on this court, are well-reasoned and persuasive.  *See, e.g.*, *United States v. Didion Milling, Inc.*, 2023 WL 3372636 at **3-4 (W.D. Wis. May 11, 2023) (court's review of precedent within and without this circuit leads it to reject application of the intracorporate conspiracy doctrine); *United States v. Hughes Aircraft Co., Inc.*, 20 F.3d 974, 979 (9th Cir. 1994) ("We decline to extend the intracorporate conspiracy doctrine to criminal activity"); *United States v. Peters*, 732 F.2d 1004, 1008 (1st Cir. 1984)("The actions of two or more agents of a corporation, conspiring together on behalf of the corporation, may lead to conspiracy convictions of the agents (because the corporate veil does not shield them from criminal liability) and of the corporation (because its agents conspired on its behalf"); *United States v. S & Vee Cartage Co., Inc.*, 704 F.2d 914, 920 (6th Cir. 1983) ("We hold that in the criminal context a corporation may be convicted of conspiring with its officers"); *United States v. Hartley*, 678 F.2d 961, 972 (11th Cir. 1982)("We . . . hold that it is possible for a corporation to conspire with its own officers, agents and

17

employees in violation of 18 U.S.C. § 371").   Therefore, I am recommending that this court deny defendants' motion to dismiss Counts 11 and 12 on this basis.

Defendants, however, are on solid ground when they challenge the government's power to charge a conspiracy that has only one human, non-corporate member.  Whether this is viewed as a variant of the intracorporate conspiracy doctrine or a just a commonsensical exegesis of conspiracy law in general, it resonates with the courts, including this one.  This view dates back to an early 20th Century antitrust case in which the court held that an agent of a corporation cannot alone form an unlawful combination between himself and his corporation.  *Union Pacific Coal Co. v. United States,* 171 F. 737, 745 (8th Cir. 1909)  "The conscious participation in the scheme of two or more minds, is indispensable to an unlawful combination, and it cannot be created by the action of one man alone." *Id.*

Not quite 50 years later, the court in *United States v. Carroll,* provided a more robust rationale, which resonates with this court in the instant case:

> The purpose behind not merging conspiracy into a completed crime, as happens with attempts, is separately to penalize and to deter criminal organization, an evil quite apart from the substantive delicts which more likely than not result from such organization.  This purpose is served by holding combinations of corporations, and often combinations of directors of one corporation, guilty of conspiracy.  . . . However the policy does not apply when one man uses a corporate form to carry out his crime.  There is no organization and no one other than the sole criminal to deter or to punish.   In effect, a man would be more severely punished if he chose to commit his crime by using a corporate form than he would be if he committed it through another business device. If the government's theory were valid, it would mean that any individual corporate officer, who committed an illegal act within the framework of his corporate duties, also conspired with the corporation to commit that act.  I have found no support for such an assertion and neither counsel has cited any.  On the contrary, the traditional understanding of the term conspiracy repels such a notion.

18

> This reasoning is particularly true in the case at hand. The government failed to prove the conspiratorial web among the principals; therefore, it seeks to accomplish the same purpose by breathing life and purpose, and thereby creating the requisite independent personality, into an institution manipulated solely by the individual from whom independence is required from criminality. This, the prosecution cannot do and it must fail on this count.

> 144 F.Supp. 939, 941-42 (S.D.N.Y. 1956).

Citing to *Carroll,* the court in *United States v. Peters*, 732 F.2d 1004 (1st Cir. 1984) held that:

> The actions of two or more agents of a corporation, conspiring together on behalf of the corporation, may lead to conspiracy convictions of the agents (because the corporate veil does not shield them from criminal liability) and of the corporation (because its agents conspired on its behalf).

> *Id.* at 1008.

Therefore, "A corporate officer, acting *alone* on behalf of the corporation, could not be convicted of conspiring with the corporation." *Id.* at 1008 n.6, emphasis in original.

The Court of Appeals for the Eleventh Circuit weighed in next:

> In this case, we confront a different situation: there is only one human actor, acting for himself and for the corporate entity which he controls. . . . The argument that a single human actor can be convicted of conspiracy under § 371 under the circumstances of this case flies in the face of the traditional justification for criminal conspiracies.
>
>                 * * *
>
> The threat posed to society by these combinations arises from the creative interaction of two autonomous minds. It is for this reason that the essence of a conspiracy is an *agreement*. The societal threat is of a different quality when one human simply uses the corporate mechanism to carry out his crime. The danger from agreement does not arise.

