# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

v.

KEVIN BRESLIN, and            Case No. 23-cr-00010 (WMC)
KBWB OPERATIONS, LLC d/b/a
Atrium Health and Senior Living,

           Defendants.

## DEFENDANT KEVIN BRESLIN'S MOTION TO BAR CERTAIN TESTIMONY FROM GOVERNMENT EXPERT MICHAEL D. PAKTER

Defendant, Kevin Breslin, by his attorney Kenneth E. Yeadon, Hinshaw & Culbertson LLP, respectfully moves this Honorable Court to bar certain testimony from the Government's disclosed expert, Michael D. Pakter, pursuant to Federal Rule of Evidence 702, *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. In the event that the Court does not bar Mr. Pakter based solely on this motion, Defendant Breslin respectfully moves the Court told hold an evidentiary hearing in order to assess whether Mr. Pakter should be permitted to testify at trial.

**I.  Introduction**

The Government has disclosed Mr. Pakter as a financial expert to provide opinions about Defendants'[1] distribution of funds from January 2015 through September 2018. (Ex. A, Disclosure as to Michael D. Pakter ("Pakter Disclosure"); Ex. B, Michael D. Pakter's Expert Report on Defendants' Diversion of Funds and Related Matters ("Pakter Rpt."), pp. 2, 4.) Mr. Pakter is a

---

[1] Defendant Breslin and co-defendant Atrium Health and Senior Living ("Atrium") are collectively "Defendants."

certified public accountant and certified fraud examiner whose undergraduate education was in accounting, auditing, commerce, and business economics. (Pakter Rpt., pp. 6-7.) He has based his opinions in this case on his experience in accounting and forensic accounting, and he has reached these opinions "to a reasonable degree of accounting certainty." (Pakter Disclosure, p. 1; Pakter Rpt., pp. 4, 66.)

Despite the accounting-based nature and focus of his experience, Mr. Pakter purports to provide opinions regarding the clinical and operational needs of nursing home facilities and their residents. In his expert report, Mr. Pakter opines that:

- Breslin prioritized the distribution of multiple millions of dollars to non-patient care areas "ahead of the *necessary* clinical and operational patient-care needs of the Wisconsin facilities and [their] residents" and that distribution of these funds reduced, deprioritized, and made unavailable funding for patient care at the Wisconsin facilities. (Pakter Rpt., pp. 4, 66 (emphasis added).)

- Atrium's facilities did "not regularly receive the sufficient materials or services *needed* to provide acceptable patient care." (*Id.*, p. 46 (emphasis added).)

Mr. Pakter is not qualified to opine about these issues.

## II. Standards of Expert Opinion Admissibility

Under Federal Rule of Evidence 702 and *Daubert*, "the district court acts as the gatekeeper for expert evidence, evaluating the proffered expert's qualifications, the reliability of the expert's methodology, and the relevance of the expert's testimony." *Downing v. Abbott Laboratories*, 48 F.4th 793, 809 (7th Cir. 2022) (internal citation omitted). "The party seeking to introduce expert testimony has the burden to show, by a preponderance of the evidence, that the testimony meets the *Daubert* standard." *Id.*

## III. The Government's Expert Is Not Qualified To Testify Regarding The Clinical And Operational Needs Of Nursing Home Facilities And Their Residents.

Mr. Pakter is not qualified to opine regarding the clinical and operational needs of nursing home facilities and their residents. "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (quotation marks omitted). The question is "not whether an expert 'is qualified in general' but whether he is qualified 'to answer a specific question.'" *United States v. Truitt*, 938 F.3d 885, 889 (7th Cir. 2019) (quoting *Gayton*, 593 F.3d at 617). The court looks to each of the expert's conclusions "individually to see if he has the adequate education, skill, and training to reach them." *Id.* at 890 (quoting *Gayton*, 593 F.3d at 617).

Mr. Pakter may have extensive experience in the fields of accounting and forensic accounting, upon which he bases his expert opinions. (Pakter Disclosure, p. 1.) But his experience in these fields does not provide a basis for him to opine about what constitutes acceptable patient care in a nursing home facility or the clinical and operational patient-care needs of the nursing home facilities at issue and their residents. Nor does anything in Mr. Pakter's expert submissions suggest that he otherwise has the education, training, or skill to opine about these issues.

Mr. Pakter's professional profile refers to work related to nursing home facilities in only two instances, neither of which provides a basis to opine about the clinical and operational needs of the facilities or their residents. According to his professional profile submitted by the govemrent in support of his testimony, he has experience having: (1) investigated property damage and business interruption claims arising from the collapse of a nursing home's roof, s*ee* Ex. C, Michael D. Pakter Professional Profile, p. 3; and (2) reviewed transactions acquiring and managing skilled nursing facilities and related franchise businesses and calculated management fees, "earn out"

calculations, and profits, *id.* p. 10.[2] And because Mr. Pakter is not qualified to opine about what constitutes acceptable patient care or the clinical and operational needs of a nursing home and its residents, he is necessarily, by extension, unqualified to opine about what funds, materials, or services were necessary to provide this care or to satisfy these clinical and operational needs.

Testimony from Mr. Pakter regarding (1) what constitutes acceptable patient care in a nursing home facility and the clinical and operational patient-care needs of the nursing home facilities at issue and their residents, and (2) what funds, materials, or services were necessary to provide acceptable patient care or to satisfy the facilities' and residents' clinical and operational patient-care needs does not pass muster under *Daubert*'s qualifications prong. The Court should therefore preclude this testimony at trial. *See, e.g.*, *Truitt*, 938 F.3d at 889-90 (finding the exclusion of expert testimony regarding specific questions proper because the expert was not qualified to speak on those specialized subjects).

---

[2] Mr. Pakter's expert report also appears to refer to these experiences in the second paragraph under the heading "2.3 Healthcare Experience." (Pakter Rpt., p. 7.) Nonetheless, this paragraph does not confine Mr. Pakter's experience with the business economics of acquiring and managing skilled nursing facilities to the franchising context, as his professional profile does. To the extent the government contends that Mr. Pakter's experience on this point goes beyond the franchising context, a *Daubert* hearing is necessary to determine the contours of Mr. Pakter's experience and whether it provides a basis for his opinion about clinical and operational-care needs.

## IV. Conclusion

For the reasons set forth above, Defendant Kevin Breslin respectfully requests that this Court, pursuant to FRE 702 and *Daubert*, enter an order precluding Michael Pakter from presenting expert testimony as set forth in this motion, if necessary, hold an evidentiary hearing, and grant any other relief the Court deems appropriate.

        Respectfully submitted,

        HINSHAW AND CULBERTSON LLP

By:   */s Kenneth E. Yeadon*
      KENNETH E. YEADON

Dated: September 4, 2024