UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

      v.                                      Case No. 23-cr-10-WMC

KEVIN BRESLIN and
KBWB OPERATIONS, LLC d/b/a
Atrium Health and Senior Living,

              Defendants.
_____/

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT KEVIN BRESLIN'S MOTION TO EXCLUDE GOVERNMENT EXPERT SUZANNE FREDERICK

The United States of America, by and through undersigned counsel, respectfully submits this response in opposition to defendant Kevin Breslin's Motion to Exclude Government Expert Suzanne Frederick ("Motion") [Doc. 83]. As grounds for this opposition, the United States relies on the following points and authorities.

## GOVERNMENT'S PROPOSED EXPERT

The government intends to offer the testimony of Suzanne Frederick as a nurse expert in the nursing industry. Ms. Frederick's testimony will include the applicable standards of care and rules and regulations pertaining to long-term care facilities, her review of relevant materials, and her opinion that two of the Atrium Wisconsin facilities failed to meet certain standards of care. Ms. Frederick will rely on her experience, education, and training as a basis for her testimony.

Ms. Frederick holds an undergraduate Bachelor of Science in Nursing degree and a Master of Science in Nursing degree, with an emphasis on nursing administration. Ms. Frederick is a board-certified gerontological nurse and a certified wound care nurse. She has been a licensed nurse since 1983. Ms. Frederick has over 40 years' experience in the nursing field and is familiar

1

with the standards of care and rules and regulations for the nursing industry. She began her nursing career as a staff nurse at the Hillcrest Baptist Medical Center ("Hillcrest") in Waco, Texas, then as an assistant head nurse within the intensive care unit ("ICU"), and finally as the director of critical care nursing and respiratory therapy at Hillcrest. Ms. Frederick has experience as a home health nurse and as the director of nursing at a skilled nursing facility, where she was responsible for ensuring standards of care were maintained. Ms. Frederick not only has extensive experience working in the field of nursing, but she has also been a clinical nursing instructor for more than 20 years. Specifically, Ms. Frederick has instructed prospective certified nursing assistants, and she taught clinical nursing practices within long-term care facilities at McLennan Community College. She has instructed nursing administration classes and served as a clinical supervisor for graduate students at the University of Texas at Arlington. Ms. Frederick has served as a nursing consultant for the past 25 years, focusing on nursing practices within long-term care facilities.

Based on her decades of experience, Ms. Frederick understands how nursing facilities should properly function and the level of care required to meet the standards of care and rules and regulations pertaining to the nursing industry. Her experience qualifies her and provides a reliable and sufficient basis for her to form an opinion within a reasonable degree of nursing certainty based on her review of the materials listed in Appendix A of her expert reports.

## **LEGAL STANDARD**

The admissibility of expert testimony is governed by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702. *United States v. Johnson*, 916 F.3d 579, 586 (7th Cir. 2019). To be admissible under Rule 702, "expert testimony must assist the trier of fact and demonstrate sufficient reliability." *Id.* Under *Daubert*, trial courts act as gatekeepers to ensure "that any and all scientific testimony or evidence admitted is not only

relevant, but reliable." 509 U.S. at 589; *Johnson*, 916 F.3d at 586. "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. The soundness of the factual support of the expert witness's analysis and whether the expert's conclusions based on that analysis is correct is to be determined by the trier of fact. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

Under Rule 702 and *Daubert*, the district court must engage in a three-step analysis before admitting expert testimony: (1) whether the witness is qualified; (2) whether the witness's methodology is scientifically reliable; and (3) whether the witness's testimony will assist the trier of fact in understanding the evidence or determining a fact in issue. *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (cleaned up). In assessing the reliability of expert testimony, the Supreme Court set forth the following five guiding factors: (1) whether a theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique or method has been met with general acceptance." *Daubert*, 509 U.S. at 593-94. These *Daubert* factors should not be considered "a definitive check list suitable for the evaluation of all kinds of evidentiary submissions involving specialized knowledge." *U.S. v. Conn*, 297 F.3d 548, 556-57 (7th Cir. 2002). The district court may use the *Daubert* factors as a point of departure and "is free to fashion an approach more precisely tailored to an evaluation of the particular evidentiary submission before it." *Id*. at 557. It should consider the expert witness's training and experience, and the methodology employed to arrive at a conclusion. *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009). The district court has broad latitude to determine how to measure the reliability of a proposed expert's testimony and whether it is in fact reliable. *Id*. It is such broad latitude that

permits a district court to decide whether to apply at all any of the *Daubert* factors in every case. "[T]he law grant the trial judge broad latitude to determine . . . [whether] *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case." *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137,153 (1999).

