UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

                                  Case No. 23-cr-00010-WMC

v.

KEVIN BRESLIN and
KBWB OPERATIONS, LLC d/b/a
Atrium Health and Senior Living,

            **Defendants.**
_____/

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT KEVIN BRESLIN'S MOTION TO BAR STATEMENTS OF DEFICIENCIES AND OTHER RECORDS RELATED TO STATE SURVEYS

The United States of America, by and through undersigned counsel, respectfully submits this response to defendant Kevin Breslin's Motion to Bar Statements of Deficiencies and Other Records Related to State Surveys (hereinafter, "Motion") [Doc. 65]. For the reasons set forth below, the government respectfully requests that the Court deny the defendant's Motion.

### I. BACKGROUND/EVIDENCE AT ISSUE

Defendant Breslin seeks an order barring the government from using at trial any materials relating to the Wisconsin Department of Health Service Division of Quality Assurance ("DQA"), Bureau of Nursing Home Resident Care's oversight of Atrium Wisconsin facilities. Motion at 1. ("to bar the use or presentment of evidence consisting of or relating to Statements of Deficiencies or other materials relating to state agency surveys of Atrium facilities.") Defendant's request to bar includes Statements of Deficiencies and other materials related to DQA surveys of Atrium facilities, Motion at 3, asserting as a basis that the records are not excepted from the hearsay rule under Federal Rules of Evidence ("FRE") 803(4), 803(6) and 803(8). Motion at 6-8.

1

As alleged in the Indictment, the nursing home industry is highly regulated to protect vulnerable individuals who require ongoing medical services. Indictment ¶ 13 [Doc. 3]. Nursing facilities that participate in federal programs and receive taxpayer funding must operate in compliance with all applicable federal, state, and local laws and regulations. *Id.* ¶ 14. To ensure such compliance, there is an established process pursuant to which nursing facilities are subject to on-site inspections, called surveys. *Id.* ¶ 17. The DQA surveyors who conduct such inspections are trained and tested before they are qualified to conduct a survey.[1]

Atrium Wisconsin facilities were surveyed by the DQA both periodically and in response to complaints. *Id.* ¶ 18. DQA surveys could result in a facility being issued a deficiency citation (called Statements of Deficiencies or SODs), which are documents that are posted for public information on the agency website. *Id.* SODs must be made public "within 14 calendar days" of when the information is made available to the nursing homes. *See* 42 U.S.C. § 1395i–3(g)(5)(A). If a facility does not challenge the findings of noncompliance in an SOD, or does not receive a favorable decision on appeal, the findings of noncompliance in the SOD are considered administratively final and binding. *See North Lake Nursing and Rehab Ctr, LLC v. Sebelius*, 2014 WL 12980387, at *1 (N.D. Ind. Aug. 6, 2014) (under 42 C.F.R. § 498.20(b), survey findings that were not reconsidered, reversed, modified, or revised are final).

Pursuant to its discovery obligations, the government produced to the defendants voluminous materials, including reports and associated information relating to the DQA's surveys of Atrium Wisconsin facilities. At trial, the government intends to introduce certain evidence and offer witness testimony about the DQA's inspections and citations of Atrium Wisconsin facilities

---

[1] See Social Security Act, Section 1919(g)(2)(E)(iii)

that the government determines is relevant to and probative of the charged offenses. The government will list such evidence on its exhibit list before trial.

