UNITED STATES OF AMERICA

v.

KEVIN BRESLIN, and            Case No. 23-cr-00010 (WMC)
KBWB OPERATIONS, LLC d/b/a
Atrium Health and Senior Living,

         Defendants.

### REPLY IN SUPPORT OF DEFENDANT KEVIN BRESLIN'S
### MOTION TO EXCLUDE GOVERNMENT EXPERT SUZANNE BESSETTE

One of the Government's disclosed experts, Suzanne Bessette, offered opinions addressing the standard of care at defendant Atrium Health and Senior Living's ("Atrium") facilities and whether defendants Kevin Breslin and Atrium breached that standard of care. Breslin moved to bar Ms. Bessette from testifying under Rule 702 and *Daubert* on the basis that her opinions are unreliable and, in two particular instances, not supported by sufficient qualifications. (Dkt. 82, Mot. to Exclude Bessette.) The Government opposes Breslin's motion, but its opposition does not overcome the arguments for exclusion made by Breslin. For the reasons discussed below and in Breslin's opening motion, Ms. Bessette's expert testimony should be excluded.

**I.  Ms. Bessette's Experience Does Not Make Her Expert Testimony Reliable.**

As an initial matter, the Government contends that Ms. Bessette's extensive experience in the nursing industry provides a reliable and sufficient basis for her expert opinions. (Dkt. 100, Gov't Resp., pp. 3, 7-8.) This is not the case. Ms. Bessette's experience may mean she is qualified to testify as an expert on certain matters, but it does not, without more, demonstrate that the testimony she plans to provide is reliable under Rule 702 and *Daubert*. *Kirk v. Clark Equip. Co.*,

991 F.3d 865, 873-74 (7th Cir. 2021) (rejecting plaintiffs' argument that their expert's qualifications alone rendered his testimony reliable); *United States v. McClain*, 2023 U.S. Dist. LEXIS 38669, at *5-6 (N.D. Ill. Mar. 8, 2023) (the Government expert's extensive publishing record was not enough to show that his testimony was "the product of reliable principles or methods"). Even a "supremely qualified expert" cannot render opinions at trial unless they are reliable. *Kirk*, 991 F.3d at 873-74; *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999). Thus, the Government's recitation of Ms. Bessette's experience—without any explanation as to if and how Ms. Bessette relied upon this experience to arrive at the conclusions challenged by Breslin—does nothing to show that her testimony is based on a reliable foundation or employs a reliable methodology.

II. **Ms. Bessette's Reliance on Third-Party Summaries and Data is not an Acceptable Expert Methodology.**

The Court should exclude Ms. Bessette's expert testimony because she did not conduct her own investigation of the facts by interviewing witnesses or even relying upon transcripts or recordings of witness interviews. She instead blindly accepted and relied upon materials and summaries of interviews prepared by state surveyors and investigating case agents, which are necessarily biased toward the task the surveyor or agent is trying to accomplish. (Mot. to Exclude Bessette, pp. 2-3, 5-6.)

The Government does not dispute that Ms. Bessette relied upon summaries of evidence prepared by state surveyors and case agents. Rather, it contends that she was permitted to do so under Federal Rule of Evidence 703. (Gov't Resp., pp. 9-10.) Rule 703 allows an expert to render an opinion based on inadmissible facts or data, including inadmissible hearsay, but only if—and this is key—"experts in the particular field would reasonably rely upon those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. And it is the Government's burden to

show that this reasonable reliance requirement has been satisfied. *See McLaughlin Equip. Co. v. Newcourt Credit Grp., Inc.*, 2004 U.S. Dist. LEXIS 13939, at *23 (S.D. Ind. Feb. 18, 2004); *Menasha Corp. v. News Am. Mktg. In-Store, Inc.*, 238 F. Supp. 2d 1024, 1030 (N.D. Ill. 2003).

