IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

v.

KEVIN BRESLIN, and            Case No. 23-cr-00010 (WMC)
KBWB OPERATIONS, LLC d/b/a
Atrium Health and Senior Living,

Defendants.

# REPLY IN SUPPORT OF DEFENDANT KEVIN BRESLIN'S MOTION TO EXCLUDE GOVERNMENT EXPERT SUZANNE FREDERICK

One of the Government's disclosed experts, Suzanne Frederick, offered opinions addressing the standard of care at defendant Atrium Health and Senior Living's ("Atrium") facilities and whether defendants Kevin Breslin and Atrium breached that standard of care. Breslin moved to bar Ms. Frederick from testifying under Rule 702 and *Daubert* on the basis that her opinions are unreliable. (Dkt. 83, Mot. to Exclude Frederick.) The Government opposes Breslin's motion, but its opposition does not overcome the arguments for exclusion made by Breslin. For the reasons discussed below and in Breslin's opening motion, Ms. Frederick's expert testimony should be excluded.

**I.  Ms. Frederick's Experience Does Not Make Her Expert Testimony Reliable.**

As an initial matter, the Government contends that Ms. Frederick's extensive experience in the nursing industry and with giving expert testimony provides a reliable and sufficient basis for her opinions. (Dkt. 99, Gov't Resp., pp. 2, 6.) This is not the case. Ms. Frederick's experience may mean she is qualified to testify as an expert on certain matters, but it does not, without more, demonstrate that the testimony she plans to provide is reliable under Rule 702 and *Daubert*. *Kirk*

*v. Clark Equip. Co.*, 991 F.3d 865, 873-74 (7th Cir. 2021) (rejecting plaintiffs' argument that their expert's qualifications alone rendered his testimony reliable); *United States v. McClain*, 2023 U.S. Dist. LEXIS 38669, at *5-6 (N.D. Ill. Mar. 8, 2023) (the Government expert's extensive publishing record was not enough to show that his testimony was "the product of reliable principles or methods"). Indeed, even a "supremely qualified expert" cannot render opinions at trial unless they are reliable. *Kirk*, 991 F.3d at 873-74; *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999).

Thus, the Government's recitation of Ms. Frederick's experience, education, and training—without any explanation as to if and how Ms. Frederick relied upon this background to arrive at the conclusions challenged by Breslin—does nothing to show that her testimony is based on a reliable foundation or employs a reliable methodology. Specifically, Ms. Frederick's qualifications do not make reliable her dependence on summaries of witness statements to arrive at her opinions, including her conclusion that Atrium "purposefully understaffed" its facilities and that insufficient staffing significantly contributed to all the instances of alleged substandard care provided by the nursing staff. (Mot. to Exclude Frederick, pp. 5-10.) Nor do Ms. Frederick's qualifications make up for her failure to provide or analyze any useful statistical data (e.g., facility census, minimal staffing requirements, actual staff numbers, acuity of resident population) to support these conclusions. (*Id.*, pp. 10-12.) These aspects of Ms. Frederick's opinion warrant exclusion under Rule 702 and *Daubert*, notwithstanding Ms. Frederick's extensive experience.

II. **Ms. Frederick's Reliance on Third-Party Summaries and Data Is Not an Acceptable Expert Methodology.**

The Court should exclude Ms. Frederick's expert testimony because she did not conduct her own investigation of the facts by interviewing witnesses or even relying upon transcripts or recordings of witness interviews. She instead blindly accepted and relied upon materials and summaries of interviews prepared by state surveyors and investigating case agents, which are

necessarily biased toward the task the surveyor or agent is trying to accomplish. (Mot. to Exclude Frederick, pp. 2-3, 5-6.)

The Government does not dispute that Ms. Frederick's opinions adopted and relied upon summaries of evidence prepared by state surveyors and case agents. Rather, it contends that Ms. Frederick was permitted to do so under Federal Rule of Evidence 703. (Gov't Resp., pp. 7-8.) Rule 703 allows an expert to render an opinion based on inadmissible facts or data, including inadmissible hearsay, but only if—and this is key—"experts in the particular field would reasonably rely upon those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. And it is the Government's burden to show that this reasonable reliance requirement has been satisfied. *See McLaughlin Equip. Co. v. Newcourt Credit Grp., Inc.*, 2004 U.S. Dist. LEXIS 13939, at *23 (S.D. Ind. Feb. 18, 2004); *Menasha Corp. v. News Am. Mktg. In-Store, Inc.*, 238 F. Supp. 2d 1024, 1030 (N.D. Ill. 2003).

The Government has not met its burden. It does not, for instance, point to any portion of Ms. Frederick's expert report where she provides a basis to conclude that it is reasonable for experts opining about standard-of-care violations to rely upon summaries of witness statements contained in witness interview reports or SODs. Nor does the bare assertion by the Government's attorneys that "[w]itness interview reports from law enforcement special agents are a source reasonably relied upon by experts in the nursing industry" suffice (Gov't Resp., p. 8), as "saying so does not make it so." *Guerrero v. BNSF Ry. Co.*, 929 F.3d 926, 929 (7th Cir. 2019); *United States v. Harris*, 491 F. Supp. 3d 414, 424 (E.D. Wis. 2020); *see also Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015) ("assertions in briefs are not evidence").

