IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**

v.

**KEVIN BRESLIN, and**                      Case No. 23-cr-00010 (WMC)
**KBWB OPERATIONS, LLC d/b/a**
**Atrium Health and Senior Living,**

           **Defendants.**

**REPLY IN SUPPORT OF DEFENDANT KEVIN BRESLIN'S
MOTION TO BAR STATEMENTS OF DEFICIENCIES
AND OTHER RECORDS RELATED TO STATE SURVEYS**

Defendant Kevin Breslin anticipates that the Government will seek to use or present at trial evidence consisting of or relating to Statements of Deficiencies ("SODs") and other materials relating to state agency surveys that were conducted by the Wisconsin Department of Health Service Division of Quality Assurance ("DQA"). He moves to bar this evidence as inadmissible because: (1) it constitutes hearsay that does not fall within any exceptions; (2) it includes inadmissible hearsay within hearsay; and (3) it is otherwise irrelevant and unfairly prejudicial to Breslin. (Dkt. 64, Mot. to Bar SODs.) For the reasons set forth in Breslin's opening motion and below, the Court should exclude this evidence.

**I.    Breslin's Motion Should Not Be Denied as Premature.**

The Government admits that it intends to use at trial the evidence identified in Breslin's motion. (Dkt. 101, Gov't Opp'n, pp. 2-3 ("At trial, the government intends to introduce certain evidence and offer witness testimony about the DQA's inspections and citations of Atrium Wisconsin facilities . . . .").) Nonetheless, the Government contends that Breslin's motion should

be denied as premature because the Government has not yet identified which SODs or related documents it will rely upon as exhibits. (*Id.*, p. 3 & n.2.) It also purports to reserve the right to later adduce additional bases of admissibility. (*Id.*)

Breslin's motion to bar is not premature. It is a pretrial motion, and Breslin filed it by the July 24, 2024 pretrial motion deadline set forth in the Court's amended scheduling order. (Dkt. 52, p. 2.) Moreover, the Government does not explain why its identification of the specific SODs or related documents as exhibits is necessary for the Court to determine whether they are inadmissible on the bases raised by Breslin. In any event, to the extent the Court finds it more appropriate or efficient to address these issues once the Government serves an exhibit list, it should not deny Breslin's motion as premature, but reserve ruling based on the specific exhibits identified by the Government.

## II. The SODs and the Statements and Observations Contained Therein Constitute Inadmissible Hearsay.

The SODs are statements that consist of surveyor observations and opinions regarding purported deficiencies, summaries of statements made by third parties (including residents, family members of residents, and staff), and other records including administrative records and resident medical records. (Mot. to Bar SODs, pp. 5-6.) The SODs are hearsay that does not fall within any hearsay exception. (*Id.*, pp. 6-8.) So are the statements and observations contained within the SODs (made by third parties and summarized and recommunicated by the surveyor), which constitute inadmissible "hearsay within hearsay." (*Id.*, pp. 8-9.) These documents and the statements therein are therefore inadmissible and should be excluded. *See* FRE 802; *Hunt v. Dart*, 754 F. Supp. 2d 962, 967 n.3 (N.D. Ill. 2010).

The Government does not dispute that the documents at issue constitute hearsay. Nor does it dispute that these documents may contain third-party hearsay statements that should be redacted

or excluded. (*E.g.*, Gov't Opp'n, pp. 6-7, 9.) The Government instead contends that these documents are admissible as public records under FRE 803(8) and 902(4) and records of regularly conducted activity (also known as "business records") under FRE 803(6) and 902(11). (*Id.*, pp. 3, 5-9.) The Government also contends that certain portions of these documents may be admissible under FRE 803(4). (*Id.*, pp. 3-4, 9-10.) None of these contentions carry the day.

A. **The SODs and Related Documents Are Not Public Records Under FRE 803(8).**

The Government first relies upon the "public records" exception set forth in Rule 803(8).[1] (Gov't Opp'n, pp. 5-7.) In a criminal case (as here), this exception covers three categories of records or statements of a public office: (1) records that set out the office's activities; (2) records that set out "a matter observed while under a legal duty to report," except for "a matter observed by law-enforcement personnel," and (3) "factual findings from a legally authorized investigation" if used against the Government. FRE 803(8)(A)(i)-(iii); *Jordan v. Binns*, 712 F.3d 1123, 1132 (7th Cir. 2013).