> *United States v. Stevens*, 909 F.2d 431, 433 (11th Cir. 1990), emphasis in original.

Moving to the 21st Century, the court in *United States v. Panhandle Trading, Inc.*, 2006 WL 1883436 (N.D. Fla. 2006) noted that three of the defendants in the government's eight-defendant conspiracy charge were defendant Nguyen and two of his corporations, PTI and PSI. Because the indictment failed to alleged that any other corporate officer or agent of PTI or PSI was involved in the criminal enterprise, all alleged wrongful acts of the two corporations were in essence, the alleged wrongful acts of a sole actor: Nguyen. "A sole corporate agent cannot conspire with a corporation because a corporation has no mind of its own; the agent would, in effect, be conspiring with himself. Only when more than one agent is implicated can a conspiracy occur." *Id.* at *3. In light of this, these three defendants were entitled to jury instructions preventing the jury from convicting them of conspiring with each other. *Id.* at *4.

Closer in time and distance, Judge Pepper in the Eastern District of Wisconsin agreed with defendants that it was improper for the grand jury to bring conspiracy charges against only a corporation and its sole owner, not because of the intracorporate conspiracy doctrine, but "because a person can't conspire with himself, even if the "himself" is himself in his capacity as owner of his corporation." *United States v. Ganos*, 2019 WL 2178605 (E.D. Wis. 2019) at *8. That being so, because the conspiracy counts charged other defendants in addition to the corporation and its owner, dismissal was unwarranted. *Id.* at *9.

This isn't a close call. The courts in the cases cited above got it right. Therefore, in the instant case, if there were no other human conspirators besides Breslin, then there were no conspiracies. If that's the case, then defendants are entitled to dismissal of Counts 11 and 12.

Up to this point, the government has held its cards close to its vest. It's time to put those cards face up on the table. We are at the equivalent of the "put up or shut up" moment in civil

litigation. *Cf. Brown v. CACH, LLC*, 94 F.4th 665, 667 (7th Cir. 2024). In both Count 11 and Count 12, the grand jury found probable cause that Breslin and KBWB knowingly conspired with each other "and with others known and unknown to the grand jury." Dkt. 3 at 29 and 32. The government now must identify these "others" to defendants and to the court.

It has long been this court's practice to order bills of particulars identifying coconspirators. *See, e.g. United States v. Tepoel*, 2008 WL 4554926 (W.D. Wis. 2008):

> In his first motion for a bill of particulars, defendant seeks the names of the person with whom he allegedly conspired in count 2. This court routinely grants such requests. *See United States v. McAnderson*, 914 F.2d 934, 946-47 (7th Cir. 1990). If the government has not yet provided defendant with a list of the names of alleged coconspirators, then it must do so promptly.
>
> *Id.* at *2.

In *United States v. Young*, 2005 WL 2100975 (W.D. Wis. 2005), the court noted that coconspirator identities were an exception to the Seventh Circuit's general antipathy towards bills of particulars. The court (specifically, this judicial officer) ordered that "the government must commit to its theory:" if the government's conspiracy charge involved anyone's acts beyond those already disclosed, then the government was obliged to identify these other people to the defendant. *Id.* at *1.

In the instant case, there is all the more reason to order the requested bill: the viability of Counts 11 and 12 are on the line. Because no report and recommendation is necessary for such and order, I am entering it under separate caption to get this matter teed up for Judge Conley at the same time as the other issues. To account for the possibility that the parties will be filing *Daubert* motions on September 4, 2024, I am slightly extending the usual 14-day objection deadline for the parties' objections to this report and recommendation.

21

RECOMMENDATION

For the reasons state above, I respectfully recommend that:

(1)     The court GRANT IN PART Defendants' Motion To Dismiss Counts Two through Ten of the Indictment (dkt. 60) by STRIKING Paragraph Nos. 54 and 55 of those counts, and that the court DENY this motion in all other respects.

(2)     The court GRANT defendants' Motion To Dismiss Counts Eleven and Twelve of the Indictment (dkt. 61) UNLESS the government can sufficiently identify at least one other co-conspirator in each count.

(3)     The court DENY defendants' Motion To Dismiss Count Twelve of the Indictment on the ground of duplicity (dkt. 62).


Entered this 3rd day of September, 2024.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge

22