Reliability under Rule 702 requires the district court to determine only that the expert is providing testimony based on a reliable methodology correctly applied and the expert considered sufficient data to use the methodology. *Stollings v. Ryobi Technologies*, 725 F.3d 753, 766 (7th Cir. 2013). Criticisms regarding the quality of testimony, soundness of the factual basis and correctness of an expert's conclusions go to the weight of the expert's testimony which a district court should permit a jury to decide. *Id*. The purpose of the court's inquiry is to scrutinize proposed expert witness testimony to determine if it has "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," and is thus reliable enough to present to a jury. *Kumho Tire Co. Ltd., 526 U.S. at 152.*

Experience is a reliable basis for an expert opinion. Fed. R. Evid. 702 advisory committee notes to 2000 amendments. When this is the situation, the witness "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id*. Expert testimony based on experience has been found to be reliable and admissible. *United States v. Esformes*, 60 F.4th 621, 637 (11th Cir. 2023) (expert qualified to testify about skilled nursing facility practices based on his experience and education and his testimony was reliable even though he did not do any testing or use scientific methods); *United States v. Lang*, No. 2015-0013, 2016 WL 1734087, at *6 (D.V.I. Apr. 28, 2016) (expert's testimony reliable that was based on more than 30 years' experience working in the field of forensic science). *Cage v. City of Chicago*, 979 F.Supp.2d 787, 802-04

4

(N.D. Ill. 2013) (citing cases); *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005) (Rule 702 contemplates admission of expert testimony based solely on experience).

In determining whether expert testimony is relevant, the district court asks whether it will assist the trier of fact to reach a conclusion on any factual issue involved in the case. Fed. R. Evid.702; *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). The *Daubert* principles apply equally to scientific and non-scientific expert testimony. *Kumho Tire*, 526 U.S. at 147-49. Because the touchstone of admissibility under Rule 702 is helpfulness to the jury, *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991), an expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion. *Id*.

Admissibility determinations "should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010); *see also Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995) ("*Daubert* reinforces the idea that there should be a presumption of admissibility of evidence . . . the Court expressed its faith in the power of the adversary system to test 'shaky but admissible' evidence, and advanced a bias in favor of admitting evidence short of that solidly and indisputably proven to be reliable."). Thus, the rejection of expert testimony is the exception, not the rule, and the trial court's role as a gatekeeper is not intended to replace the adversary system. Fed. R. Evid. 702, advisory committee note to 2000 amendments. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The proponent of the expert bears the burden of demonstrating, by a preponderance of the evidence, that the expert's testimony would satisfy the *Daubert* standard. *Lewis v. CITGO Petrol. Corp.*, 561

F.3d 698, 705 (7th Cir. 2009) (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendments); *accord Downing v. Abbot Laboratories*, 48 F.4th 793, 809 (7th Cir. 2022).

## ARGUMENT

### I. Ms. Frederick Should Be Permitted To Testify As An Expert Witness

The defendant moves to exclude Suzanne Frederick from testifying as an expert witness on the grounds that (1) her reliance on third party summaries and data is not an acceptable methodology and (2) her opinions on "insufficient staffing" and causation are otherwise inadmissible because "summaries of third-party anecdotes cited do not reliably support sweeping conclusions," she provides no useful statistical data, and she fails to account for obvious alternative explanations. The defendant's motion should be denied.