The government submits that defendant's Motion, which seeks to exclude an entire category of potential evidence based upon generalized claims of inadmissibility, is premature and should therefore be denied. Nevertheless, as set forth below, evidence regarding the Wisconsin DQA's mandated oversight of Atrium Wisconsin facilities is admissible under the FRE.[2]

## II. ARGUMENT

"Evidence should be excluded on a motion in limine only when evidence is clearly inadmissible on all potential grounds . . . and unless evidence meets this high standard, evidentiary rulings should be deferred until trial." *United States v. Sullivan*, No. 10-CR-821, 2011 WL 4808118, at *1 (N.D. Ill., Oct. 11, 2011) (cleaned up); *United States v. Rainone*, No. 09-CR-206, 2013 WL 389004, at *1 (N.D. Ill., Jan. 31, 2013), *aff'd*, 816 F.3d 490 (7th Cir. 2016). "The party moving to exclude evidence in limine has the burden of establishing that the evidence is not admissible for any purpose." *Rainone*, 2013 WL 389004, at *1. The defendant's Motion should be denied, as the records from the Wisconsin DQA that the government intends to introduce at trial are admissible under the FRE as public records pursuant to FRE 803(8) and 902(4) and as business records pursuant to FRE 803(6) and 902(11). Further, certain portions of certain documents, to the

---

[2] Because the defendant's Motion seeks to exclude a broad category of voluminous materials and is not directed to specific exhibits that the government is seeking to introduce into evidence at trial, this Response in opposition to defendant's Motion addresses defendant's arguments and outlines the government's justification for potentially offering materials from this category of documents under FRE 803(8), 803(6) and 803(4). However, depending upon the specific evidence that the government seeks to introduce at trial, there may well be additional bases for admission under the FRE, including, *inter alia*, that the evidence is not offered for the truth of the matter asserted and is thus not hearsay, or is offered as a statement of a party-opponent under FRE 801, or fits some other exception to the hearsay rule. The government reserves the right to adduce additional bases for admission of its exhibits at a pretrial hearing or during trial.

extent applicable, may also be admissible under FRE 803(4) as statements made for medical diagnosis or treatment.

**A. Evidence from the DQA's surveys of Atrium Wisconsin facilities, including in the Statements of Deficiencies, are relevant to the conduct charged.**

Under the federal rules of evidence, "[w]hether evidence is relevant is a low threshold." *United States v. Hamzeh*, 986 F.3d 1048, 1052 (7th Cir. 2021). "Relevant evidence is that which has any tendency to make a fact of consequence any more or less probable than it would be without the evidence." *Id.*, citing Fed. R. Evid. 401 (cleaned up). "A fact of consequence includes one that is 'ultimate, intermediate, or evidentiary.'" *Id.*, citing Fed. R. Evid. 401 advisory committee's note. Further, "evidence need only affect a fact 'of consequence,'" and "evidence remains relevant even if directed to an undisputed fact." *Hamzeh*, 986 F.3d at 1055, citing Fed. R. Evid. 401. The Indictment charges defendants with one count of Health Care Fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1347 and 2; six counts of Wire Fraud, in violation 18 U.S.C. § 1343; three counts of Mail Fraud, in violation of 18 U.S.C. § 1341; one count of Conspiracy to Commit an Offense Against the United States, in violation of 18 U.S.C. § 371; and one count of Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h). As alleged in the Indictment, these charges all stem from when defendant Breslin was the managing member of Atrium, in charge of overall operations, including clinical operations of the Atrium Wisconsin facilities. Indictment ¶ 1. While defendant Breslin asserts that evidence relating to the DQA's surveys of Atrium Wisconsin facilities "have no bearing on or relevance to the Government's allegations" against him, Motion at 10, the factual basis for all of the charged conduct against defendant Breslin is his oversight and running of Atrium Wisconsin facilities. Indictment ¶ 1. The evidence relating to the DQA's surveys of Atrium Wisconsin facilities is therefore clearly relevant and meets the "low threshold" of relevancy.