The Government has not met its burden. It does not, for instance, point to any portion of Ms. Bessette's expert report where she provides a basis to conclude that it is reasonable for nursing experts opining about standard-of-care and regulatory violations to rely upon witness interview reports, exhibits used during those interviews, or SODs. Nor does the bare (and repeated) assertion by the Government's attorneys that witness interview reports are a source reasonably relied upon by experts in the nursing field suffice (Gov't Resp., pp. 10-11), as "saying so does not make it so." *Guerrero v. BNSF Ry. Co.*, 929 F.3d 926, 929 (7th Cir. 2019); *United States v. Harris*, 491 F. Supp. 3d 414, 424 (E.D. Wis. 2020); *see also Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015) ("assertions in briefs are not evidence"). And although *United States v. Gardner*, cited by the Government (Gov't Resp., p. 11), held that reports, photographs, and third-party observations met Rule 703's reasonable reliance test, that case addressed experts in the field of fire cause and origin, not experts in the nursing industry. 211 F.3d 1049, 1054 (7th Cir. 2000). Thus, *Gardner* gets the Government no closer to meeting its burden.

To be clear, Breslin does not contend that Ms. Bessette's expert opinions are unreliable because they refer to hearsay or information provided by another individual. Breslin contends that Ms. Bessette's opinions are unreliable because she accepts and restates, without any independent scrutiny, summaries of evidence that "are slanted with an eye towards demonstrating a basis for findings of deficiencies in the case of the state surveyors, and demonstrating a basis for criminal charges in the case of the case agents." (Mot. to Exclude Bessette, p. 6.)

3
1027201\322483047.v1

Contrary to the Government's assertion (Gov't Resp., p. 11), Ms. Bessette's opinions and conclusions are not independent; she repeatedly adopted the conclusions contained in the witness interview reports and SODs as her own. For example, Ms. Bessette concludes that the "physical plants and environment at each facility were not maintained in compliance with the standards of care" based solely on the fact that surveys and interviews (which are actually summary reports of interviews) "depicted buildings . . . in various states of disrepair." (Dkt. 82-1, Ex. B to Mot. to Exclude Bessette ("Bessette Rpt."), pp. 5-6 & n.4.) She did not analyze the maintenance or upkeep of any given facility herself or otherwise conduct her own independent investigation of the facilities' conditions. Similarly, Ms. Bessette concluded that defendants breached the standard of care regarding appropriate policies and procedures based on her review of witness interview reports and SODs. (*Id.*, pp. 6-7.) Yet she did not identify a single policy of a single facility to determine whether that policy complied with the standards of care. In fact, Ms. Bessette continued this pattern of accepting and parroting the findings of state surveyors and the summaries of witness interviews compiled by case agents in opining that Atrium and its facilities breached the standards of care regarding infection control, staffing, inappropriate admissions, assessments and care planning, prevention of abuse and neglect, resident trust accounts and "deposits," emergency preparedness, food and nutrition/dietary services, notification of physician/family, grievances, unnecessary drugs, and quality of care/quality of life/resident rights/dignity/administration. (Mot. to Exclude Bessette, pp. 7-8). Simply adopting and repeating person A's finding or summary based on what person B said, as Ms. Bessette did, does not constitute an analysis of the evidence, let alone a reliable one.

Just as an expert's reliance on deposition summaries prepared by an attorney is unacceptable because of the attorney's biased role as an advocate (among other things),

*Sommerfield v. City of Chicago*, 254 F.R.D. 317, 321-22 (N.D. Ill. 2008), so too is Ms. Bessette's reliance on reports by state surveyors and case agents who obtained and summarized the evidence with the bias inherent in their jobs. The Government tries to distinguish *Sommerfield* on the basis that in that case, the expert relied upon summaries of deposition transcripts provided by the plaintiff's attorney, whereas here, no attorney or law enforcement agent selected and summarized the witness interview reports upon which Ms. Bessette relied. (Gov't Resp., pp. 11-12.) This distinction makes no sense. The problem in *Sommerfield* was that the expert did not rely upon the actual deposition testimony of witnesses; he instead relied upon summaries of deposition transcripts prepared by a biased individual, the plaintiff's attorney. 254 F.R.D. at 322. The same problem exists here. Ms. Bessette does not rely upon the actual statements given by witnesses during their interviews, but upon summaries of these interviews prepared by federal law enforcement agents and investigators[1]—individuals who are biased toward demonstrating a basis for criminal charges. That the Government did not add another layer of culling and summarizing the evidence does not make the underlying witness interview reports any more reliable.