To be clear, Breslin does not contend that Ms. Frederick's expert opinion is unreliable because it relies upon hearsay or information provided by another individual. Breslin contends that

Ms. Frederick's opinion is unreliable because she accepts and restates, without any independent scrutiny, summaries of evidence that "are slanted with an eye towards demonstrating a basis for findings of deficiencies in the case of the state surveyors and for criminal charges in the case of the case agents." (Mot. to Exclude Frederick, pp. 5-6.) Simply adopting and repeating someone else's (biased) summary of what yet another person said does not constitute an analysis of the evidence, let alone a reliable one.

Just as an expert's reliance on deposition summaries prepared by an attorney is unacceptable because of the attorney's biased role as an advocate (among other things), *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 321-22 (N.D. Ill. 2008), so too is Ms. Frederick's reliance on reports by state surveyors and case agents who obtained and summarized the evidence with the bias inherent in their jobs. The Government tries to distinguish *Sommerfield* on the basis that in that case, the expert relied upon summaries of deposition transcripts provided by the plaintiff's attorney, whereas here, no attorney or law enforcement agent summarized the witness interview reports upon which Ms. Frederick relied. (Gov't Resp., pp. 8-9.) This distinction makes no sense. The problem in *Sommerfield* was that the expert did not rely upon the actual deposition testimony of witnesses; he instead relied upon summaries of deposition transcripts prepared by a biased individual, the plaintiff's attorney. 254 F.R.D. at 322. The same problem exists here. Ms. Frederick does not rely upon the actual statements given by witnesses during their interviews, but upon summaries of these interviews prepared by federal law enforcement agents and investigators[1]—individuals who are biased toward demonstrating a basis for criminal charges.

---

[1] The Government concedes that memoranda and reports of interviews summarize the witnesses' answers to the interviewing agents' and investigators' questions. (Gov't Resp., p. 7.)

That the Government did not add another layer of summarized evidence does not make the underlying witness interview reports any more reliable.

The Government next contends that SODs are different from the interview reports because they are not prepared for litigation, they document non-compliance with federal requirements and regulations, and they must be approved by the Centers for Medicare and Medicaid Services (CMS) (Gov't Resp., p. 9.) The Government then proceeds to explain the survey process that certifies whether skilled nursing facilities comply with federal requirements. (*Id.*, pp. 9-10.) Yet none of this changes the fact that the SODs, like the interview reports, reflect an individual's *summary* of an interview he or she conducted of a resident or a staff member, not the actual statements made by the interviewee.

The Government further points out that expert testimony need not be based on firsthand knowledge or research. (Gov't Resp., p. 10.) True, but the testimony must do more than simply regurgitate what others have said, and the underlying bases still must be reliable. And while the Seventh Circuit in *Walker v. Soo Line R.R.*, 208 F.3d 581, 588 (7th Cir. 2000) noted that "courts frequently have pointed to an expert's reliance on the reports of others as an indication that their testimony is reliable" (Gov't Resp., p. 10), *Walker* also recognized that expert testimony relying upon others' opinions should be rejected if "the underlying basis is faulty." 208 F.3d at 588. Here, Ms. Frederick's reliance on the written interview summaries and the SODs is a faulty basis that justifies excluding her opinion.

The Government also asserts that the witness interview records are not the sole basis for Ms. Frederick's opinions, and that Breslin's objections to the reliability of these materials go to the weight of the evidence, not its admissibility. (Gov't Resp., p. 8.) As Breslin already noted, though, the information and conclusions provided in the interview summaries and the SODs touch

upon every aspect of Ms. Frederick's proposed testimony. (Mot. to Exclude Frederick, p. 6.) If there are aspects of Ms. Frederick's testimony that can be separated from her reliance on these materials, the Government presumably would have identified them, which it has not done. Moreover, the ability to cross-examine an expert does not justify admitting an expert opinion that does not satisfy *Daubert*'s reliability threshold in the first place. *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 800 (N.D. Ill. 2005).

### III. Ms. Frederick's Opinions on "Insufficient Staffing" and Causation are Unreliable.

As set forth in Breslin's opening motion, Ms. Frederick's opinion that insufficient staffing caused residents to receive substandard care is unreliable for three reasons. First, Ms. Frederick relied upon summaries of witnesses' anecdotal statements; second, she did not provide or analyze any useful statistical data; and third, she did not account for obvious alternative explanations. (Mot. to Exclude Frederick, pp. 7-13.)