Despite acknowledging these categories, the Government fails to demonstrate that the SODs and related documents fall into one or more of these categories. *See United States v. Stern*, 2013 U.S. Dist. LEXIS 164455, at *5 (E.D. Wis. Nov. 18, 2013) (the proponent of evidence bears the burden of demonstrating its admissibility). Right off the bat, the Government does not argue that the documents set forth the activities of a public office (Rule 803(8)(A)(i)) or set out a matter observed by non-law-enforcement personnel under a legal duty to report (Rule 803(8)(A)(ii)). (Gov't Opp'n, pp. 5-6.) The Government instead appears to rely solely upon the "factual findings" category, as it argues that Rule 803(8) encompasses non-final factual findings, as well as opinions

---

[1] The Government indicates it will rely upon public record certifications under FRE 902(4) to authenticate and admit the SODs and related documents. (Gov't Opp'n, p. 5 & n.4.) The Government has not yet provided these certifications. It should do so immediately, as the final pretrial conference submission deadline (November 8, 2024) is rapidly approaching. (Dkt. 52, p. 2.)

3

and conclusions (not just purely factual findings). (*Id.*, p. 6.) But in a criminal case such as this, factual findings from a legally authorized investigation are admissible *only if* presented "against the government." FRE 803(8)(A)(iii). Here, the defendants are not trying to use any findings contained in the SODs and related documents against the Government; the Government wants to use these findings against the defendants. So, the "factual findings" provision does not apply.

Because none of the three categories apply in the first instance, the Government's contention that a report is not inadmissible merely due to the author's lack of firsthand knowledge does not get it anywhere. Nor do the Government's high-level contentions about Rule 803(8)'s liberal treatment or broad approach to admissibility. At bottom, one of the record categories identified by Rule 803(8) must apply for the rule to serve as a basis for admitting hearsay. And none apply here.

### B. The SODs and Related Documents Are Not Records of Regularly Conducted Activity Under FRE 803(6).

The Government next argues that the SODs and related survey documents are admissible as records of a regularly conducted activity under FRE 803(6), which it will introduce by way of certifications under FRE 902(11) and testimony from a qualified custodian of records. (Gov't Opp'n, pp. 7-9 & n.4.) The Government has not yet provided Rule 902(11) certifications to the defendants, however. If the Government intends to rely upon these certifications, it should produce them immediately so the defendants have "a fair opportunity to challenge the" certifications. FRE 902(11); *see also* Dkt. 76, p. 20 (noting that it's time for the Government to put its "cards face up on the table").

In any event, a document admissible under FRE 803(6) must, among other things, be a record that "was made at or near the time" of the act, event, condition, opinion, or diagnosis being recorded. FRE 803(6)(A). The SODs and related documents are created after, and in many cases

well after, the events and records they summarize. Furthermore, as the Government recognizes, records of regularly conducted activity are admissible "because they are presumed to be exceptionally reliable." (Gov't Opp'n, p. 8.) That reliability is missing from the SODs because the surveyors take no steps to verify the information they include in the SODs, which is often hearsay itself.

Finally, "the simple act of recording observable information" is the type of regularly conducted activity envisioned by FRE 803(6). *Abascal v. Fleckenstein*, 820 F.3d 561, 565-66 (2d Cir. 2016). The SODs and related documents, however, provide much more than simple observations; they provide a surveyor's opinion as to whether, based on his interpretation of the interviews he has conducted and the documentary information he has reviewed, the facility does or does not comply with applicable federal and state regulations. Documents that result from the subjective and selective interpretation of interviews and data, like the documents at issue here, do not fall within the scope of FRE 803(6). *See id.*; *Grant v. Lockett*, 2021 U.S. App. LEXIS 36164, at *6-7 (2d Cir. Dec. 8, 2021).