Ms. Frederick's testimony will be based on her more than 40 years' experience in the nursing field, which includes working in various capacities including as a nurse, director of nursing, an instructor, and in multiple other supervisory positions within the nursing industry. Additionally, Ms. Frederick has provided expert consulting services to various state and federal judicial departments, including the United States Department of Justice. Ms. Frederick's extensive experience qualifies her to testify regarding the standards of care and rules and regulations pertaining to the nursing industry and, in fact, within the last four years, she has provided expert testimony in thirty depositions and has testified as a nurse expert in three trials. *See* Fed. R. Evid. 702 (a witness may be qualified as an expert by experience); *Kumho*, 526 U.S. at 152 (expert testimony can be based on "professional studies or personal experience"); *Conn*, 297 F.3d at 556 (genuine expertise may be based on experience or training).

### II. Ms. Frederick May Rely Upon Hearsay Evidence When Forming Her Opinions

Ms. Frederick's proffered expert testimony will be based on her review of numerous records including but not limited to (1) more than 12,000 pages of medical records for two

residents at the Black River Falls and Appleton Atrium Wisconsin facilities from Point Click Care ("PCC"[1]); (2) Wisconsin Department of Health Services Division of Quality Assurance Surveys including Statement of Deficiencies ("SODs") and Plans of Corrections ("POCs") for the Black River Falls and Appleton Atrium facilities; (3) witness interview reports; and (4) standards of care and rules and regulations.

During the investigation, federal law enforcement agents and investigators interviewed civilian witnesses and wrote memoranda of interviews ("MOIs") and reports of interviews ("ROIs") summarizing the witnesses' answers to questions. Each federal law enforcement agent and investigator who wrote an MOI or ROI of the witness interview attended that interview.

Rule 703 permits an expert opinion based on hearsay. It is a fundamental premise that expert witnesses may rely on hearsay evidence when forming their opinions and can base such opinions on information that itself is inadmissible as substantive evidence. *See Walker v. Soo Line R.R.,* 208 F.3d 581, 588 (7th Cir. 2000) (under Rule 703, expert can rely on work of others, including reports and opinions). An expert witness "is not required to verify all the facts on which he relies; he can rely on hearsay . . . provided that such reliance is an acceptable practice in his profession." *Tilstra v. BouMatic LLC*, 791 F.3d 749, 753 (7th Cir. 2015). Ms. Frederick could rely on witness interview reports because it is a type of information reasonably relied upon by experts in her field regarding violations of the standards of care. *See Sansone v. Brennan*, 917 F.3d 975, 982 (7th Cir. 2019) (Rule 703 permits experts, in forming an opinion, to rely on

---

[1] PCC is an electronic medical record system that was used by Atrium for its Wisconsin facilities. Records and information in PCC for the Atrium Wisconsin facilities included resident medical records, hospital medical records and discharge documents, transfer logs, resident assessments, plans of care, interdisciplinary progress notes, physician progress and treating notes, minimum data set, incident reports, and Situation, Background, Assessment, and Recommendation ("SBAR") reports.

7

inadmissible facts and data reasonably relied upon by experts in the particular field); *United States v. Lundy*, 809 F.2d 392, 395 (7th Cir. 1987) (same).

The rationale for this exception to the hearsay rule is that because of an expert's professional experience, knowledge and ability, the expert is competent to judge for herself the reliability of records and statements on which she bases her expert opinion. *United States v. Williams*, 447 F.2d 1285, 1290 (5th Cir. 1971). Indeed, an expert's opinion must invariably rely, at least in part, on sources and records that can never be proven in court. *Id*. An expert's opinion is derived from the expert's lifetime of experience and education, not just from a review of records, documents, and data. *Id*. An expert may consult several sources and analyze that information, and coupled with her own professional experience and knowledge, arrive at an expert opinion that is regarded as evidence, not a disguise for hearsay. *Id*. Witness interview reports from law enforcement special agents are a source reasonably relied upon by experts in the nursing industry.

Expert witnesses may offer their independent judgments that were in some part informed by their exposure to otherwise inadmissible hearsay. Fed. R. Evid. 703. Ms. Frederick reviewed and considered the witness interview reports, along with the thousands of pages of medical records from PCC, and surveys containing the SODs. The witness interview reports were one category of records she reviewed and were not the sole basis for her opinions. Objections to the reliability of out-of-court materials relied upon by Ms. Frederick go to the weight, not admissibility, of the evidence. At trial the defendant will have the opportunity to cross-examine Ms. Frederick regarding this category of documents she reviewed.