**B. The records are admissible pursuant to FRE 803(8) and 902(4) as public records.**

FRE 803(8) admits a "record or statement of a public office" if it sets out "matter[s] observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel." Fed. R. Evid. 803(8)(A)(ii). The public records exception to the hearsay rule is justified on the assumption that public officials will perform their duties properly and without bias. *See* Fed. R. Evid. 803(8) advisory committee's note to 1972 amendments; *United States v. De La Cruz,* 469 F.3d 1064, 1069 (7th Cir. 2006). Further, a certified copy of a public record is self-authenticating if it is "[a] copy of an official record – or a copy of a document that was recorded or filed in a public office as authorized by law – if the copy is certified as correct by . . . the custodian or another person authorized to make the certification." Fed. R. Evid. 902(4).[3] A certified copy of the public record is admissible to prove its content. Fed. R. Evid. 1005.

Three categories of public records are covered by the exception in FRE 803(8)(A), and many public records fall into more than one category. *Jordan v. Binns*, 712 F.3d 1123, 1132 (7th Cir. 2013). As discussed by the Seventh Circuit in *Binns*, under FRE 803(8)(A)(i), records that set out a public office's activities are excepted from the hearsay rule. *Id.*, citing *Chesapeake & Delaware Canal Co. v. United States,* 250 U.S. 123, 128–29 (1919); *United States v. Lechuga,* 975 F.2d 397, 399 (7th Cir. 1992). Under FRE 803(8)(A)(ii), records that set out "a matter observed while under a legal duty to report" are also excepted, except in criminal cases for matters observed by law-enforcement personnel. *Binns*, 712 F.3d at 1132, citing *United States v. Meyer,* 113 F.2d 387, 397–98 (7th Cir. 1940). FRE 803(8)(A)(iii) excepts records setting forth "factual findings from a legally authorized investigation," which includes evaluative reports containing opinions and conclusions. *Binns*, 712 F.3d at 1132, citing *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153,

---

[3] The government will produce to defendants the requisite certifications under FRE 902(4).

166–70 (1988); *Young v. James Green Mgmt., Inc.,* 327 F.3d 616, 624 (7th Cir. 2003). Records falling into one of these categories are presumptively admissible but may be excluded in the court's discretion if the party opposing admission establishes that the circumstances indicate a lack of trustworthiness. *Binns*, 712 F.3d at 1132, citing Fed. R. Evid. 803(8)(B) and *United States v. Romo,* 914 F.2d 889, 896 (7th Cir. 1990).

The public records exception of FRE 803(8) recognizes that "information may be passed among multiple public officials before being recorded in a document," and, accordingly, a report "will not be excluded merely because the author [did] not have firsthand knowledge of the reported matters." *Binns,* 712 F.3d at 1133; *see also Mathin v. Kerry*, 782 F.3d 804, 809 (7th Cir. 2015), *as amended on denial of reh'g* (July 7, 2015) (no error by district court admitting State Department report of investigation into birthright citizenship claim that contained information obtained by more than one investigator). Further, FRE 803(8) does not limit admission of public records to "final" factual findings, and the Supreme Court has endorsed a "broad approach to admissibility" under the rule. *Beech Aircraft*, 488 U.S. at 169. FRE 803(8) "encompasses opinions and conclusions and is not limited to purely factual findings." *United States v. Sutton*, 337 F.3d 792, 797 (7th Cir. 2003) (citing *Beech Aircraft*, 488 U.S. at 158); *see also Africano v. Atrium Med. Corp.*, No. 17-CV-7238, 2021 WL 4940974, at *1 (N.D. Ill., Oct. 5, 2021) (admitting FDA reports from on-site inspections of facilities that set forth observations of conditions that FDA inspectors believed constituted violations of regulations as public records under FRE 803(8), and noting the "balance of authority" had so held due to Supreme Court's "liberal treatment" of the public records exception).

If, however, any of the public records that the government seeks to admit contain third-party hearsay statements, then the government must provide an independent basis for admissibility.

6

*Binns*, 712 F.3d at 1133; *Atrium Med. Corp.*, 2021 WL 4940974, at *2. The government understands its obligations under FRE 805 to provide a basis for admission for any such statement. If there is not an applicable exception, then the statements can be redacted or excluded. *See Binns*, 712 F.3d at 1133–34.