The Government next contends that SODs are different from interview reports because they are not prepared for litigation, they document non-compliance with federal requirements and regulations, and they must be approved by the Centers for Medicare and Medicaid Services (CMS) (Gov't Resp., p. 12.) The Government then proceeds to explain the survey process that certifies whether skilled nursing facilities comply with federal requirements. (*Id.*, pp. 12-13.) Yet none of this changes the fact that the SODs, like the interview reports, reflect an individual's *summary* of

---

[1] The Government concedes that memoranda and reports of interviews summarize the witnesses' answers to the interviewing agents' and investigators' questions. (Gov't Resp., p. 9.)

an interview he or she conducted of a resident or a staff member, not the actual statements made by the interviewee.

The Government further points out that expert testimony need not be based on firsthand knowledge or research. (Gov't Resp., p. 13.) True, but the testimony must do more than simply regurgitate what others have said, and the underlying bases still must be reliable. And while the Seventh Circuit in *Walker v. Soo Line R.R.*, 208 F.3d 581, 588 (7th Cir. 2000) noted that "courts frequently have pointed to an expert's reliance on the reports of others as an indication that their testimony is reliable" (Gov't Resp., p. 13), *Walker* also recognized that expert testimony relying upon others' opinions should be rejected if "the underlying basis is faulty." 208 F.3d at 588. Here, Ms. Bessette's reliance on the written interview summaries and the SODs is a faulty basis that justifies excluding her opinions.

The Government also asserts that the witness interview reports and SODs are not the sole bases for Ms. Bessette's opinions, and that many issues and areas of concern raised in these documents were set forth in other documents reviewed and analyzed by Ms. Bessette. (Gov't Resp., p. 10-11.) But Ms. Bessette's *report* does not indicate that she relied upon these other documents in any great measure. Instead, she time and again cited to the witness review reports and the SODs. (*See, e.g.*, Bessette Rpt., p. 6 nn. 4-5, 8; *id.*, p. 7 nn. 11-13; *id.*, p. 8 n. 17; *id.*, p. 9 n. 18; *id.*, p. 10, n. 23; *id.*, p. 11, nn. 28, 31, 32; *id.*, p. 12, nn. 34-37; *id.*, p. 13, nn. 39-40, *id.*, p. 14 nn. 43-44.) What matters is what Ms. Bessette said in her report, not what the Government says after the fact. And if there are specific aspects of Ms. Bessette's anticipated testimony that can be separated from her reliance on the witness review reports and SODs, the Government presumably would have identified them. It has not done so.

Finally, the Government argues that any objections to the reliability of the witness interview reports and the SODs go to the weight of the evidence, not its admissibility, and can be challenged by way of cross-examination. (Gov't Resp., p. 11.) But the ability to cross-examine an expert does not justify admitting an expert opinion that does not satisfy *Daubert*'s reliability threshold in the first place. *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 800 (N.D. Ill. 2005).

### III. Ms. Bessette's Opinions on Insufficient Staffing and Inadequate Funding are Unreliable.

As set forth in Breslin's opening motion, Ms. Bessette's opinion that Atrium's staffing was insufficient is unreliable and inadmissible for three reasons. First, by indiscriminately citing to four years' worth of surveys at 23 different facilities without any specific reference to or analysis of a particular survey (with one exception), Ms. Bessette fails to provide a rational basis for her opinions. (Mot. to Exclude Bessette, pp. 8-9.) Second, she unjustifiably leaps to the conclusion that widespread staffing issues existed across all 23 facilities over a four-year time period based on her analysis of *six* individual residents out of the hundreds to thousands of residents cared for by Atrium during that time period. (*Id.*, pp. 9-10.) Third, she failed to provide or analyze any useful statistical data relevant to whether Atrium was adequately staffed or funded. (*Id.*, pp. 10-12.)