The Government does not meaningfully dispute the first two bases. It asserts that Ms. Frederick's "conclusions were based on her professional experience and the totality of her review of all the materials listed in Appendix A of her expert reports" (Gov't Resp., p. 11), but this assertion does not in any way suggest that Ms. Frederick's experience and review of these materials cures her reliance upon statement summaries and her failure to look to useful statistical data. The Government also says that Ms. Frederick accounted for the acuity of Robert H. and James S. (*Id.*) This might have been sufficient if Robert H. was the only resident at Black River Falls, and James S. was the only resident at Appleton. But they weren't. The two facilities had many other residents, and the acuity of *these* residents necessarily impacted whether staffing was sufficient for the facilities' residents, including Robert H. and James S. Yet Ms. Frederick failed to consider this vital piece of information.

As for Breslin's argument regarding Ms. Frederick's failure to consider obvious alternative explanations, such as staff negligence or carelessness, the Government responds that these explanations do not contradict Ms. Frederick's conclusion that Black River Falls and Appleton provided insufficient staffing. (Gov't Resp., pp. 11-12.) But what matters is what Ms. Frederick says about these explanations, not the Government. And Ms. Frederick's expert report does not consider these alternative explanations or provide a basis for ruling them out. Furthermore, this infirmity undermines the overall reliability of Ms. Frederick's conclusions; it is not sufficient to argue, as the Government does, that Ms. Frederick's omission can be exposed on cross-examination. *Lemmermann v. Blue Cross Blue Shield*, 713 F. Supp. 2d 791, 803 (E.D. Wis. 2010); *Loeffel Steel Prods.*, 387 F. Supp. 2d at 800.[2] Ms. Frederick's failure to consider obvious alternative explanations confirms the unreliability of her opinions. *See, e.g.*, *Kirk*, 991 F.3d at 876-77 (expert's "failure to account for and investigate potential alternative causes" supported the district court's finding that his testimony was unreliable); *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 783, 787 (7th Cir. 2017) (affirming exclusion of expert testimony as unreliable where the expert "failed to account for other possible explanations in arriving at his conclusion"); *Lemmermann*, 713 F. Supp. 2d at 803 (expert opinion not reliable where the expert did "not even attempt to grapple with the most obvious alternative explanation for how the explosion occurred").

---

[2] The Government's citation to *St. Paul Mercury Insurance Co. v. Viking Corp.*, 539 F.3d 623, 628-29 (7th Cir. 2008) does not compel a different result. In that case, the court "merely note[d] in passing" that there was "nothing problematic" about the defendant's expert's use of process of elimination to conclude that wear and tear on a sprinkler suggested the possibility of tampering. The court supported this observation with a parenthetical citation to a Sixth Circuit case, which found that expert testimony on causation need not eliminate all other possible causes of injury. This dictum does not require the Court to allow Ms. Frederick to give expert testimony that does not even *consider* other possible causes.

1027201\322483088.v1

**IV.  Any Testimony From Ms. Frederick Should be Limited to Testimony About the Appleton and Black River Falls Facilities and Residents James S. and Robert H.**

Ms. Frederick's Rule 16 disclosure opines that (1) defendants' alleged violations of the standard of care and applicable regulations placed "residents at the facilities, including [James S. and Robert H.], at increased risk of harm and caused harm to them in numerous ways," (2) defendants failed to provide proper nursing care to James S., Robert H., "and other residents," and (3) "the poor physical condition of the facilities," among other things, breached the standard of care. (Dkt. 86, Ex. A, § I.) In other words, Ms. Frederick's broadly worded disclosure suggests that she intends to opine about the 20-plus facilities other than those she actually addressed in her reports (Appleton and Black River Falls), as well as care provided to the untold number of residents other than the two residents that were the focus of her expert reports (James S. and Robert H.).

If Ms. Frederick is permitted to testify at all, she should not be allowed to opine about any facilities other than Appleton and Black River Falls. Indeed, the Government's opposition acknowledges that Ms. Frederick's expert report is limited to addressing these two facilities. (Gov't Resp., p. 1 (Ms. Frederick opined "that two of the Atrium Wisconsin facilities failed to meet certain standards of care"); *id.*, p. 11 ("Ms. Frederick concluded that insufficient staffing was a significant contributor to the pattern of substandard care provided by Black River Falls and Appleton Atrium facilities."); *id.*, p. 12 (Ms. Frederick concluded "that the Black River Falls and Appleton Atrium facilities provided insufficient staffing").) Similarly, Ms. Frederick should not be allowed to opine about any harm or increased risk of harm to residents other than James S. and Robert H., who are the subjects of her two expert reports.

## V. Conclusion

For the foregoing reasons and those set forth in his opening motion, Defendant Kevin Breslin respectfully requests that this Court enter an order excluding Suzanne Frederick as an expert witness pursuant to Rule 702 and *Daubert*, limit her testimony as discussed herein, hold an evidentiary hearing if necessary, and/or grant any other relief that this Court deems appropriate.

Respectfully submitted,

HINSHAW AND CULBERTSON LLP

By: */s Kenneth E. Yeadon*
     KENNETH E. YEADON

Dated: September 24, 2024

9

1027201\322483088.v1