    **C.    The SODs and Related Documents Are Not Statements Made for Medical Diagnosis or Treatment Under FRE 803(4).**

The Government also contends that any portions of the SODs and related state survey documents that "include statements concerning or relating to patient health while at Atrium Wisconsin facilities, such as the circumstances of an injury or the dispensing of medication," are admissible under FRE 803(4). (Gov't Opp'n, pp. 9-10.) To be admissible under Rule 803(4), the statement must, among other things, be made for "*purpose*s of medical diagnosis or treatment." FRE 803(4); *Youngman v. Peoria Cnty.*, 947 F.3d 1037, 1043 (7th Cir. 2020) (emphasis added). The statement must also be made "by a person seeking medical attention to the person providing that attention." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 564 (7th Cir. 1996).

5

Statements in the SODs, even if they relate to a patient's health, are made by surveyors to determine whether a facility has substantially complied with federal and state regulations. The surveyors are neither seeking medical attention nor making statements for the purposes of being medically diagnosed or treated. Similarly, an individual who speaks to the surveyors is not doing so to seek medical attention or diagnosis; the surveyors are not the individual's doctor. And even if the surveyors summarize statements that have been provided by a patient to his doctor for treatment purposes (e.g., a statement found in a medical record), the statements at issue are still merely the surveyor's *summaries* of patient statements, not the statements themselves. In short, Rule 803(4) does not provide a basis to admit portions of the SODs.

### III. The SODs and Related Documents Are Irrelevant and Unduly Prejudicial.

Not only are the documents at issue inadmissible hearsay, they are also irrelevant to the charges against Breslin and unfairly prejudicial to him. (Mot. to Bar SODs, pp. 9-13.) Furthermore, any evidence of deficiencies found or complaints initiated after Breslin was fired from Atrium in August 2018 are irrelevant to the charges against Breslin and would only serve to unfairly prejudice him and inflame the jury. (*Id.*, pp. 13-14.)

Starting with the latter argument first, the Government admits that all the charges stem from when Breslin was Atrium's managing member, and "the factual basis for all of the charged conduct against defendant Breslin is his oversight and running of Atrium Wisconsin facilities." (Gov't Opp'n, p. 4.) But Breslin was not overseeing or running Atrium after he was fired in August 2018, so how could evidence from this timeframe be relevant to showing that he committed the alleged crimes? The Government does not give an explanation; it simply claims there is an unidentified scenario where the evidence could be relevant. (*Id.*, p. 12.) That is not good enough. The Government indicted Breslin back in February 2023 and was investigating this matter for years before. The Government should know by now what relevance (if any) post-firing evidence

of deficiencies and complaints has to proving that Breslin committed the charged crimes while he was running Atrium. Absent such an explanation, documentation that post-dates the factual basis for all the conduct charged against Breslin should be excluded.

So, too, should the SODs and related survey documents more generally (and regardless of their timeframe). Breslin anticipates, and the Government does not dispute, that the Government will seek to introduce the SODs and survey documents to show that Atrium's facilities were not "in compliance" with relevant federal regulations at the same time that Breslin and Atrium were representing that the facilities were compliant. (Mot. to Bar SODs, p. 9.) The SODs and survey documents are not findings of non-compliance, however; they merely reflect preliminary findings of deficiencies that, if not corrected, *may* result in a finding of substantial non-compliance. (*Id.*, pp. 9-10.) What is more, the Government does not allege that any of Atrium's facilities failed to correct the preliminary findings of deficiencies or properly address them with an accepted Plan of Correction ("POC"). (*Id.*, p. 10.) Because the SODs and survey documents are not evidence of non-compliance, they do not tend to make it more or less probable that as a result of Breslin's conduct, Atrium's facilities did not comply with federal regulations or that Breslin knew about any alleged non-compliance. Accordingly, these documents are irrelevant and inadmissible. *See* FRE 401, 402.

The Government's opposition does not show otherwise. The Government merely contends that relevancy is a low threshold and that the survey evidence is "clearly relevant" because the charges against Breslin stem from when he was in charge of Atrium's overall operations, including clinical operations. (Gov't Opp'n, p. 4.) But documents that touch upon clinical operations are not relevant simply because the Government has alleged that Breslin was in charge of clinical operations. If they were, each and every single document reflecting any aspect of Atrium's

operations—even those that have nothing to do with the criminal conduct alleged—would be relevant because the Government alleges that Breslin "was in charge of overall operations and supervised all aspects of the business." Indictment ¶ 1. That is not the case. The threshold for relevance may be low, but it is not illusory.