Distinguishable is *Summerfield v. City of Chicago*, 254 F.R.D.317 (N.D. Ill. 2008). In *Summerfield*, a civil rights action discrimination case, the plaintiff's expert relied solely on two documents for his opinions, the plaintiff's second amended complaint and a written short summary

prepared by the plaintiff's attorney of 11 voluminous deposition transcripts which were selected by the plaintiff's attorney from the 17 depositions taken. *Id*. at 318, 320-22. The actual deposition transcripts were available but not provided to the expert. *Id*. at 322. The district court found that Rule 703 does not permit an expert to base an opinion on the plaintiff's attorney's summaries of the deposition transcripts. *Id*. at 320. The district court stated that there was no justification for not providing the actual deposition transcripts to the expert and expressed concern that the plaintiff's attorney had prepared the summaries in the midst of the case. *Id*. at 322-24.

Such is not the case here. Ms. Frederick was not provided written summaries of witness interview reports prepared by an attorney for the government. Ms. Frederick was provided the witness interview reports of witnesses associated with the Black River Falls and Appleton Atrium facilities and independently reviewed those reports. A government attorney or law enforcement special agent did not read and prepare summaries of the witness interview reports, and then only provide the summaries and not the actual witness interview reports to Ms. Frederick.

Moreover, the defendant falsely equates SODs with witness interview reports. SODs are not prepared for litigation and are not interview reports. SODs document deficiencies that constitute non-compliance with federal requirements and regulations governing nursing facilities and must be approved by CMS. This is because CMS oversees payment to skilled nursing facilities for the Medicare and Medicaid programs and the nursing home oversight and compliance programs. For skilled nursing facilities to receive payment under the Medicare or Medicaid programs, they must be in compliance with the federal requirements set forth in 42 CFR Part 483, Subpart B. A skilled nursing facility or nursing facility must be certified to receive payment under the Medicare or Medicaid programs. With the exception of state operated facilities, states are responsible for completing the survey process and certifying compliance or non-compliance of all

skilled nursing facilities and nursing facilities. To be certified, a trained state surveyor conducts an unannounced survey on the skilled nursing facility or nursing facility. Long term-care surveyors are required to meet minimum qualifications established by the Secretary of Health and Human Services, which includes successfully completing the Surveyor Minimum Qualifications Test and training.

All surveyors are required to use the SOD Form CMA-2567 to assess compliance. Should a nursing facility not challenge on appeal the SOD's finding of non-compliance, those findings are administratively final and binding. CMS is required by law to post publicly the SODs because they are findings of deficiencies which permits the public to have access to the deficiency findings. 42 U.S.C. § 1395i-3(g)(5)(A). Here, the SODs issued for the Atrium Wisconsin facilities constitute final findings of deficiencies by CMS. Plans of Corrections agreed to by the defendants as a result of an SOD will never remove the SODs and the findings contained therein. The government is unaware of the defendants completing an appeal of any SOD for the Atrium Wisconsin facilities during the defendants' operation of those facilities.

Under Rules 702 and 703, expert testimony does not need to be based on first-hand knowledge or on research conducted by the expert. *See Daubert,* 509 U.S. at 592; *Walker,* 208 F.3d at 588; *Mihailovich v. Laatsch,* 359 F.3d 892, 919 (7th Cir.2004) ("[T]he *Daubert* framework is a flexible one that must be adapted to the ... type of testimony being proffered."). As the Seventh Circuit in *Walker* noted, "courts frequently have pointed to an expert's reliance on the reports of others as an indication that their testimony is reliable." 208 F.3d at 588 (collecting cases). In this matter, experts for either side have to rely upon reports regarding the conditions at Atrium Wisconsin facilities during the relevant timeframe, since as of September 7, 2018, a court appointed receiver took over control and operation of the facilities.