Because the DQA records that the government intends to offer into evidence at trial are public records under FRE 803(8), defendant's Motion should be denied.

**C. The records are admissible pursuant to FRE 803(6) and 902(11).**

The DQA records related to the agency's surveys of Atrium Wisconsin facilities are also admissible under FRE 803(6) as records of a regularly conducted activity. FRE 803(6) provides that records of a regularly conducted activity are not excluded by the hearsay rule and are admissible as follows:

> A record of any act, event, condition, opinion, or diagnosis if: (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

The foundation for admission of records of a regularly conducted activity can be demonstrated through the testimony of a qualified witness that the records were kept in the course of a regularly conducted activity of the organization and that it was the regular practice of that organization to make such records, or the evidence can be self-authenticating pursuant to a

7

certification pursuant to FRE 902(11). Fed. R. Evid. 803(6); Fed. R. Evid. 902(11).[4] The qualified witness does not need to be the person who prepared the records or have personal knowledge of the information contained; the witness must, however, have knowledge of the procedure by which the records were created. *See United States v. Arias-Rodriguez*, 636 F. App'x 930, 934 (7th Cir. 2016); *BP Amoco Chem. Co. v. Flint Hills Res., LLC*, 697 F.Supp.2d 1001, 1022 (N.D. Ill. 2010) ("Under Rule 803(6), however, the class of witnesses qualified to establish foundation for business records is expansive.").

FRE 803(6) provides that regularly kept business records may be admitted to prove the truth of the matters asserted therein, because they are presumed to be exceptionally reliable. *United States v. Emenogha*, 1 F.3d 473, 484–85 (7th Cir. 1993) (finding bank records admissible under FRE 803(6)); *United States v. Brown*, 822 F.3d 966, 972–73 (7th Cir. 2016) (finding no abuse of discretion in district court's decision to admit wire transfer records in drug conspiracy case); *United States v. Zapata,* 871 F.2d 616, 625 (7th Cir.1989) (upholding admissibility of hotel guest registrations as reliable and noting "the key to satisfying Rule 803(6) . . . is whether an employee was 'able in some way to verify the information provided . . . .'"); *United States v. Goudy*, 792 F.2d 664, 676 (7th Cir. 1986) (bank records properly admitted under Rule 803(6)); *BP Amoco*, 697 F.Supp.2d at 1021 (allowing third party estimates in business dispute be admitted as business records under 803(6), which incorporated third-party documents into records); *McCormick v. Goebel*, 655 F.Supp.3d 748, 758 (N.D. Ind. 2023) (denying motion in limine and admitting state

---

[4] In defendant's Motion, he argues that the DQA records cannot be introduced at trial via a case agent. Motion at 7. The government will provide to defendants the required 902(11) certifications, thus providing the required authentication under FRE 803(6). The government also expects a qualified custodian of records associated with the DQA to testify at trial.

child protective services records, including case workers' notes, as business records under FRE 803(6), since they met "the straightforward definition of a business record").

The DQA conducted state surveys, both periodically and in response to complaints, to ensure compliance with the applicable standards of care required by the Centers for Medicare and Medicaid Services ("CMS"). Indictment ¶¶ 17, 18. When surveyors discovered deficiencies, they completed the Statement of Deficiency form, which was a standardized form issued by CMS and required by CMS to be used nationwide. Here, the DQA records, and specifically the SODs, meet the requirements set forth in FRE 803(6): they are records made at or near the time when the state receives a complaint or other information that causes it to conduct a survey of a nursing home; they are kept in the course of the DQA's regularly conducted oversight function; and making such records are the regular practice of the DQA's survey process. FRE 803(6).