The Government does not dispute these shortcomings. (Gov't Resp., pp. 14-15.) Indeed, it concedes that the actual staffing needed will vary "[b]ased on the acuity and diagnosis of the residents" at each facility (*id.*, p. 14)—something that Ms. Bessette's report does not address. The Government instead maintains that the records reviewed by Ms. Bessette showed that Atrium's facilities were inadequately staffed; in particular, unidentified SODs contain certain deficiency findings indicative of insufficient staff, unidentified witness interview reports assert problems that purportedly reveal short staffing, and at least some quality indicators in the five-star rating system

indicate insufficient staffing. (*Id.*, pp. 14-15.) Aside from the fact that the Government does not identify any of this purported documentary support with specificity, the Government's recitation of record evidence that supposedly supports Ms. Bessette's inadequate staffing opinions cannot make up for Ms. Bessette's failure to specifically identify this evidence and explain how it led to her conclusions as part of her expert disclosures.

IV. **Ms. Bessette is Not Qualified to Opine About the Misappropriation of Funds or Emergency Preparedness.**

Ms. Bessette, who was disclosed as a nursing expert and whose background, experience, and training has focused on nursing, is not qualified to opine that (1) Atrium misappropriated resident funds held in trust, or (2) Atrium's "emergency equipment was not maintained in good working order" and the facilities' structures violated fire safety and emergency requirements. (Mot. to Exclude Bessette, pp. 12-13.) The Government does not contend that Ms. Bessette is qualified to opine about Atrium's alleged misappropriation, so the Court should exclude that opinion as set forth in Breslin's opening motion.

The Government does contend that Ms. Bessette has experience in emergency preparedness, and it proceeds to describe what Ms. Bessette supposedly has done in the past with respect to this subject matter. (Gov't Resp., p. 15.) The problem is that the Government does not cite to any aspect of Ms. Bessette's expert report or CV that supports its description. It was the Government's and Ms. Bessette's obligation to disclose all the qualifications and experience that provided support for her opinions as part of her Rule 16(a)(1)(G) expert disclosures. Doing so weeks after the disclosure deadline, and only once Ms. Bessette's opinions have been challenged, should not be allowed to provide a basis for these otherwise unqualified opinions.

The Government also contends that Ms. Bessette is qualified to independently opine that the facilities' physical environments did not comply with federal requirements. (*Id.*, p. 16.) Based

8

1027201\322483047.v1

indicate insufficient staffing. (*Id.*, pp. 14-15.) Aside from the fact that the Government does not identify any of this purported documentary support with specificity, the Government's recitation of record evidence that supposedly supports Ms. Bessette's inadequate staffing opinions cannot make up for Ms. Bessette's failure to specifically identify this evidence and explain how it led to her conclusions as part of her expert disclosures.

IV. **Ms. Bessette is Not Qualified to Opine About the Misappropriation of Funds or Emergency Preparedness.**

Ms. Bessette, who was disclosed as a nursing expert and whose background, experience, and training has focused on nursing, is not qualified to opine that (1) Atrium misappropriated resident funds held in trust, or (2) Atrium's "emergency equipment was not maintained in good working order" and the facilities' structures violated fire safety and emergency requirements. (Mot. to Exclude Bessette, pp. 12-13.) The Government does not contend that Ms. Bessette is qualified to opine about Atrium's alleged misappropriation, so the Court should exclude that opinion as set forth in Breslin's opening motion.

The Government does contend that Ms. Bessette has experience in emergency preparedness, and it proceeds to describe what Ms. Bessette supposedly has done in the past with respect to this subject matter. (Gov't Resp., p. 15.) The problem is that the Government does not cite to any aspect of Ms. Bessette's expert report or CV that supports its description. It was the Government's and Ms. Bessette's obligation to disclose all the qualifications and experience that provided support for her opinions as part of her Rule 16(a)(1)(G) expert disclosures. Doing so weeks after the disclosure deadline, and only once Ms. Bessette's opinions have been challenged, should not be allowed to provide a basis for these otherwise unqualified opinions.

The Government also contends that Ms. Bessette is qualified to independently opine that the facilities' physical environments did not comply with federal requirements. (*Id.*, p. 16.) Based

on what? Again, the Government does not point to any aspect of Ms. Bessette's expert disclosures that discloses these qualifications, and to the extent the Government relies upon its description on the previous page, that too is lacking any citation to Ms. Bessette's expert disclosures. What is more, the Government's assertion that the SODs contained findings regarding non-compliance with physical maintenance and environmental requirements (*id.*) indicates that Ms. Bessette's identical conclusion on the matter is merely an echo of the SOD findings, not an independent opinion.