Furthermore, even if the SODs and related survey documents are marginally relevant, they should be excluded under FRE 403. *See United States v. Hamzeh*, 986 F.3d 1048, 1055 (7th Cir. 2021) (relevant evidence "is not automatically admissible," as it is still subject to other evidentiary rules, including Rule 403). Jurors, especially those who know someone or have a relative that lives or works in a nursing home, might be appalled at some of the conduct noted within the SODs, especially those findings showing actual and serious harm to a resident. (Mot. to Bar SODs, pp. 10-13.) And many of these findings are, in fact, appalling. But that is the problem; such findings are unfairly prejudicial because they "may induce the jury to reach a verdict [against Breslin] on an improper ground, such as emotion, instead of the evidence presented." *Jordan*, 712 F.3d at 1138.

The Government's response is essentially that although the SODs and related survey evidence will prejudice Breslin, he will not be *unfairly* prejudiced. (Gov't Opp'n, p. 11.) Not so. To be clear, Breslin is not arguing that all prejudicial evidence must be excluded. But prejudicial SOD and survey evidence that the Government fails to link to Breslin or his alleged criminal conduct provides no basis for the jury to ultimately find that Breslin committed the alleged crimes and, instead, simply fans the flames of the jurors' emotions. In other words, absent a showing that the findings in the SODs and related survey documents were caused by Breslin's alleged criminal conduct or known by Breslin, any probative value the findings have is substantially outweighed by their inflammatory nature and the unfair prejudice to Breslin. FRE 403.

## IV. Statements Contained in the SODs May Implicate Breslin's Sixth Amendment Right to Confrontation.

Lastly, the Government argues that admitting the SODs and related documents does not implicate Breslin's Sixth Amendment right to confrontation because they are not testimonial. (Gov't Opp'n, pp. 12-13.) Specifically, the Government argues, "these records were not created for the purpose of establishing or proving a fact to be used at a criminal trial, nor are they affidavits." (*Id.*)

That the records at issue are not affidavits does not preclude them from being considered testimonial for purposes of the Sixth Amendment's Confrontation Clause. *See Bullcoming v. New Mexico*, 564 U.S. 647, 664 (2011); *United States v. Vitrano*, 747 F.3d 922, 924 (7th Cir. 2014) (the sworn nature of statements is not essential to determining whether they are testimonial). Hearsay-within-hearsay witness statements reflected in the SODs and related documents may also be testimonial statements that implicate Breslin's confrontation rights; it depends on why the statement was made and the Government's purpose for introducing the statement. *See, e.g.*, *Wilson v. Boughton*, 41 F.4th 803, 810 (7th Cir. 2022) (determining whether a statement is testimonial generally requires looking to the statement's primary purpose); *United States v. Wright*, 722 F.3d 1064, 1067 (7th Cir. 2013) (Confrontation Clause applies to testimonial statements admitted for the truth of the matters asserted but not to statements providing context to the defendant's own admissions). To the extent the Government seeks to admit statements contained in the SODs that are testimonial and for the truth of the matters asserted, Breslin should be afforded the opportunity to cross-examine the witness who made the statements.

## V. Conclusion

For the foregoing reasons and those set forth in his opening motion, Defendant Kevin Breslin requests that this Court grant his Motion to Bar, and preclude the Government from presenting evidence of or commenting on the State Agency surveys and statements of deficiencies (SODs), or, in the alternative, order that the Government shall first demonstrate some causal connection between any such evidence and the Charges in the indictment before proffering any testimony relating to or commenting on any surveys or SODs, and for such further relief as this Court deems appropriate.

                                                  Respectfully submitted,

                                                  HINSHAW AND CULBERTSON LLP

                    By:    */s Kenneth E. Yeadon*
                             KENNETH E. YEADON

Dated: September 24, 2024

59238\322486306.v1