### III. Insufficient Staffing Caused Substandard Care

A facility must have sufficient nursing staff with the appropriate competencies and skill sets to provide nursing and related services to assure resident safety and attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care and considering the number, acuity, and diagnoses of the facility's resident population in accordance with the facility assessment required at § 483.71[2]. 42 CFR Part 483.35. It is the facility's responsibility to ensure that licensed nurses have the specific competencies and skill sets necessary for the residents' needs, as identified through resident assessments, and described in the plan of care. *Id*.

Ms. Frederick concluded that insufficient staffing was a significant contributor to the pattern of substandard care provided by Black River Falls and Appleton Atrium facilities. Her conclusions were based on her professional experience and the totality of her review of all the materials listed in Appendix A of her expert reports. Further, the acuity of the two focus residents was accounted for by Ms. Frederick when concluding that both facilities, the Black River Falls and Appleton facilities, failed to provide sufficient staffing. Ms. Frederick summarized in her report each resident's history of diagnoses and their respective dependency on the staff for activities of daily living.

The defendant argues that Ms. Frederick should be excluded from testifying because she failed to account for obvious alternative explanations for the violations of the standards of care. Motion at 12. Throughout Ms. Frederick's expert reports she cites many specific examples of substandard care provided by the staff, including nurses. Ms. Frederick further cited many

---

[2] Section §483.71, is a complete facility assessment to determine a facility's required resources to care to residents competently during daily operations and emergencies.

instances where standards of care were violated. She also noted that one of the two residents she focused on refused to cooperate with his nurses. Ms. Frederick further cited an example of an inexperienced LPN being the only nurse on staff during a night shift. The two "obvious alternatives" – negligence and carelessness by the staff – offered by the defendant are not wholly exclusive from insufficient staffing. Ms. Frederick reviewed records spanning months and years for her two focus residents. She noted numerous specific examples of substandard care, which supported her conclusion that over the course of each resident's stay at his respective facility, the nursing services provided were not sufficient. Whether a particular nurse, or even every nurse, was consistently careless or negligent for consecutive months and years does not contradict Ms. Frederick's conclusion that the Black River Falls and Appleton Atrium facilities provided insufficient staffing. Exclusion of Ms. Frederick's testimony is not the appropriate remedy to address the defendant's concern that Ms. Frederick did not consider other potential causes of the violations of the standards of care. *St. Paul Mercury Ins. Co. v. The Viking Corp.*, 539 F.3d 623, 628-29 (7th Cir. 2008) (expert did not have to eliminate all other causes; fact that several possible causes may not have been eliminated goes to the weight, not admissibility); *Jarrett v. Wright Med. Tech., Inc*., No. 1:12-cv-00064-SEB-DML, 2021 WL 1165178, *4 (S.D. Ind. Mar. 26, 2021) ("an expert need not eliminate all potential alternative causes for his differential diagnosis"). Rather, the defendant is free to vigorously cross-examine Ms. Frederick about whether the defendant is responsible for the actions or inactions of his employees.

WHEREFORE, based on the foregoing, the government respectfully requests that the defendant's Motion to Exclude Government Expert Suzanne Frederick be denied.

                                                  Respectfully submitted,

                                                  TIMOTHY M. O'SHEA
                                                  UNITED STATES ATTORNEY

AMANDA N. LISKAMM
DIRECTOR
CONSUMER PROTECTION BRANCH
U.S. DEPARTMENT OF JUSTICE

<u>/s/ Steven R. Scott</u>
Karla-Dee Clark
Steven R. Scott
Rowan Reid
Trial Attorneys
U.S. Department of Justice
Consumer Protection Branch
450 Fifth Street, NW, Suite 6400S
Washington, D.C. 20001
Clark (202) 532-4098; Scott (202) 286-5293; Reid (202) 532-4315
[Karla-Dee.Clark@usdoj.gov](mailto:Karla-Dee.Clark@usdoj.gov);
[Steven.R.Scott@usdoj.gov](mailto:Steven.R.Scott@usdoj.gov);
[Rowan.L.Reid@usdoj.gov](mailto:Rowan.L.Reid@usdoj.gov)