As with public records, if any of the records that the government seeks to admit under FRE 803(6) contain third-party hearsay statements, then the government must provide an independent basis for admissibility. "[S]tatements ... that comprise multiple levels of potential hearsay are admissible if each part is admissible." *United States v. Green*, 258 F.3d 683, 690 (7th Cir. 2001) (citations omitted); *see* Fed. R. Evid. 805. The government understands its obligations under FRE 805 to provide a basis for admission for any such statement. If there is not an applicable exception, then the statements can be redacted or excluded. *See Binns*, 712 F.3d at 1133–34.

### D. Certain portions of the records may also be admissible pursuant to FRE 803(4) as statements made for medical diagnosis or treatment.

FRE 803(4) provides that statements made for medical diagnosis or treatment are excluded from the rule against hearsay if the statement "(A) is made for — and is reasonably pertinent to — medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." A statement that reveals symptoms, describes

9

circumstances of an injury, or otherwise provides information that a physician would consider relevant in the treatment of a medical condition would be admissible under FRE 803(4). Fed. R. Evid. 803(4)(B). "The test, when examining whether statements contained in medical records relating to the cause of an injury are admissible hearsay, is whether such statements are of the type reasonably pertinent to a physician in providing treatment." *United States v. Cherry*, 938 F.2d 748, 757 (7th Cir. 1991), citing *Cook v. Hoppin*, 783 F.2d 684, 690 (7th Cir. 1986).

Here, portions of the evidence at issue may include statements concerning or relating to patient health while at Atrium Wisconsin facilities, such as the circumstances of an injury or the dispensing of medication. To the extent that the statements are relevant and probative of the charged crimes, these statements would be excluded from the application of the hearsay rule under FRE 803(4). If that were to be the case, the government would inform the Court and the defendants of its basis for admission of such statements for determination if the statements met the requirements of FRE 803(4) and are admissible.

### E. The records at issue are not unduly prejudicial.

Defendant Breslin also argues that admission of the records at issue would be unfairly prejudicial. Motion at 10. FRE 403 provides that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In a criminal case, "this determination is made against the backdrop of the general presumption that the prosecution is entitled to tell 'a colorful story with descriptive richness' and 'evidentiary depth.'" *United States v. Johnson*, 89 F.4th 997, 1002 (7th Cir. 2024), quoting *Old Chief v. United States*, 519 U.S. 172, 187–90 (1997).

"The key modifier in Rule 403 . . . is that the hazarded prejudice must be *unfair*." *United States v. Briseno*, 88 F.Supp.3d 849, 850 (N.D. Ind. 2015), citing *United States v. Eads,* 729 F.3d 769, 777 (7th Cir.2013) ("Because all probative evidence is to some extent prejudicial, we have consistently emphasized that Rule 403 balancing turns on whether the prejudice is *unfair*.") (emphasis in original). If a court finds the danger of unfair prejudice exists, then it must weigh that danger against the probative value but will exclude the evidence only if the unfair prejudice "*substantially* outweighs" the probative value. *Briseno*, 88 F.Supp.3d at 850 (emphasis in original). "But even under FRE 403, the fact that evidence is even highly prejudicial is not sufficient to warrant exclusion; the evidence must be unfairly prejudicial in that it may induce the jury to reach a verdict on an improper ground, such as emotion, instead of the evidence presented." *Binns*, 712 F.3d at 1138.

Here, the risk of unfair prejudice to the defendant is not substantially outweighed by the probative value of records from the DQA. While certain portions of the evidence at issue recount serious conditions at Atrium Wisconsin facilities, that alone is not enough to cause such *unfair* prejudice as to warrant exclusion under FRE 403. *See, e.g.*, *United States v. Maggard*, 865 F.3d 960, 974–75 (7th Cir. 2017) (in drug case, finding no abuse of discretion by district court in not excluding, under Rule 403, details that were "appalling" but necessary to tell full story and connect defendant to charged crimes*))*; *United States v. Faruki*, 803 F.3d 847, 854–55 (7th Cir. 2015) (in fraud case, finding no abuse of discretion by district court in not excluding, under Rule 403, audiotapes of defendant making false statements; although district court found that playing the tapes would be prejudicial, it properly determined it would not be unduly so); *United States v. Norweathers*, 895 F.3d 485, 491 (7th Cir. 2018) (in child pornography case, affirming district court's determination not to exclude under Rule 403 inflammatory emails).