V. **Ms. Bessette Should Not Be Allowed to Testify About Other Non-Compliance Issues.**

The Government further argues that Ms. Bessette should be allowed to opine that defendants crippled Atrium's nursing facilities in many different ways and that defendants did not comply with federal regulations in several different areas because (1) experts can opine regarding an ultimate issue under Federal Rule of Evidence 704, and (2) Breslin may challenge her opinion with vigorous cross-examination. (Gov't Resp., pp. 16-18.) The first argument is a red herring. Breslin did not argue that Ms. Bessette's opinions improperly addressed an ultimate issue, so Rule 704 does not provide a basis to deny Breslin's motion.

And the second argument overlooks the fact that an expert's opinion must be sufficiently reliable under *Daubert* before it can be heard by the jury and challenged by the other side on cross-examination. *See Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) ("*If* the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof. (quotation marks omitted; emphasis added)). In other words, the availability of cross-examination does not cure an expert opinion that is too unreliable to present to the jury in the first place. *Loeffel Steel Prods.*, 387 F. Supp. 2d at 800.

The Government also contends that Ms. Bessette's expert testimony is relevant because it "is necessary to assist the jury in understanding the evidence, the standards of care, federal requirements and regulations, and to evaluate whether the defendants violated the federal regulations." (Gov't Resp., p. 18.) As the Government acknowledges, however, expert testimony is only relevant if it has "something 'useful to say' about the particular circumstances at issue." (*Id.*, quoting *Downing v. Abbott Laboratories*, 48 F.4th 793, 810 (7th Cir. 2022).) Expert testimony, like Ms. Bessette's, that merely parrots summaries of witness statements does not add anything useful above and beyond what testimony from the witnesses themselves would provide.

## VI. Ms. Bessette is an Advocate for the Government, not an Independent Witness.

The Government does not dispute, or even address, that Ms. Bessette has failed to maintain objectivity in her role as an expert witness, or that her expert opinions include hyperbole intended to inflame a jury and to advocate for the Government's position. (Mot. to Exclude Bessette, p. 13.) This further shows why Ms. Bessette's testimony is too unreliable to be allowed to be heard by a jury. (*Id.*)

## VII. Any Testimony From Ms. Bessette Should be Limited to Testimony About the Six Residents and Ten Facilities She Identifies in her Expert Report

Ms. Bessette's Rule 16 disclosure opines that the number of staff was "insufficient to meet the needs of the residents living in Atrium's Wisconsin facilities" and that residents living in these facilities "suffered declines in condition, lost weight, endured unspeakable pain and died." (Dkt. 81-1, Ex. A to Mot. to Exclude Bessette ("Bessette Disclosure").) Ms. Bessette's broadly worded disclosure suggests that she intends to opine about any and all of the 23 Atrium facilities, as well as care provided to any of the residents of these facilities.

If Ms. Bessette is permitted to testify at all, she should not be allowed to opine so broadly. She should be limited to opining about the six residents that she expressly names as being covered

10

1027201\322483047.v1

by her report: David P., Gwendolyn S., Lloyd B., Robert C., Norma B., and Agnes K. (Bessette Rpt., p. 1.) Similarly, she should be limited to opining about only the ten facilities she expressly names as being covered by her report: Appleton, Black River Falls, Chetek, Lancaster, Neenah, Plymouth, Two Rivers, Weston, Williams Bay, and Wisconsin Rapids. (*Id.*)

## VIII. Conclusion

For the foregoing reasons and those set forth in his opening motion, Defendant Kevin Breslin respectfully requests that this Court enter an order excluding Suzanne Bessette as an expert witness pursuant to Rule 702 and *Daubert*, limit her testimony as discussed herein, hold an evidentiary hearing if necessary, and/or grant any other relief that this Court deems appropriate.

    Respectfully submitted,

    HINSHAW AND CULBERTSON LLP

By:   */s Kenneth E. Yeadon*
     KENNETH E. YEADON

Dated: September 24, 2024