The defendant also claims that evidence dated after August 2018, when he was fired from Atrium, should be excluded under FRE 401 and 403. Motion at 13-14. The government does not agree that any "evidence of deficiencies or complaints at any of Atrium's facilities after August 2018…" must be irrelevant to the charges against defendant Breslin. The volume of discovery in this case is in the millions of documents. An entire class of materials should not be excluded without more specificity. There is certainly a scenario in which actions or inactions taken by the defendant in August 2018 could have had an impact on deficiencies or complaints at an Atrium facility in September 2018 or after. The government acknowledges the defendant's concern regarding this evidence and will be prepared to establish the relevancy and probative value of any evidence it seeks to introduce at trial, subject to the defendants' objections.

**F. Admission of the SODs and related evidence from the DQA's surveys does not implicate the Defendant's Sixth Amendment confrontation right.**

Although not raised by the defendant in his Motion, admission of evidence related to the DQA's surveys of the Atrium Wisconsin facilities also does not implicate the Defendant's Sixth Amendment confrontation right. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI.

In *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004), the Supreme Court held that a defendant's Sixth Amendment right of confrontation is implicated if proffered evidence is "testimonial." The Court explained that testimony is a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51 (cleaned up). To rank as "testimonial," a statement must have a "primary purpose" of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). In *Melendez-Diaz v. Massachusetts,* 557 U.S. 305 (2009)*,* the Supreme Court held that

"business and public records are generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." 557 U.S. at 324.

In *Melendez–Diaz,* the Supreme Court held that "certificates of analysis"—sworn statements in which state analysts asserted, based on laboratory testing, that a seized substance was cocaine—were testimonial because "they were essentially affidavits and were thus functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination." *United States v. Vitrano*, 747 F.3d 922, 924 (7th Cir. 2014), citing *Melendez-Diaz*, 557 U.S. at 310–11 (cleaned up). "The sworn nature of these statements was not essential; rather, it was dispositive that the certificates were 'incontrovertibly . . . affirmation[s] made for the purpose of establishing or proving some fact' in a criminal proceeding." *Vitrano*, 747 F.3d at 924, quoting *Bullcoming v. New Mexico,* 594 U.S. 647, 664 (2011) (quoting *Melendez–Diaz,* 557 U.S. at 310).

The DQA records at issue here are plainly not testimonial. As described more fully, above, the DQA, as part of its mandate to ensure that nursing facilities operate in compliance with all applicable federal, state, and local laws and regulations, conducts on-site inspections both periodically and in response to complaints and creates agency records as part of that process, including publicly available SODs that set out any deficiencies found pursuant to those inspections. These records were not created for the purpose of establishing or proving a fact to be used at a criminal trial, nor are they affidavits. The admission of the records therefore does not implicate the Defendant's Sixth Amendment confrontation right.

## III. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's motion.

Respectfully submitted on behalf of the parties,

TIMOTHY M. O'SHEA
UNITED STATES ATTORNEY

AMANDA N. LISKAMM
DIRECTOR
CONSUMER PROTECTION BRANCH

 /s/    Steven R. Scott
Steven R. Scott
Karla-Dee Clark
Rowan Reid
Trial Attorneys
U.S. Department of Justice
Consumer Protection Branch
450 Fifth Street, NW, Suite 6400S
Washington, D.C.  20001
Clark (202) 532-4098; Scott (202) 286-5293; Reid (202) 532-4315
Karla-Dee.Clark@usdoj.gov;
Steven.R.Scott@usdoj.gov;
Rowen.L.Reid@usdoj.gov